IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH WATTS<br>3102 Ruby Drive<br>Wilmington, DE  19810 | : | |
| Plaintiff | : | |
| | : | No. 1:06 – CV – 165 [GMS] |
| LOIS J. DAWSON, ESQUIRE<br>1525 Delaware Avenue<br>Wilmington DE 19806 | : | Legal Malpractice |
| | : | Jury Trial of 12 Demanded |
| Defendant | : | |

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.    At all times relevant Plaintiff has been permanently disabled by fiber mylagia which was /is so severe in nature that four (4) lumbar/cervical discs had to be surgically removed from Plaintiff's back.

2.    At all relevant times Plaintiff had been receiving disability benefits from Aetna Insurance Company pursuant to Plaintiff's contract of insurance for disability benefits from Aetna.

3.    From February of 1997 until May 2001 Aetna paid monthly disability benefits to Plaintiff in the approximate amount of $2200.0 each month.

4.    Suddenly on or about May 2001 Aetna stopped paying benefits in violation of the terms and provisions of the subject matter disability insurance policy in force as between Plaintiff and Aetna.

5.    On or about October 2001, Plaintiff retained Defendant to file what ever action/lawsuit that was necessary to have Aetna keep paying monthly disability benefits.

6.    Defendant advised Plaintiff that Defendant would file a lawsuit against Aetna for unpaid past due benefits as well as for benefits to be paid until Plaintiff was no longer disabled.

7.    Defendant also advised that the lawsuit she would file on Plaintiff's behalf would include a "bad faith" cause of action thereby entitling Plaintiff to an award of punitive damages and attorneys fees.

8.    Defendant failed to timely file the action against Aetna within the applicable contractual and/or statutory limitations period for commencing such an action.

9.    At the direction of Defendant, Plaintiff applied for permanent social security benefits.

10.    On July 24, 1999 Plaintiff was declared to be permanently disabled by Social Security and Plaintiff commenced receiving social security benefits.

11.    Attached hereto as Exhibit "A" is a true and correct copy of the determination of Sylvester Puzio, the Social Security Administrative Law Judge who found Plaintiff to be disabled.

12.    Plaintiff is still receiving permanent disability benefits from Social Security.

13.    Plaintiff's medical condition has not improved since the findings of Administrative Law Judge Puzio.

14.    Plaintiff's medical condition has deteriorated since the findings of Administrative Law Judge Puzio.

15. The Defendant is defending against the instant legal malpractice case by claiming that Plaintiff is not disabled.

16. Defendant has no medical evidence to support her defense that Plaintiff is not disabled.

17. As set forth in the attached Affidavit of Be Jordan, Defendant has admitted to committing malpractice by her failure to timely file an action against Aetna. [Ms. Jordan's Affidavit is attached hereto as Exhibit "B" and is incorporated herein by reference.

18. As set forth in the attached Affidavit of Be Jordan, Defendant has admitted that in her opinion Plaintiff is totally disabled.

19. Attached hereto as Exhibit "C" and incorporated herein by reference is a true and correct copy of Defendant Dawson's calculations as to what Aetna should be paying Plaintiff in the nature of a monthly disability benefit.

20. According to Defendant Dawson's calculations Plaintiff should be receiving a net monthly benefit payment pursuant to her insurance contract with Aetna of $984.01.

21. Based on the admissions of record by Defendant as set forth herein, Plaintiff is entitled to Judgment that Defendant committed a culpable act of legal malpractice in failing to timely bring an action against Aetna.

22. Based on the admissions of record by Defendant as set forth herein, Plaintiff is entitled to Judgment that she is presently permanently disabled.

23. Based on the admissions of record by Defendant as set forth herein as a result of Defendant's failure to bring an action against Aetna to reinstate Plaintiff's disability

benefits, Plaintiff has been damaged $984.01 each month from the time Aetna wrongfully

stopped paying on the subject matter insurance policy as of May 7, 2001.

WHEREFORE, Plaintiff respectfully requests the Court to enter an Order, similar

in nature to the proposed form of Order attached hereto, the terms of which will grant

Plaintiff's Partial Motion for Summary Judgment.

GIBSON & PERKINS P.C.

_____

BY: KEVIN WILLIAM GIBSON
DE. Supreme Court ID 2025
1326 King Street
Wilmington DE 19899
302.668.3992
610.565.1708
kevingibson@gibperk.com

4

**EXHIBIT "A"**

**EXHIBIT "A"**

**EXHIBIT "A"**

**EXHIBIT "A"**

**EXHIBIT "A"**



**SOCIAL SECURITY ADMINISTRATION**

**Refer to: 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**          **Office of Hearings and Appeals**
                                    **8380 Old York Road, Ste. 250**
                                    **Elkins Park, PA  19027**
                                    **Telephone: (215) 887-2191**
                                    **Date:**

                                         JUL 24 1999

Elizabeth A. Watts
3102 Ruby Drive
Wilmington, DE 19810

### NOTICE OF DECISION -- FULLY FAVORABLE

I have made the enclosed decision in your case.  Please read this
notice and the decision carefully.

### This Decision Is Fully Favorable To You

Another office will process the decision and send you a letter
about your benefits.  Your local Social Security office or
another office may first ask you for more information.  If you
do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even
though you do not ask it to do so.  To do that, the Council
must mail you a notice about its review within 60 days from the
date shown above.  Review at the Council's own motion could
make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if
you disagree with it for any reason, you may file an appeal
with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must request the
Appeals Council to review the decision.  You must make the
request in writing.  You may use our Request for Review form,
HA-520, or write a letter.

See Next Page

**CLAIMANT**

:    ⁀ 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                                          Page 2 of 3

You may file your request at any local Social Security office
or a hearing office. You may also mail your request right to
the Appeals Council, Office of Hearings and Appeals, 5107
Leesburg Pike, Falls Church, VA 22041-3255. Please put the
Social Security number shown above on any appeal you file.

## Time To File An Appeal

To file an appeal, you must file your request for review **within
60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the
date shown above unless you show you did not get it within the
5-day period. The Council will dismiss a late request unless
you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals
Council to consider **with** your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to
decide when and how to review a case. These rules appear in
the Code of Federal Regulations, Title 20, Chapter III, Part
404, Subpart J.

If you file an appeal, the Council will consider all of my
decision, even the parts with which you agree. The Council may
review your case for any reason. It **will** review your case if
one of the reasons for review listed in our regulations exists.
Section 404.970 of the regulations lists these reasons.

Requesting review places the entire record of your case before
the Council. Review can make any part of my decision more or
less favorable or unfavorable to you.

On review, the Council may itself consider the issues and
decide your case. The Council may also send it back to an
Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my
decision on its own motion, you will not have a right to court
review. My decision will be a final decision that can be
changed only under special rules.

**CLAIMANT**

· 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          Page 3 of 3

## If You Have Any Questions

If you have any questions, you may call, write or visit any
Social Security office. If you visit an office, please bring
this notice and decision with you. The telephone number of the
local office that serves your area is (302) 478-9178. Its
address is 92 Reads Way, New Castle, Delaware 19810

        SYLVESTER A. PUZIO
        Administrative Law Judge

Enclosures

cc: Ronnie B. Seidenberg
  P.O. Box 3027
  Salem, MA 01970

**CLAIMANT**

NOTE TO PROCESSING CENTER
FURTHER ACTION NECESSARY

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

DECISION

**IN THE CASE OF**    **CLAIM FOR**

Elizabeth A. Watts
(Claimant)

Period of Disability and
Disability Insurance Benefits

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

(Wage Earner)    (Social Security Number)

PROCEDURAL HISTORY

On June 5, 1998, the claimant filed an application for a period of disability and disability insurance benefits alleging an onset date of February 18, 1997 because of disorders of the back (discogenic and degenerative) and affective disorders. The claim was denied initially on July 8, 1998 and at the reconsideration level on October 20, 1998. A timely request for hearing was filed on December 24, 1998. After a through review submitted, the Administrative Law Judge determined that a decision favorable to the claimant could be made on the basis of the record as it stood at that point. Accordingly, no hearing was held for this claim.

ISSUE

The claimant's disability status is the primary issue before the Undersigned Administrative Law Judge. In order to be found "disabled" under Social Security Rules and Regulations, a claimant must be unable to do any substantial gainful activity. This inability must be due to a medically-determinable physical or mental impairment, expected to last or to have lasted for twelve continuous months.

The claimant was born on April 16, 1954 and is considered a "younger individual" at all times pertinent to this decision. She has a masters degree in physical education and past relevant work experience as a physical education high school teacher and a

**CLAIMANT**

Elizabeth A. Watts
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

2

coach at several colleges.  The claimant reported she stopped
working in February 18, 1997, and there is no indication in the
file that she has engaged in substantial gainful activity since
that date.  The claimant meets the special earnings requirements
for disability purposes through at least the date of this
decision.

In considering disability, I must follow a set order in
determining whether or not the claimant is disabled.  Thus, I
will review: (1) any current work activity; (2) the severity of
the impairment (s); (3) whether or not the impairment(s) meet
and/or equal Listing-level severity found at Appendix 1 to
Subpart P of Regulation No. 4; (4) whether the claimant's
residual functional capacity allows her to return to past
relevant work; and, if not, (5) whether the residual functional
capacity, together with such factors as age, education, and work
experience, prevents her from performing any other work (20 CFR
404.1520).

There is no evidence the claimant has performed substantial
gainful activity since the alleged onset date and Step 1 of the
sequential evaluation process is therefore resolved in her favor.

<u>EVALUATION OF THE EVIDENCE</u>

The medical evidence reflects the claimant has a longstanding
history of fibromyalgia, neck and back symptoms and chronic
fatigue syndrome dating back to 1985 and underwent a L4-L5
laminectomy and discectomy in June 1994.  Postoperatively, she
had good relief for several years.  However, in December 1996 a
report by orthopedist, Dr. Parvis Kambin noted the claimant's
complaints of progressive weakness and fatigue in her upper and
lower extremities along with chronic pain.  Dr. Kambin cited
severe diffuse degenerative changes throughout the lumbar spine
and prescribed conservative treatment which provided little
response. Subsequently, in February 1997, the claimant underwent
an anterior diskectomy and cervical fusion at C-3 through C-7
with an anterior plate fixation.

In September 1997, an evaluation by a treating physiatrist, Dr.
Mitchell Freedman offered an opinion of chronic pain syndrome,
status post fusion and discectomy secondary to myelopathy, failed
lumbar laminectomy syndrome and bilateral epicondylitis, status
post right elbow surgery. Dr. Freedman cited the claimant
demonstrated significant restrictions of range of motion of the
cervical spine and mild positive impingement with eternal
rotation.  A pain management program was initiated in December
1997 but a report by Dr. Freedman in February 1998 noted the
claimant's alleged complaints of neck pain, right upper extremity

**CLAIMANT**

Elizabeth A. Watts
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

3

parathesias, right radiculitis, right elbow back pain and right
lower extremity pain. Examination further revealed slight
intrinsic right hand weakness (8-F). Indeed, a report by treating
neurologist, Dr. Steve Mandel in March 1998 noted increased
discomfort of the claimant's right arm and Raynaud's like
symptoms in her hands bilaterally (Exhibit 7-F).  In a February
1999 report Dr. Mandel was of the opinion that the claimant has
proximal weakness in her upper and lower extremities and some
ankle jerks and swelling of both legs.  She has objective
symptomatology to account for her difficulties and may have a
neuromuscular disease (Exhibit 16-F).

In regard to her chronic fatigue syndrome, Dr. Mandel noted in a
March 1998 report the claimant will undergo blood studies for
metabolic abnormalities at another facility for a second opinion.
The doctor opined that the claimant requires assistance from an
expert in the field of metabolic muscle disease.

In terms of a mental impairment,  a report by a Judith Howard,
M.S.W. in February 1999 notes the claimant suffers from
depression and anxiety, which may include panic attacks and mood
swings.  Furthermore, she has cognitive functioning problems that
include an attention deficit disorder and a memory deficiency.
The claimant's psychological problems are precipitated by the
the claimant's levels of fatigue (Exhibit 15-F).

Under Step 2 of the process and pursuant to 20 CFR 404.1521, the
claimant has  "severe" impairments.  Her shoulder and back pain,
right elbow pain, chronic fatigue syndrome, depressive and
anxiety disorders certainly have a significant effect upon her
physical and mental ability to perform basic work activities.
However, none of her impairments either singly or combined meet
and/or equal Listing-level severity found at Appendix 1 to
Subpart P of Regulation No. 4 (Step 3 of the process).

Notwithstanding, I find that the claimant's chronic pain and
fatigue, depression and anxiety have resulted in significant
functional limitations including the inability to perform
sustained lifting/carrying.  Treating source reports disclosed
the claimant is also precluded from sitting for 6 hours in an 8
hour workday or standing or walking for 2 hours in an 8 hour
workday and is restricted in her ability to perform climbing or
crawling.  The claimant's depression and anxiety disorder have
resulted in functional limitations that include deficiencies of
concentration, task persistence and social functioning.

Considering the inability perform the latter work-related
functions, the claimant would not have the functional capability

**CLAIMANT**

Elizabeth A. Watts
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

4

to meet the physical and mental demands of the full range of
unskilled sedentary work on a sustained and regular basis.

Consideration must next be given to the question of the whether
the claimant retains the residual functional capacity to perform
the requirements of her past relevant work.  Based on the latter
residual functional capacity, the claimant is unable to return to
her past relevant work a physical education teacher or coach,
where were performed at the light level of exertion.  Therefore,
the burden of proof shifts to the Commissioner to show that there
are other jobs (existing in significant numbers) to which the
claimant can make a successful vocational adjustment considering
her age, education, work experience and residual functional
capacity.  Such a determination - Step 5 of the process - must be
made in light of the Medical - Vocational Guidelines of Appendix
2, Subpart P of Regulations No. 4.  Appendix 2 contains a series
of rules which direct a conclusion of either "disabled" or "not
disabled" depending on the above described vocational factors.

The claimant is a "younger individual" with a college education
and a light level work history.  Considering Ms. Watts age,
educational background, work experience and residual functional
capacity, she is incapable of making a successful adjustment to
work which exists in significant numbers in the national economy.
Her severely eroded occupational base would not permit her to
engage in substantial gainful activity, even at the sedentary
level and pursuant to SSR 96-8p, the claimant is considered
"disabled."

For the foregoing reasons, the claimant has been under a
disability since the alleged onset date of February 18, 1997,
under the framework of the Medical-Vocational Guidelines and Step
5 of the sequential evaluation process.

Social Security Ruling 96-6p indicates that one must look at the
State Agency's determinations before making a decision.  The
residual functional capacity assessment made by the State Agency
has not been accepted because it is inconsistent with the
opinions of treating physicians and the objective medical
evidence which is controlling under SSR-96-2p.

## FINDINGS

After careful consideration of the entire record, the
Administrative Law Judge makes the following findings:

**CLAIMANT**

Elizabeth A. Watts
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

5

1.  The claimant met the disability insured status
    requirements of the Act on February 18, 1987, the date
    the claimant stated she became unable to work, and
    continues to meet them through the date of this
    decision.

2.  The claimant has not engaged in substantial gainful
    activity since February 18, 1987.

3.  The medical evidence establishes that the claimant has
    severe shoulder and back pain, right elbow pain and
    chronic fatigue syndrome, depression and anxiety, but
    that  does not have an impairment or combination of
    impairments listed in, or medically equal to one listed
    in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's allegations are fully credible.

5.  The claimant has the residual functional capacity to
    perform the physical exertion and nonexertional
    requirements of work except for  (20 CFR 404.1545).

6.  The claimant is unable to perform  past relevant work
    as a physical education teacher or a college coach.

7.  The claimant's residual functional capacity for the
    full range of sedentary work is reduced by the above
    limitations detailed above.

8.  The claimant is 45 years old, which is defined as a
    "younger individual" at all times pertinent to this
    decision (20 CFR 404.1563).

9.  The claimant has a master's degree in physical
    education (20 CFR 404.1564).

10. The claimant does not have any acquired work skills
    which are transferable to the skilled or semiskilled
    work activities of other work (20 CFR 404.1568).

11. Considering the claimant's additional nonexertional
    limitations within the framework of the Medical -
    Vocational Guidelines, she cannot be expected to make a
    vocational adjustment to work which exists in the
    national economy.

12. The claimant has been under a "disability," as defined
    in the Social Security Act, since February 18, 1997 (20
    CFR 404.1520(f)).

**CLAIMANT**

Elizabeth A. Watts
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

## DECISION

It is the decision of the Administrative Law Judge that, based on
the application filed on June 5, 1998, the claimant is entitled
to a period of disability commencing February 18, 1997 and to
disability insurance benefits under sections 216(i) and 223,
respectively, of the Social Security Act.

Sylvester A. Puzio
Administrative Law Judge

JUL 24

Date

## YOUR RIGHT TO PAYMENT WITHIN A REASONABLE TIME

We are required by a District Court order in Holman et al. v.
Bowen, (Civ. No. 78-0494, M.D. Pa., May 1, 1987), to notify you
of your right to have your disability payments sent to you by us
within a reasonable time after a favorable determination of your
eligibility for benefits.

If you would like to know when you will receive your benefits,
you may contact any Social Security Office to ask when you can
expect to receive payment of your claim.

If, at any time, you feel that your payments are being
unreasonably delayed, you may seek relief from a United States
District Court.

You may wish to contact an attorney regarding your rights.   If
you do not have any attorney, free legal services may be
available if you qualify for them due to financial need.   For
further information about where to apply for free legal help, you
may call the Law Coordination Center, toll free, at
1-800-732-3545.

**CLAIMANT**

Elizabeth A. Watts
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

## OHA PSYCHIATRIC REVIEW TECHNIQUE FORM

NAME: Elizabeth A. Watts      SSN: 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

Assessment is for:  Other: February 18, 1997 to Present

Administrative Law Judge's Signature             Date

JUL 24 1999

I.   MEDICAL SUMMARY
     A.   Medical Disposition(s):  RFC Assessment Necessary
                                   (i.e., a severe impairment is
                                   present which does not meet or
                                   equal a listed impairment)

     B.   Based Upon Category(ies):     12.04, 12.06

II.  Reviewer's Notes (Does not apply to OHA)

III. DOCUMENTATION OF FACTORS THAT EVIDENCE THE DISORDER
     (Evaluation of the existence of a sign or symptom
     CLUSTER or SYNDROME for the Listed Disorder.)

     PRESENT    ABSENT

     [ ]        [x]  A.   12.02   Organic Mental Disorders
     [ ]        [x]  B.   12.03   Schizophrenic, Paranoid
                                  and other Psychotic
                                  Disorders
     [x]        [ ]  C.   12.04   Affective Disorders
     [ ]        [x]  D.   12.05   Mental Retardation and
                                  Autism
     [x]        [ ]  E.   12.06   Anxiety Related Disorders
     [ ]        [x]  F.   12.07   Somatoform Disorders
     [ ]        [x]  G.   12.08   Personality Disorders
     [ ]        [x]  H.   12.09   Substance Addiction
                                  Disorders

C.   **12.04 Affective Disorders** - Disturbance of mood,
     accompanied by a full or partial manic or depressive
     syndrome, as evidenced by at least one of the following:

     **PRESENT-ABSENT-INSUFFICIENT EVIDENCE**

     1.   [x]  [ ]  [ ]  Depressive syndrome characterized by at
                         least four of the following:
                         a.   [x]  Anhedonia or pervasive loss of
                              CLAIMANT interest in almost all
                              activities, or

Elizabeth A. Watts
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

2

|      |       |       |       | b.    | [ ]   | Appetite disturbance with change in weight, or |

b.    [ ]    Appetite disturbance with
             change in weight, or
c.    [x]    Sleep disturbance, or
d.    [ ]    Psychomotor agitation or
             retardation, or
e.    [x]    Decreased energy, or
f.    [x]    Feelings of guilt or
             worthlessness, or
g.    [x]    Difficulty concentrating or
             thinking, or
h.    [ ]    Thoughts of suicide, or
i.    [ ]    Hallucinations, delusions or
             paranoid thinking

2.    [ ]  [x]  [ ]  Manic syndrome characterized by at least
                    three of the following:
      a.    [ ]    Hyperactivity, or
      b.    [ ]    Pressures of speech, or
      c.    [ ]    Flight of ideas, or
      d.    [ ]    Inflated self-esteem, or
      e.    [ ]    Decreased need for sleep, or
      f.    [ ]    Easy distractibility, or
      g.    [ ]    Involvement in activities that
                   have a high probability of
                   painful consequences which are
                   not recognized, or
      h.    [ ]    Hallucinations, delusions or
                   paranoid thinking

3.    [ ]  [x]  [ ]  Bipolar syndrome with a history of
                    episodic periods manifested by the full
                    symptomatic picture of both manic and
                    depressive syndromes (and currently
                    characterized by either or both
                    syndromes)

4.    [ ]  [ ]  [ ]  Other

E.    **12.06  Anxiety Related Disorders** - Anxiety as the
      predominant disturbance or anxiety experienced in the
      attempt to master symptoms, as evidenced by at least one of
      the following:

      **PRESENT-ABSENT-INSUFFICIENT EVIDENCE**

1.    [ ]  [ ]  [x]  Generalized persistent anxiety
                    accompanied by three of the following:
      a.    [ ]    Motor tension, or
      b.    [ ]    Autonomic hyperactivity, or
      c.    [ ]    Apprehensive expectation, or

**CLAIMANT**

Elizabeth A. Watts
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

3

|      |       |      |      | d.     [ ]  Vigilance and scanning |
|------|-------|------|------|-----------------------------------|
| 2.   | [x]   | [ ]  | [ ]  | A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation . |
| 3.   | [x]   | [ ]  | [ ]  | Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week |
| 4.   | [ ]   | [ ]  | [x]  | Recurrent obsessions or compulsions which are a source of marked distress |
| 5.   | [ ]   | [ ]  | [x]  | Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress |
| 6.   | [ ]   | [ ]  | [ ]  | Other: |

## IV.    RATING OF IMPAIRMENT SEVERITY

### A.    "B" CRITERIA OF THE LISTINGS

THE FOLLOWING FUNCTIONAL LIMITATIONS (WHICH APPLY TO PARAGRAPH B OF LISTINGS 12.02-12.04 AND 12.06-12.08 AND PARAGRAPH D OF 12.05) EXIST AS A RESULT OF THE INDIVIDUAL'S MENTAL DISORDER(S).

NOTE:     ITEMS 3 AND 4 BELOW ARE MORE THAN MEASURES OF FREQUENCY.  DURATION AND EFFECTS OF THE DEFICIENCIES (ITEM 3) OR EPISODES (ITEM 4) ARE DISCUSSED IN THE DECISION.

Listing(s) under which the items below are being rated:  12.04, 12.06

**CLAIMANT**

Elizabeth A. Watts
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

4

## FUNCTIONAL LIMITATION AND DEGREE OF LIMITATION

1.    Restrictions of Activities of Daily Living:

None[ ] Slight[ ] Moderate[x]Marked*[ ] Extreme[ ] Insuff Evid[ ]

2.    Difficulties in Maintaining Social Functioning:

None[ ] Slight[ ] Moderate[x] Marked*[ ] Extreme[ ] Insuff Evid[ ]

3.    Deficiencies of Concentration, Persistence or Pace Resulting in Failure
      to Complete Tasks in a Timely Manner (in work settings or elsewhere):

Never[ ] Seldom[ ] Often[x] Frequent*[ ] Constant[ ] Insuff Evid[ ]

4.    Episodes of Deterioration or Decompensation in Work or Work-Like
      Settings Which Cause the Individual to Withdraw from that Situation or
      to Experience Exacerbation of Signs and Symptoms (which may Include
      Deterioration of Adaptive Behaviors):

Never[ ] Once/Twice[ ] Repeated*(3+)[ ] Continual[ ] Insuff Evid[x]

*Degree of limitation that satisfies the Listings: Extreme, Constant and
Continual also satisfy that requirement.

B.    Summary of Functional Limitation Rating for "B" Criteria

NO. OF FUNCTIONAL LIMITATIONS MANIFESTED AT THE LISTING LEVEL: [0]
(The number must be at least 2 to satisfy the requirements of paragraph B in
Listings 12.02, 12.03, 12.04 and 12.06 and paragraph D in 12.05; and at least
3 to satisfy the requirements in paragraph B in Listings 12.07 and 12.08.)

C.    "C" Criteria of the Listings

2.    If 12.06 Disorder (Anxiety Related)

**PRESENT-ABSENT-INSUFFICIENT EVIDENCE**

      [ ]   [ ]   [ ]   Symptoms resulting in **complete** inability to function
                        independently outside the area of one's home.

(If present is checked, the requirements in paragraph C of 12.06 are
satisfied.)

**CLAIMANT**

Rx Date/Time    JUL-14-2005(THU) 09:50
JUL. 14. 2005 10:56AM    PATTERSON    NO. 1575    P. 15

# LIST OF EXHIBITS

**Claimant:**  Elizabeth A. Watts                                    **SSN:**  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

| Exh. No. | Part No. | Description | No. of Pages |
|----------|----------|-------------|--------------|

### PAYMENT DOCUMENTS/DECISIONS

| Exh. No. | Part No. | Description | No. of Pages |
|----------|----------|-------------|--------------|
| 1 | A | Initial Disability Determination by State Agency, Title II, dated 7/8/98 | 1 |
| 2 | A | Reconsideration Disability Determination by State Agency, Title II, dated 9/24/98 | 1 |

Part A (Yellow) - Payment Documents/Decisions
Part B (Red)    - Jurisdictional Documents/Notices
Part D (Orange) - Non-Disability Development
Part E (Blue)   - Disability Related Development and Documentation
Part F (Yellow) - Medical Records

ADDITIONAL CLAIM FILE, IF APPLICABLE:

Part (SSI) - Supplemental Security Income
Part (DWB) - Disabled Widow/Widower
Part (CDB) - Child's Disability Benefits

# LIST OF EXHIBITS

**Claimant:** Elizabeth A. Watts                                **SSN:** 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

| Exh. Part | | | No.of |
|---|---|---|---|
| **No.** | **No.** | **Description** | **Pages** |

### JURISDICTIONAL DOCUMENTS/NOTICES

| | | | |
|---|---|---|---|
| 1 | B | Social Security Notice dated 7/8/98 | 5 |
| 2 | B | Request for Reconsideration filed 8/10/98 | 1 |
| 3 | B | Social Security Notice of Reconsideration dated 10/20/98 | 4 |
| 4 | B | Request for Hearing filed 12/24/98 | 1 |

Part A (Yellow) - Payment Documents/Decisions                  **ADDITIONAL CLAIM FILE, IF APPLICABLE:**
Part B (Red)    - Jurisdictional Documents/Notices
Part D (Orange) - Non-Disability Development                   Part (SSI) - Supplemental Security Income
Part E (Blue)   - Disability Related Development and Documentation    Part (DWB) - Disabled Widow/Widower
Part F (Yellow) - Medical Records                             Part (CDB) - Child's Disability Benefits

Rx Date/Time    JUL-14-2005(THU) 09:50                           NO. 1575    P. 17
    JUL. 14. 2005  10:56AM    PATTERSON

## LIST OF EXHIBITS

| Claimant:  Elizabeth A. Watts | SSN:  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 |
|---|---|

| Exh.<br>No. | Part<br>No. | Description | No.of<br>Pages |
|---|---|---|---|

### NON-DISABILITY DEVELOPMENT

| 1 | D | Application for Disability Insurance Benefits filed 6/5/98 | 3 |
| 2 | D | Earnings record | 5 |

Part A (Yellow) - Payment Documents/Decisions
Part B (Red)    - Jurisdictional Documents/Notices
Part D (Orange) - Non-Disability Development
Part E (Blue)   - Disability Related Development and Documentation
Part F (Yellow) - Medical Records

ADDITIONAL CLAIM FILE, IF APPLICABLE:

Part (SSI) - Supplemental Security Income
Part (DWB) - Disabled Widow/Widower
Part (CDB) - Child's Disability Benefits

# LIST OF EXHIBITS

**Claimant:** Elizabeth A. Watts                              **SSN:** 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

| Exh. No. | Part No. | Description | No. of Pages |
|----------|----------|-------------|--------------|

### DISABILITY RELATED DEVELOPMENT AND DOCUMENTATION

| Exh. No. | Part No. | Description | No. of Pages |
|----------|----------|-------------|--------------|
| 1 | E | Vocational Report dated 6/18/98 | 7 |
| 2 | E | Report of Contact, dated 7/6/98 | 1 |
| 3 | E | Disability Report dated 6/4/98 | 10 |
| 4 | E | Claimant's Statement When Request for Hearing is Filed and the Issue is Disability undated, w/attachment dated 12/22/98 | 4 |
| 5 | E | Reconsideration Disability Report dated 7/30/98 | 6 |
| 6 | E | Pain Questionnaire undated | 5 |

Part A (Yellow) - Payment Documents/Decisions
Part B (Red)    - Jurisdictional Documents/Notices
Part D (Orange) - Non-Disability Development
Part E (Blue)   - Disability Related Development and Documentation
Part F (Yellow) - Medical Records

ADDITIONAL CLAIM FILE, IF APPLICABLE:

Part (SSI) - Supplemental Security Income
Part (DWB) - Disabled Widow/Widower
Part (CDB) - Child's Disability Benefits

## LIST OF EXHIBITS

**Claimant:**  Elizabeth A. Watts                          **SSN:**   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

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|

### MEDICAL RECORDS

| Exh. No. | Part No. | Description | No. of Pages |
|---|---|---|---|
| 1 | F | Physical Residual Functional Capacity (RFC) dated 7/3/98 & 9/23/98, completed by non-treating, non-examining physician | 18 |
| 2 | F | Mental Residual Functional Capacity (RFC) dated 9/22/98, completed by non-treating, non-examining physician | 6 |
| 3 | F | Psychiatric Review Technique (PRT) Form dated 9/22/98, completed by non-treating, non-examining physician | 11 |
| 4 | F | Treatment Records from Doris H. Middleman M.D., covering 6/10/92 - 1/29/99 | 52 |
| 5 | F | Treatment Records from Martin Jan Bergman M.D., covering 5/20/94 - 1/15/99 | 60 |
| 6 | F | Treatment Notes from Peter Townsend M.D., covering 12/29/95 - 10/2/98 | 11 |
| 7 | F | Treatment Records from Todd Albert M.D., covering 12/19/96 - 2/3/99 | 27 |
| 8 | F | Treatment Records from Mitchell K. Freedman D.O., covering 11/25/97 - 2/19/98 | 37 |
| 9 | F | Medical Records from Steven Mandel M.D., covering 2/25/98 - 7/14/98 | 35 |
| 10 | F | Treatment Records from Elizabeth Carroll M.D., dated 7/7/98 & 7/8/98 | 5 |
| 11 | F | Hospital Records from Christiana Care Health Services, dated 7/16/98 | 26 |
| | P | Progress Notes from Delaware Orthopedic Center, covering 8/7/98 - 8/28/99 | 1 |
| 13 | F | Medical Report from DDS Physician, dated 10/4/98 | 1 |
| 14 | F | Medical Report from DDS Physician, dated 10/20/98 | 2 |
| 15 | F | Medical Assessment of Ability to do Work-Related Activities (Mental) from Judith Howard, dated 2/9/99 | 8 |
| 16 | F | Treatment Records from Steven Mandel, covering 1/11/99 - 2/2/99 | 10 |

Part A (Yellow) - Payment Documents/Decisions
Part B (Red)    - Jurisdictional Documents/Notices
Part D (Orange) - Non-Disability Development
Part E (Blue)   - Disability Related Development and Documentation
Part F (Yellow) - Medical Records

ADDITIONAL CLAIM FILE, IF APPLICABLE:

Part (SSI) - Supplemental Security Income
Part (DWB) - Disabled Widow/Widower
Part (CDB) - Child's Disability Benefits

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: August 24, 1999
Claim Number: 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HA

ELIZABETH A WATTS
3102 RUBY DR
WILMINGTON, DE 19810-2237
hillhlalalaallllaahlalalallaalllaalilalal

You are entitled to monthly disability benefits beginning August 1997.

### The Date You Became Disabled

We found that you became disabled under our rules on February 18, 1997.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is August 1997.

### What We Will Pay And When

- You will receive $29,126.00 around August 30, 1999.

- This is the money you are due for August 1997 through July 1999.

- Your next payment of $1,186.00, which is for August 1999, will be received on or about the third Wednesday of September 1999.

- After that you will receive $1,186.00 on or about the third Wednesday of each month.

- These and any future payments will go to the financial institution you selected. Please let us know if you change your mailing address, so we can send you letters directly.

- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153

C                              See Next Page

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HA                                    Page 2 of 5

**Your Benefits**

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| August | 1997 | $1,183.30 | Entitlement began |
| December | 1997 | $1,208.10 | Cost-of-living adjustment |
| January | 1998 | $1,216.50 | Credit for additional earnings |
| December | 1998 | $1,232.30 | Cost-of-living adjustment |

**Information About Medicare**

You are entitled to medicare hospital and medical insurance beginning August 1999.

We will send your Medicare card in about 4 weeks. You should take this card with you when you need medical care. If you need medical care before you receive the card, use this letter as proof that you are covered by Medicare.

**Information About Representative's Fees**

Your representative told us that a fee will not be charged. If a fee is charged, your representative must receive approval from the Social Security Administration.

**Other Social Security Benefits**

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

**Your Responsibilities**

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability Benefits...What You Need To Know." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A state or other public or private vocational rehabilitation provider may contact you to talk about their services. The rehabilitation provider may offer you counseling, training, and other services that may help you go to work. To keep getting disability benefits, you have to accept the services offered unless we decide you have a good reason for not accepting.

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HA                                              Page 3 of 5

You do not have to wait to be contacted about vocational rehabilitation services.
You can contact the nearest state vocational rehabilitation office directly and let
them know that you are interested in receiving services.

If you go to work, special rules can allow us to continue your cash payments and
health insurance coverage. For more information about how work and earnings
may affect disability benefits, you may call or visit any Social Security office.
You may wish to ask for any of the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA
  Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication
  No. 05-10052).

- How Social Security Can Help With Vocational Rehabilitation (SSA
  Publication No. 05-10050).

**Other Information**

We are sending a copy of this notice to SYLVESTER A PUZIO and RONNNIE
SEIDENBERG.

**Do You Disagree With The Decision?**

This action supersedes our previous determination and is in accordance with the
decision on your hearing request. You have already been notified of your appeal
rights regarding the decision made on your hearing request and what you must
do to have that decision reexamined. If you feel any action we are taking to
carry out the decision is wrong, you also have the right to appeal that part of
your case. If you want this reconsideration, you must request it not later than
60 days from the date you receive this notice. You may make any such request
through any Social Security office. If additional evidence is available, you should
submit it with your request.

**Things To Remember For The Future**

Doctors and other trained staff decided that you are disabled under our rules.
But, this decision must be reviewed at least once every 3 years. We will send
you a letter before we start the review. Based on that review, your benefits will
continue if you are still disabled, but will end if you are no longer disabled.

**If You Have Any Questions**

If you have any questions, you may call us toll-free at 1-800-772-1213, or call
your local Social Security office at 1-302-323-0304. We can answer most
questions over the phone. You can also write or visit any Social Security office.
The office that serves your area is located at:

                         SOCIAL SECURITY
                         SUITE 200
                         92 READS WAY
                         NEW CASTLE, DE 19720

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HA                                         Page  4 of 5

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

*Kenneth S. Apfel*

Kenneth S. Apfel
Commissioner
  of Social Security

Rx Date/Time     JUL-14-2005(THU) 09:50
    JUL. 14. 2005 10:57AM     PATTERSON                     NO. 1575   P. 24

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HA                                    Page 5 of 5

# PAYMENT SUMMARY

**Your Payment Of $29,126.00**

Here is how we figured your
first payment:

    Benefits due for August 1997
    through July 1999
    including any cost of living increase,
    less monthly rounding of benefits  ........................$29,171.50

    Amount we subtracted because of

       ●   additional premium due
          one month in advance  .........................     45.50

This equals the amount of
your first payment  ....................................$29,126.00

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective August 1999:

    You are entitled to a monthly benefit of  ..................$ 1,232.30

    Amounts we subtracted because of:

       ●   premiums for medical insurance  ...................     45.50

    This equals  ........................................   1,186.80

       ●   rounding (we must round down to
          a whole dollar)  ...............................      .80

This equals the amount of
your regular monthly payment ............................$ 1,186.00

DEPARTMENT OF
**HEALTH AND HUMAN SERVICES**
Social Security Administration
**OFFICE OF HEARINGS AND APPEALS**

**ORDER OF ADMINISTRATIVE LAW JUDGE**

**IN THE CASE OF**                    **CLAIM FOR**

A Period of Disability and
Disability Insurance Benefits

ELIZABETH WATTS
(Claimant)

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

(Representative)                    (Social Security Number)

I approve the fee agreement between the claimant and his or her
representative subject to the condition that the claim results in
past-due benefits.

My determination is limited to whether the fee agreement meets
the statutory conditions for approval and is not otherwise
excepted.  I neither approve nor disapprove any other aspect of
the fee agreement.

Sylvester Puzio
Administrative Law Judge

JUL 24 1999
Date

## SOCIAL SECURITY CLAIMS FOR REPRESENTATION
## FEE AGREEMENT FOR SERVICES

Claimant: __Elizabeth Watts_____    SSN: __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_____

We understand that for a fee to be payable, the Social Security
Administration (SSA) must approve any fee a Representative charges or
collects for representational services in proceedings before SSA in
connection with a claim for benefits.

We further understand that the Representative's services are provided to
the Claimant at no cost to the Claimant. We have agreed that no fee,
direct or indirect, will be charged to or collected from the Claimant for
this service.

We also agree that any fee the Representative may receive will not exceed
the lesser of 25% of the Claimant's past due benefits or $4000.00, in
accordance with Section 206(a) of the Social Security Act, as amended by
Public Law 101-508. Any compensation the Representative may receive for
services in connection with this claim will be paid by Allsup Inc.

We have both received a signed copy of this agreement.

_____          12-26-98
Claimant, Elizabeth Watts                      Date

_____          12/14/98
Representative, Ronnie B. Seidenberg           Date



**STATE OF DELAWARE**
STATE BOARD OF PENSION TRUSTEES
AND
OFFICE OF PENSIONS
THOMAS COLLINS BUILDING
540 S. DUPONT HWY., SUITE 1
DOVER, DE 19901-4516

When Calling Long Distance
Toll Free Number 1-800-722-7300

Telephone (302) 739-4208
FAX #   (302) 739-6129

July 25, 1997

Ms. Elizabeth D. Watts
3102 Ruby Dr
Wilmington, DE   19810- 2237

Dear Ms. Watts:

Your State of Delaware disability pension has been approved effective June 1, 1997. Your gross monthly pension in the amount of $564.25 will be payable once a month and direct deposited to your financial institution on the last working day of each month. Your initial pension benefit will be deposited in the gross amount of $1,128.50 representing retroactive payment to June 1, 1997.

Per your request, you have been enrolled in the Pension Blue Cross group #10-7291-110 with Comprehensive Individual coverage effective retroactive to July 1, 1997. The required premium will be deducted from your monthly pension check.

You will note that the Pension Office has enclosed revised service and/or compensation schedules. By law, you and the Pension Office have three (3) years from the effective date of your pension to correct any errors which may be found in your service and compensation. If you have any questions at this time, please do not hesitate to contact me.

Until you are age sixty (60), you must report any earnings received from gainful occupation or business after your disability retirement date. The reporting is done annually and begins the first calendar year following your retirement date. A form will be mailed to you each year for this purpose. If reported earnings exceed one-half (1/2) of your annual rate of compensation before you retired, your disability pension will be reduced by that sum. Reductions will be handled over a period of twelve (12) consecutive months beginning in July of each year. Your annual rate of compensation before you retired will be determined by the Pension Office.

Ms. Elizabeth D. Watts
Page Two
July 25, 1997

If you plan to return to State employment or have any questions regarding employment after retirement, please contact Dorothy P. Clemente or Sue A. Metheny of my staff.

I would like to take this opportunity to further offer my assistance to you in any matter at any time and to extend my best wishes to you in your retirement from State service.

Sincerely,

OFFICE OF PENSIONS

David C. Craik
Pension Administrator

DCC:cwj

Enclosure

cc:    Colonial School District

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

IN THE SUPERIOR COURT OF DELAWARE
OF AND FOR NEW CASTLE COUNTY

ELIZABETH WATTS              :
3102 Ruby Drive              :
Wilmington, DE 19810         :
                             :
      Plaintiff              :
                             :    No. 06C-02-114 JOH
         V                   :
                             :
LOIS J. DAWSON, ESQUIRE      :
1525 Delaware Avenue         :    Legal Malpractice
Wilmington DE 19806          :
                             :
                             :    Jury Trial of 12
Demanded                     :
         Defendant           :

## AFFIDAVIT

After being duly sworn according to law the undersigned does
hereby state:

1.    Your deponent is Bell Jordan a friend of the Plaintiff Elizabeth
Watts.

2.    On a number of occasions I would accompany Ms. Watts when she
had appointments with her lawyer Lois Dawson regarding Ms. Dawson's
representation of Ms. Watts in connection with trying to get Aetna to
reinstate disability benefits that Aetna had stopped paying by claiming
that Ms. Watts was not permanently disabled.

3.    In my presence Ms. Dawson advised Ms. Watts that Dawson would
file a lawsuit against Aetna on Ms. Watts behalf for breach of contract
and in said lawsuit Ms. Dawson in my presence stated that Dawson

1

would include a claim for punitive damages because in Dawson's opinion as stated in my presence, Aetna was guilty of bad faith because in Dawson's opinion as also stated in my presence, Ms. Watts was permanently disabled.

4.  I was present at a meeting between Ms. Dawson and Ms. Watts at which time Dawson advised Ms. Watts that Dawson had committed legal malpractice because Dawson had not timely filed a lawsuit against Aetna within the required timeframes of the disability insurance policy Ms. Watts had with Aetna.

5.  In this meeting at which time Ms. Dawson candidly admitted she had committed malpractice, Ms. Dawson explained to Ms. Watts that since Dawson was insured for mistakes such as the mistake she explained she made by not filing a lawsuit against Aetna within the allotted time, Ms. Dawson advised Ms. Watts that Ms. Watts would be able to get Ms. Dawson's insurance company to pay for the disability benefits that were loss due to Ms. Dawson's failure to timely file the Aetna lawsuit.

6.  I have a specific recollection of the conversations I am discussing herein in that I was impressed with the candor being exhibited by Ms. Dawson in readily owning up for her mistakes. In fact I thought it was refreshing to see a lawyer try to make amends for an error.

2

7.   I have read the Answer to the Complaint that Ms. Dawson has filed
through the lawyers appointed to represent her by her insurance
company.

8.   It has been explained to me that by this Answer Ms. Dawson is
now claiming that Ms. Watts is not totally disabled.

9.   If Ms. Dawson is now claiming that Ms. Watts is not totally
disabled, Ms. Dawson is being inconsistent with everything she said and
did in my presence when she continually advised Ms. Watts that
Dawson's insurance company would see to it that Ms. Watts' ongoing
permanent disability would be remedied by just substituting Dawson's
insurance company for Aetna.

10.  I have a specific recollection of Ms. Dawson advising Ms. Watts not
to worry about anything because Ms. Dawson's insurance company
would make up for Ms. Dawson's mistakes. I have a specific recollection
of Ms. Dawson stating in this regard words to the effect "That is why I
pay the premiums".

Your deponent sayeth nothing further.

Bee Jordon

Sworn to and subscribed
before me this _16th_ day
of _march_ 2006.

NOTARY PUBLIC

SUE A. BASS
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Feb. 20, 2009

3

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

9/00 - told owed Etna 30,000 ??
1/00 - owed Eatna - 27,925.46 - really

Aug 1998 - 2,167 from Etna

Stopped getting money. 9/99  4 mo. + 12/00  + 12/01 + 12/02

$2742.55 - Should be getting all Tell
- 578.54 - Pension
- 1183.  - SS Disability
$ 984.01 - Should be getting Monthly
$ 780.81 - after taxes

```
   780.81              984.01
X  40 mos          X  40 mos
  31,232.40          39,360.40
                     27,925  46
                     11,434.94  due Bunny w/her paying
                                taxes on lump sum
                                & money to end of 2002
```

```
   780.81
X  60 mos  5yrs              Part-time 20 h a week to get
  46,848.60                  3600 practice hrs. =
                             180 weeks = 3.6 yrs.
```

15 more hrs a week for
5 yrs. is 3600 practicum
Voluntary work to get it

22 yrs before free disability

15 hrs @ wk is 37% of full time work
                 61%

                    484.10 @ month                0000067

If she sues for pre disability tell 2024 how
does she get pd.?

+ can they argue this again & again

0000068

Full disability pay not till 2024 is 206,133.84 after
taxes
259,778.64 or before taxes

+ what is still owed to date

which is approx. 11,500

271,278.64

& they owe her for a portion of school bills.

60,000 needed for 5 yrs.
11,500
75,500
30,000 + School loans
+ lois costs

IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

ELIZABETH WATTS                          :
3102 Ruby Drive                          :
Wilmington, DE  19810                    :
                                         :
    Plaintiff                           :
                                         :        No. 1:06 – CV – 165 [GMS]
                                         :
                                         :
LOIS J. DAWSON, ESQUIRE                  :
1525 Delaware Avenue                     :
Wilmington DE 19806                      :
                                         :
    Defendant                           :

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR
PARTIAL SUMMARY JUDGMENT

**Facts:**

    Plaintiff is Elizabeth Watts a citizen and resident of the State of Delaware.

Defendant Lois J. Dawson is licensed to practice law by the State of Delaware.

    At all times relevant Plaintiff has been permanently disabled by fiber mylagia

which was /is so severe in nature that four (4) lumbar/cervical discs had to be surgically

removed from Plaintiff's back. Plaintiff had had a disability insurance contract with

Aetna. From February of 1997 until May 2001 Aetna paid monthly disability benefits to

Plaintiff in the approximate amount of $2200.0 each month.

    In May 2001 Aetna claimed that Plaintiff was no longer permanently disabled and

therefore stopped paying benefits in violation of the terms and provisions of the subject

matter disability insurance policy.

1

On or about October 2001, Plaintiff retained Defendant to file what ever action/lawsuit necessary to require Aetna to resume paying monthly disability benefits. Defendant advised Plaintiff that Defendant would file a lawsuit against Aetna for unpaid past due benefits as well as for benefits to be paid until Plaintiff was no longer disabled. Defendant also advised that the lawsuit she would file on Plaintiff's behalf would include a "bad faith" cause of action thereby entitling Plaintiff to an award of punitive damages and attorneys fees. Defendant failed to timely file the action against Aetna within the applicable contractual and/or statutory limitations period for commencing such an action. As a result of Defendant's failure to timely file a lawsuit against Aetna for a reinstatement of the payment of monthly disability benefits, Plaintiff is now forever barred from being able to require Aetna to pay monthly disability benefits. This lawsuit filed on February 10, 2006 followed.[1]

In a conversation with Plaintiff wherein Plaintiff's friend Be Jordan was present Defendant Dawson admitted her negligence and advised Plaintiff to file a legal malpractice action against her and stated to Plaintiff in the presence of Be Jordan that Defendant's legal malpractice insurer would pay the disability benefits that Aetna should have been paying.

**Issues Presented:**

1.     Based on the record evidence adduced on this summary judgment record is Plaintiff entitled to partial summary judgment that Defendant Dawson committed a culpable act of legal malpractice by not timely filing an action against Aetna for reinstatement of Plaintiff's disability benefits?

---

[1] The lawsuit was initially filed in Superior Court in New Castle County. The Defendant, an exclusive legal practitioner in Delaware, inexplicably removed the action to this Court citing to her residence and citizenship in Pennsylvania.

Suggested Answer: Yes

2.    Based on the record evidence adduced on this summary judgment record

is Plaintiff entitled to partial summary judgment that Plaintiff is permanently disabled?

Suggested Answer: Yes

### Argument:

As this Court has held in Frescia v Conectiv et al, 379 F. Supp 2d 620 (De. 2004):

"Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);  *see also Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 392 (3d Cir.1998).    Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle,* 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields,* 178 F.3d 170, 173-74 (3d Cir.1999)."

This Court has also held in Brown v Ellendale Police Department 1999 WL

223502 (D. Del. 1999) "the nonmoving party "cannot rely upon conclusory allegations in

its pleadings or in memoranda and briefs to establish a genuine issue of material fact."

*Pastore v. Bell Tel. Co.,* 24 F.3d 508, 511 (3d Cir.1994)."

On this Summary Judgment record the Court is presented with the Affidavit of Be

Jordon, wherein Ms. Jordan recounts a conversation with Ms. Dawson wherein Dawson

admitted the fact of Plaintiff's ongoing permanent disability and also admitted that

Dawson had committed culpable legal malpractice. This Affidavit coupled with the

irrefutable findings of Social Security that Plaintiff has been permanently disabled since

1994, is the "stuff" that Rule 56 Motions are geared for.

**Conclusion:**

Plaintiff is entitled to Partial Summary Judgment that she is permanently disabled and that she is the victim of Defendant's legal malpractice.

GIBSON & PERKINS P.C.

_____

BY: KEVIN WILLIAM GIBSON
DE. Supreme Court ID 2025
1326 King Street
Wilmington DE 19899
302.668.3992
610.565.1708
kevingibson@gibperk.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June 2006, I served a true and correct copy of Plaintiff's Motion for Partial Summary Judgment and supporting Memorandum of Law upon the following by U.S Mail, first class, postage prepaid:

Norman H. Brooks, Jr., Esq.
Suite 800
913 North Market Street
Wilmington DE 19801

_____

KEVIN WILLIAM GIBSON, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

ELIZABETH WATTS                     :
3102 Ruby Drive                     :
Wilmington, DE  19810               :
                                    :
       Plaintiff                    :
                                    :       No. 1:06 – CV – 165 [GMS]
                                    :
                                    :
LOIS J. DAWSON, ESQUIRE             :
1525 Delaware Avenue                :
Wilmington DE 19806                 :
                                    :
       Defendant                    :

## ORDER

And now this        day of              2006, upon review of the Plaintiff's

Motion for Summary Judgment, and the Defendant's response thereto, and oral argument,

it is hereby ORDERED AND DECREED that the Motion is GRANTED.

_____
J