## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH WATTS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 1:06-CV-00165-GMS |
| | : | |
| LOIS J. DAWSON, ESQUIRE | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## DEFENDANT, LOIS J. DAWSON'S OPENING BRIEF IN SUPPORT OF MOTION TO STRIKE, OR ALTERNATIVELY, TO ALLOW ADDITIONAL TIME TO RESPOND TO PLAINTIFF'S <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**Marks, O'Neill, O'Brien & Courtney, P.C.**


*/s/ Norman H. Brooks, Jr.*
　　　　Norman H. Brooks, Jr., Esquire, (I.D.. No. 2568)

913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant Lois J. Dawson*


DATED: July 19, 2006

DE061203.1

# TABLE OF CONTENTS

**page**

I.       TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

II.      NATURE AND STAGE OF THE PROCEEDINGS  . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.     SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.      ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

         A.      PLAINTIFF'S MOTION IS PREMATURE BECAUSE THE PARTIES HAVE
                 NOT YET CONDUCTED THE DISCOVERY PLANNING MEETING
                 MANDATED BY FED. R. CIV. P. 26(f), AND THE MOTION  RELIES ON
                 DOCUMENTS OUTSIDE OF THE RECORD. . . . . . . . . . . . . . . . . . . . . . . . . . 4

         B.      THE DOCUMENT SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION
                 FOR PARTIAL SUMMARY JUDGMENT FAILS TO CONFORM TO THE
                 FORMAT AND CONTENTS OF A PROPER SUPPORTIVE BRIEF . . . . . . . 10

         C.      THE FORMAT OF PLAINTIFF'S MOTION VIOLATES LOCAL RULE
                 7.1.2(b) BECAUSE THE COURT DID NOT ORDER, AND THE PARTIES
                 DID NOT AGREE, TO SUBMIT STATEMENTS OF POINTS AND
         AUTHORITIES IN MEMORANDUM FORM IN PLACE OF BRIEFS. . . . . . . . . . . 14

         D.      ALTERNATIVELY, SHOULD THE COURT DENY DEFENDANT'S
                 MOTION TO STRIKE, DEFENDANT REQUESTS ADDITIONAL TIME TO
                 RESPOND TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
                 JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF CITATIONS

**Cases**

*Campbell v. JAY-DEE Store*, 519 A.2d 700 (Del. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Carefirst of Md., Inc. v. Care First Transp., Inc.*, 2002 U.S. Dist. LEXIS 22830
    (D. Del. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dowling v. Philadelphia*, 855 F.2d 136 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gen. Datacomm Indus. v. Arcara*, 309 B.R. 848 (D. Del. 2003). . . . . . . . . . . . . . . . . . . . . 9

*Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002). . . . . . . . . . . . . 6

*Kappes v. E.I. DuPont De Nemours & Co.*, 1999 U.S. Dist. LEXIS 3580
    (D. Del. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Scott v. Graphic Communs. Int'l Union, Local 97-B*, 92 Fed. Appx. 896
    (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States ex rel. Bradshaw v. Alldredge*, 432 F.2d 1248 (3d Cir. 1970). . . . . . . . . . . . . . 8

*United States v. Donsky*, 825 F.2d 746 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Gato*, 924 F.2d 491 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Willis v. Town of Marshall*, 426 F.3d 251 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Yancey v. Nat'l Trust Co.*, 1998 Del. LEXIS 188 (Del.1998). . . . . . . . . . . . . . . . . . . . 12, 13, 14

**Statutes and Rules**

*Fed. R. Civ. P.* 26 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 5, 7, 10, 16

*USDC D. Del. LR 7.1.1 (2006)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*USDC D. Del. LR* 7.1.2 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 10, 11, 14, 15

*USDC D. Del. LR* 7.1.3 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12, 13

i

*USDC D. Del. LR* 16.2 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*USDC D. Del. LR* 16.3 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Del. Sup. Ct. R.* 14 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

ii
## NATURE AND STAGE OF THE PROCEEDINGS

This litigation arises out of Defendant's legal representation of Plaintiff in a dispute over Plaintiff's employer's defined disability benefit plan with Aetna Insurance Company. This claim is under the purview of the Employment Retirement Income Security Act ("ERISA"). Plaintiff's original complaint was filed in the Superior Court of the State of Delaware in and for New Castle County on February 10, 2006. Count I of the Complaint alleges that Defendant was negligent in her representation of Plaintiff in her contractual dispute with Aetna. Count II of the Complaint alleges Defendant breached a contractual duty she owed Plaintiff to timely file a lawsuit against Aetna within the applicable limitations period. Count III alleges that Defendant breached a fiduciary duty she owed Plaintiff by asserting the defense that Plaintiff is no longer disabled.

Defendant Lois J. Dawson filed her Answer and Jury Demand on March 8, 2006. On March 10, 2006, Ms. Dawson removed the action to this Court pursuant to 28 U.S.C. § 1441. This case was assigned to The Honorable Gregory M. Sleet on March 22, 2006.

Plaintiff's Motion for Partial Summary Judgment, filed on June 22, 2006, is presently pending before the Court. In a letter dated June 26, 2006, defense counsel alerted Plaintiff counsel that the motion did not conform with the Local Court Rules. Without responding to Defendant's letter, Plaintiff instead directed a letter directly to the Court the same day, June 26, 2006, asking the Court for permission to file a memorandum of law instead of a brief; Plaintiff made this request after her motion had already been filed. This Court has not ordered such a stipulation, and the parties have not entered into such an agreement among themselves.

As of this date, the discovery planning meeting mandated by Fed. R. Civ. P. 26(f) has not transpired. Therefore, the discovery process has not begun yet, the Court has not conducted its Rule

16 Conference or issued its scheduling order pursuant thereto.

## SUMMARY OF THE ARGUMENT

    **A.**     **PLAINTIFF'S MOTION IS PREMATURE BECAUSE THE PARTIES HAVE NOT YET CONDUCTED THE DISCOVERY PLANNING MEETING MANDATED BY FED. R. CIV. P. 26(f), AND THE MOTION RELIES ON DOCUMENTS OUTSIDE OF THE RECORD.**

    **B.**     **THE DOCUMENT SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FAILS TO CONFORM TO THE FORMAT AND CONTENTS OF A PROPER SUPPORTIVE BRIEF**

    **C.**     **THE FORMAT OF PLAINTIFF'S MOTION VIOLATES LOCAL RULE 7.1.2(b) BECAUSE THE COURT DID NOT ORDER, AND THE PARTIES DID NOT AGREE, TO SUBMIT STATEMENTS OF POINTS AND AUTHORITIES IN MEMORANDUM FORM IN PLACE OF BRIEFS.**

    **D.**     **ALTERNATIVELY, SHOULD THE COURT DENY DEFENDANT'S MOTION TO STRIKE, DEFENDANT REQUESTS ADDITIONAL TIME TO RESPOND TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.**

## STATEMENT OF FACTS

On June 22, 2006, Plaintiff filed her motion for partial summary judgment. The parties have not yet conducted the mandatory Fed. R. Civ. P. 26(f) case management conference. Defendant has recently attempted to schedule the Rule 26(f) conference to develop a proposed discovery plan with Plaintiff. This effort was rebuffed by Plaintiff. Discovery, therefore, has not yet begun, and pursuant to Fed. R. Civ. P. 26(d), cannot begin until the case management conference is held. Plaintiff's motion is not accompanied by a brief as required by Local Rules 7.1.2 and 7.1.3 for the U.S. District Court of Delaware. The memorandum of law filed by Plaintiff in lieu of a formal brief is devoid of the sections mandated by the Rules of this Court. Plaintiff's Motion also improperly relies on documents that are not part of the record. Plaintiff did not file a statement showing that the attorney making the motion had made a reasonable effort to reach agreement with opposing attorney on the matter set forth in the motion. Finally, Plaintiff's Motion violates Local Rule 7.1.2(b) because Plaintiff filed improper support for her motion, without the requisite permission of the Court or agreement among the parties involved.

In a letter dated June 26, 2006 (A-1), the undersigned defense counsel brought these deficiencies to the attention of Plaintiff's counsel in an effort to resolve this issue without the Court's intervention. Defendant notified Plaintiff attorney that according to the Rules, either permission from the Court or agreement among the parties was required to file a document in memorandum form in lieu of briefs. Defendant also respectfully requested counsel for Plaintiff to withdraw the motion without prejudice, such that the motion could then be filed later in the discovery phase. Alternatively, Defendant requested Plaintiff file a motion that complied with the Local Rules. Defendant made this reasonable effort to reach agreement with Plaintiff on this matter. Plaintiff's counsel refused these

reasonable requests and instead of responding directly to the Defendant, sent a letter dated June 26,

2006 (A-4) to this Court, requesting permission to file the motion informally, despite the fact that the

motion had been filed four days earlier.

## **ARGUMENT**

A.    **PLAINTIFF'S MOTION IS PREMATURE BECAUSE THE PARTIES
      HAVE NOT YET CONDUCTED THE DISCOVERY PLANNING
      MEETING MANDATED BY FED. R. CIV. P. 26(f), AND THE MOTION
      RELIES ON DOCUMENTS OUTSIDE OF THE RECORD.**

Plaintiff's Motion is premature because discovery has not begun. Discovery has not started

because the parties have not conducted the discovery planning meeting mandated by Federal Rule 26

of Civil Procedure. Without discovery, there is no record; therefore, the documents referenced in

Plaintiff's Motion are not in the record and not subject to any weight. Although the parties may

submit affidavits in support of a motion, the Court should not rely on the affidavit submitted by

Plaintiff because it has not been validated in any respect. Whereas the parties were not yet authorized

to take depositions, the affidavit is before the Court essentially unchallenged.

Federal Rule 26 of Civil Procedure presents the general provisions governing the discovery

process.[1] Subsection 26(f) specifically states that:

> ...the parties must, as soon as practicable and in any event at least 21 days before a scheduling
> conference is held or a scheduling order is due under Rule 16(b), confer to consider the nature
> and basis of their claims and defenses and the possibilities for a prompt settlement or
> resolution of the case, to make or arrange for the disclosures required by 26(a)(1), and to
> develop a proposed discovery plan... .[2]

Subsection 26(d) reinforces the importance of this initial case management conference, stating:

---

[1]      *Fed. R. Civ. P. 26* (2006).

[2]      *Fed. R. Civ. P. 26(f)* (2006).

> Except...when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).[3]

Although the Local Rules of the District Court of Delaware do not specify which party should schedule such a conference, Local Rule 16.3 for the Middle District of Pennsylvania provides guidance; it places the burden on the Plaintiff's shoulders to ensure the Rule 26(f) conference is held.[4] That District Court specifically states:

> It shall be the *duty of the plaintiff* to take the initiative in holding such a conference and in assuring the completion and filing of the joint case management plan form, [which] satisfies the requirement of a proposed discovery plan under Fed. R. Civ. P. 26(f) *(emphasis added)*.[5]

Despite this apparent burden on Plaintiff, Defendant has even attempted to coordinate the Rule 26(f) meeting with Plaintiff to develop a proposed discovery plan. Plaintiff refused such a meeting; therefore, discovery remains unstarted.

The Local Rules for the District Court of Delaware parallel the Federal Rules mentioned above, and accordingly, should be interpreted the same as the Federal Rules. The District Court of Delaware states that the Court shall notify counsel of the time for holding an initial conference, at which time the Court and counsel will discuss the nature of the case, any foreseeable difficulties that may arise, and the proposed date for the Rule 16(b) pretrial conference.[6] Local Rule 16.3 lists the categories of action that are exempt from the scheduling conference and order requirements of Fed. R. Civ. P. 16(b), 26(f), and the initial conference requirement of Local Rule 16.2(a).[7] The list is

---

[3]     *Fed. R. Civ. P. 26(d)* (2006).

[4]     *Scott v. Graphic Communs. Int'l Union, Local 97-B*, 92 Fed. Appx. 896, 902 (3d Cir. 2004).

[5]     *Id.*

[6]     *USDC D. Del. LR 16.2(a)* (2006).

[7]     *USDC D. Del. LR 16.3* (2006).

rather extensive, and including such categories as: actions involving parties appearing pro se, actions for judicial review, foreclosures and seizures, bankruptcy appeals, issues with citizenship, habeas corpus proceedings, issues with arbitration, proceedings to compel evidence, issues with the National Labor Relations Board, issues with erroneously paid educational assistance, and proceedings for execution of a judgment.[8]  The instant action is not exempt.

The discovery planning meeting is necessary because it marks the beginning of the discovery process and provides a plan for the parties to follow.  This discovery process is critical for the parties to investigate and develop the facts of the case.  Sufficient discovery is necessary to enable the parties to properly and adequately address pretrial motions.  As such, a motion for summary judgment is properly brought after discovery, when the material facts have been developed.  A motion for summary judgment brought earlier, especially before discovery is even permitted, is not appropriate and should be stricken as premature when the motion is fact driven.

The U.S. Court of Appeals for the Third Circuit upholds the premise that "The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery."[9]  The U.S. Court of Appeals for the Fourth Circuit has similarly stated, "Generally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party."[10]  In *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986), the U.S. Supreme Court disallowed the respondent to argue that it was "railroaded" by a premature motion

---

[8]        *Id.*

[9]        *Dowling v. Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988). *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[10]       *Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002).

for summary judgment, since the parties had already conducted discovery.[11]  Conversely, in *Willis v. Town of Marshall*, 426 F.3d 251, 263-64 (4th Cir. 2005), the Court reversed a dismissal of the case because the Town's motion to dismiss, which the district court converted into a motion for summary judgment, was filed before a scheduling order was entered, and thus before the parties conferred as required by Rule 26(f).[12]

*Catrett* is distinguishable from the case *sub judice* because the parties here have not conducted the initial case management conference required by Fed. R. Civ. P. 26(f) and Local Rules 16.2 and 16.3.  Thus, the parties have not drafted or submitted to the Court their plan for discovery proceedings, and in its absence, the discovery process is barred from commencing under Fed. R. Civ. P. 26(d).  Accordingly, the case *sub judice* is analogous to *Willis* because discovery has not begun, thus summary judgment is not proper.

The standard for summary judgment set forth in Fed. R. Civ. P. 56(c) provides that summary judgment is proper:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[13]

Here, however, there has been no opportunity to take depositions or for paper discovery.  Like the motion at issue in *Willis*, Plaintiff's motion for partial summary judgment is highly premature.  The plain language of Rule 56(c) mandates the entry of summary judgment only *after adequate time for discovery.*  The relevant facts, the affidavit of witness/friend Bea Jordan, is exclusively in the control

---

[11]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

[12]     *Willis v. Town of Marshall*, 426 F.3d 251, 263-64 (4th Cir. 2005).

[13]     *Id.*

of Plaintiff.   Moreover, persons having pertinent knowledge of Aetna's decision to terminate

plaintiff's disability benefits, are Aetna's claim representatives, which will require subpoenas in order

to give testimony. Therefore, sufficient time for discovery is necessary before Plaintiff's motion can

be considered.   Defendant will be extremely prejudiced if not given the opportunity to develop the

facts of the case - the whole reason for the discovery process.

Further, Plaintiff's motion is also premature because it relies upon, and references, documents

that are outside of the record.   Since discovery has not begun, no record currently exits.   It is

elementary that a Court cannot consider any material that is not a part of the record.[14]   In *Donsky*,

the government filed a motion to strike the brief submitted on behalf of the five defendants.[15]   The

principal argument in the government's motion was that the defendant's brief improperly relied on

grand jury testimony which was not part of the record.[16]   The U.S. Court of Appeals refused to

consider those portions of the defendants' brief which referred to the outside evidence.[17]

Courts have made a limited exception to this rule, but it is inapplicable in the case of *sub*

*judice.*  In *United States v. Gato*, 924 F.2d 491, 501 (3d Cir. 1991), a defendant moved to strike the

government's brief because it referred to matters not in the record.[18]   The Court, although agreeing

that the documents were outside the record, denied the motion to strike because it had not relied on

---

[14]   *United States v. Donsky*, 825 F.2d 746, 749 (3d Cir. 1987), *citing United States ex rel. Bradshaw v. Alldredge*, 432 F.2d 1248 (3d Cir. 1970).

[15]   *Id.*

[16]   *Id.*

[17]   *Id.*

[18]   *United States v. Gato*, 924 F.2d 491, 501 (3d Cir. 1991).

-8-

any of those documents in ruling on the case.[19]  Similarly, in *Gen. Datacomm Indus. v. Arcara*, 309 B.R. 848, 854 (D. Del. 2003), the appellants moved to strike the portions of the appellees' answering brief that relied on factual representations which were not included in the designated record.[20]  The Court denied the motion to strike on the same grounds as in *Gato*:  the challenged references were not relevant in deciding the case.[21]

　　　The present case differs from *Gato* and *Arcara* because, here, the documents relied upon in Plaintiff's motion are relevant to the outcome.  Plaintiff has based her motion on the report written by Sylvester Puzio, the Social Security Administrative Law Judge, and the calculations of Defendant.  For this Court to rule on Plaintiff's motion, it would necessarily have to consider these documents.  However, these documents are not in the record because there has been no discovery in this case.  Consequently, this Court should not rely on them in deciding Plaintiff's motion.  Plaintiff's counsel has apparently taken it upon himself to begin the investigative process, and has formed conclusions based on documents outside of the designated record.

　　　Plaintiff's motion is also deficient because when it was filed, Plaintiff did not file a statement showing that Plaintiff made a reasonable effort to reach an agreement with Defendant on the matters set forth in the motion.  District Court Local Rule 7.1.1 states:

> Unless otherwise ordered, the Court will not entertain any non-dispositive motion . . . unless counsel for the moving party files with the Court, at the time of filing the motion, a statement showing that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in the motion.

---

[19]　*Id.*

[20]　*Gen. Datacomm Indus. v. Arcara*, 309 B.R. 848, 854 (D. Del. 2003).

[21]　*Id.* at 855.

Plaintiff did not file such a statement. Defendant, on the other hand, did write Plaintiff a letter regarding the matters set forth in the motion on June 26, 2006. Plaintiff never replied to this letter, and instead wrote directly to the Court. Even then, Plaintiff did not file the necessary statement. Such non-compliance with the Local Rules supports striking Plaintiff's motion.

In the absence of the initial conference required by Rule 26(f), there has been no opportunity to devise a logical discovery plan and the defense has had no opportunity to test plaintiff's proofs through the discovery process. Therefore, the motion should be stricken as premature.

**B.     THE DOCUMENT SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT FAILS TO CONFORM TO THE FORMAT AND CONTENTS OF A PROPER SUPPORTIVE BRIEF.**

The document submitted in support of Plaintiff's motion for partial summary judgment fails to conform to the requirements of Local Rules 7.1.2 and 7.1.3. It does not contain the format and contents of a proper supportive brief as detailed in those rules. Since the document does not follow the clearly stated Local Rules governing briefs, it should be stricken.

Local Rule 7.1.2(a) of Civil Practice and Procedure of the United States District Court for the District of Delaware mandates:

> Unless otherwise ordered by the Court, the briefing and affidavit schedule for presentation of all motions shall be: (1) the opening brief and accompanying affidavit(s) shall be served and filed on the date of the filing of the motion... .[22]

This subsection also states that the presentation and/or schedule may be set aside if the Court is advised that all parties are in agreement that no briefing is required.[23]  The Court's opinion in *Carefirst of Md., Inc. v. Care First Transp.*, 2002 U.S. Dist. LEXIS 22830, at *9 (D. Del. 2002),

---

[22]     *USDC D. Del. LR* 7.1.2 (2006).

[23]     *Id.*

provides support for strict enforcement of Rule 7.1.2. In *Carefirst,* this Court stressed, true to the plain meaning of the words of the Rule, that a motion must be accompanied by supportive briefing unless the Court is notified otherwise that the parties believe that no briefing is required or necessary.[24]    The facts of *Carefirst* differ only slightly (and insignificantly), from those in the present case. *Carefirst* involved a motion to dismiss as opposed to the current Motion for Summary Judgment, which lacked the required accompanying brief in support. The Court denied the motion because when movant's counsel filed the motion, counsel failed to observe the Rules of this Court pertaining to the supportive briefing requirements. Specifically, the movant failed to file a brief in support of its motion, and presented no other evidence on the record in support of the motion.

In the case *sub judice,* Plaintiff's motion for partial summary judgment is presently before the Court. Similar to *Carefirst,* this motion was filed without a supporting brief. Here, however, instead of filing the proper briefing, Plaintiff submitted an extremely informal and disorganized memorandum in an effort to state and support her points and authorities. Local Rule 7.1.2(a) clearly provides that a brief is required to be filed in support of all motions to this Court, *unless* otherwise ordered. This Court has not ordered that the parties herein shall present motions in any form other than that required by the Rules. Moreover, the parties themselves have expressed no such belief that no briefing is or will be required in this matter. For the aforementioned reasons, Plaintiff's motion for partial summary judgment should be stricken for its failure to adhere to the Rules of this Court.

Plaintiff's motion for partial summary judgment also violates Local Rule 7.1.3(c)(1) because it lacks the specific contents required of a brief. The Rule states that the opening and answering brief shall contain the following sections: (A) a table of contents setting forth the page number of each

---

[24]    *Carefirst of Md., Inc. v. Care First Transp., Inc.*, 2002 U.S. Dist. LEXIS 22830, at *9 (D. Del. 2002) attached as Exhibit A.

section; (B) a table of citations of cases, statutes, rules, and other authorities cited in the brief; (C) a statement of the nature and stage of the proceeding; (D) a summary of the argument; (E) a statement of the facts containing all facts which should be known in order to determine the points in controversy; (F) an argument section containing the appropriate headings; and, (G) a short conclusion summing up the arguments and stating the specific relief sought.[25]  In *Kappes v. E.I. DuPont De Nemours & Co.*, 1999 U.S. Dist. LEXIS 3580, at *38 (D. Del. 1999), where the plaintiff's answering brief in response to defendant's motion for summary judgment was devoid of a sufficient argument and conclusion section, this Court found a violation of Rule 7.1.3(c)(i).[26]  There, because of the deficiencies in the plaintiff's brief, the defendant's motion was granted.[27]

Rule 14 of the Supreme Court of Delaware mirrors that of Local Rule 7.1.3.  Subsection 14(b) thereunder requires the exact sections of a supporting brief as those listed in 7.1.3(c).[28] Consequently, the rules should be interpreted and enforced equally.  The Supreme Court of Delaware treats the issue of nonconforming briefs in the same strict and dogmatic manner as this Court.  For example, in *Yancey v. Nat'l Trust Co.*, 1998 Del. LEXIS 188, at *4 (Del.1998), the Supreme Court found that the appellant's brief was severely deficient because it did not include a table of contents, a table of citations, or state the nature of the proceedings.[29]  The brief also lacked a summary of the

---

[25]   *USDC D. Del. LR* 7.1.3(c)(1)(A-G) (2006).

[26]   *Kappes v. E.I. DuPont De Nemours & Co.*, 1999 U.S. Dist. LEXIS 3580, at *38 (D. Del. 1999) attached as Exhibit B.

[27]   *Id.*

[28]   *Del. Sup. Ct. R.* 14 (2006).

[29]   *Yancey v. Nat'l Trust Co.*, 1998 Del. LEXIS 188, at *4 (Del.1998) attached as Exhibit C.

argument section, a statement of the facts, and an argument section.[30]  The Supreme Court disapprovingly stated that:

> Appellant's opening brief is entirely inconsistent with the letter and spirit of the Supreme Court Rules.  It qualifies as a nonconforming paper that is subject to being stricken.[31]

Similarly, in *Campbell v. JAY-DEE Store*, 519 A.2d 700 (Del. 1986), the Supreme Court of Delaware granted the appellee's motion to strike appellant's opening brief for failure to comply with Supreme Court Rule 14(b).[32]  There, the Supreme Court found that the brief lacked the requisite formalities and contents of a proper supportive brief.[33]

Like *Kappes*, *Yancey*, and *Campbell*, Plaintiff's document in support of her motion for partial summary judgment in the case *sub judice* is extremely deficient and violates the Rules of the Court for the contents of a proper brief.  While Plaintiff segregates her statement of facts, argument, and conclusion, the document is devoid of the other sections required by Local Rule 7.1.3(c)(1).  Specifically, as in *Yancey*, Plaintiff's document does not include a table of contents setting forth the page number of each section, including all headings designated in the body of the brief; a table of citations of cases, statutes, rules, and other authorities, alphabetically arranged; and, fails to state the nature of the proceedings.  Similar to *Kappes*, the document contains an insufficient argument section because it is not divided under appropriate headings distinctly setting forth separate points as mandated by Rule 7.1.3(c)(1)(F).

The document also contains an "Issues Presented" section, where Plaintiff represents that there is record evidence supporting her contention that she is permanently disabled and that

---

[30]   *Id.*

[31]   *Id.*

[32]   *Campbell v. JAY-DEE Store*, 519 A.2d 700 (Del. 1986).

[33]   *Id.*

Defendant committed legal malpractice. Plaintiff makes no effort to further explain why she has come to these conclusions. However, as was discussed above, the discovery process has not yet begun. Therefore, Plaintiff's conclusory statements, based on what she calls "record evidence," are merely hollow assertions based on documents which have not been determined to be part of this case or otherwise subjected to scrutiny inherent in the discovery process. For example, Plaintiff correctly states (in Paragraph 16), that Defendant has no medical evidence to support her defense that Plaintiff is not disabled." To so argue is to prove Defendant's counterclaim that the motion is untimely as discovery has not been permitted. Certainly, once the parties are permitted discovery, the defense will request Plaintiff to present himself to a physician of its choosing for purposes of a physical examination, such that the medical issue can be resolved. This "Record of Evidence" section of Plaintiff's document has no place in a formal brief required by this Court. Plaintiff's document is missing the essential structure and contents that are required of a conforming supportive brief, and as such, is in clear violation of the Rules of this Court. As in *Yancey*, Plaintiff's opening brief is inconsistent with the letter and spirit of the Rules of the U.S. District Court for the District of Delaware. It qualifies as a nonconforming paper, which should be stricken. This Court should adhere to the stance it has taken in the past when dealing with this issue and strike the Plaintiff's documents for their lack of conformity.

     **C.    THE FORMAT OF PLAINTIFF'S MOTION VIOLATES LOCAL RULE 7.1.2(b) BECAUSE THE COURT DID NOT ORDER, AND THE PARTIES DID NOT AGREE, TO SUBMIT STATEMENTS OF POINTS AND AUTHORITIES IN MEMORANDUM FORM IN PLACE OF BRIEFS.**

The format of Plaintiff's memorandum violates Local Rule 7.12(b) because the Court did not order, and the parties did not agree, to submit a statement of points and authorities in memorandum form in place of formal briefs. Local Rule 7.1.2(b) provides that:

> The Court may order or the parties may agree to serve and file, simultaneously or on an ordered or agreed schedule, statements of points and authorities in memorandum form in place of briefs.[34]

While only limited case law addresses this specific issue, the Rule is plain in its meaning, and its language is unambiguous. In applying this subsection to the case *sub judice*, it is undisputed that the parties never agreed to file memoranda. As a practical matter, Defendant received no communication of any kind about this motion. Whereas Defendant had absolutely no notice that this motion would be filed, Defendant could not have entered into any such agreement.

Furthermore, the Court has not ordered that the parties are permitted to file informal memorandums of law in place of briefs. Although Mr. Gibson's June 26 letter to the Court is tantamount to an invitation for the Court to permit memoranda *sua sponte*, the Court has taken no action on that letter request.

Plaintiff has completely disregarded the Rules of this Court by filing her motion in a manner that she unilaterally deems sufficient. In a letter dated June 26, 2006, the undersigned brought all the aforementioned deficiencies to the attention of Plaintiff's counsel. Defendant notified counsel for Plaintiff that under the Rules, either permission of the Court or agreement among the parties was necessary before filing a memorandum in lieu of a brief. Defense counsel also respectfully requested counsel for the Plaintiff to withdraw the motion without prejudice, such that the motion could be filed later in the discovery phase, or alternatively, to file a motion that complied with the Local Rules. Plaintiff's counsel implicitly refused this request. Instead of responding directly to Defendant, Plaintiff later the same day, sent a letter requesting permission to file the motion informally, despite the fact that it had already been filed four days earlier on June 22, 2006. Plaintiff's response was in bad faith. Therefore, Defendant's motion to strike should be granted.

---

[34]    *USDC D. Del. LR 7.1.2(b)* (2006).

DE061203.1                          -15-

**D.      ALTERNATIVELY, SHOULD THE COURT DENY DEFENDANT'S MOTION TO STRIKE, DEFENDANT REQUESTS ADDITIONAL TIME TO RESPOND TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.**

Defendant has kindly asked Plaintiff to immediately withdraw her motion, or alternatively, that she file a supporting brief that complies with the Local Rules. Those requests were denied, and as a result, Defendant's progress has been impeded. Defendant would be prejudiced if not permitted 10 days time to respond to Plaintiff's motion and address the arguments therein, if the Court deems appropriate.

Therefore, Defendant Lois J. Dawson, respectfully prays that her Motion to Strike, or alternatively, her Motion for Additional Time to Respond to Plaintiff's Motion for Partial Summary Judgment be granted.

## CONCLUSION

In summary, Plaintiff's motion for partial summary judgment is premature, unsupported by record evidence, and violates several District Court Local Rules; accordingly, this Court should strike the motion. The parties have never held the mandatory Fed. R. Civ. P. 26(f) case management conference, so there has been no scheduling conference, and no scheduling order. Moreover, discovery has not begun because it is not authorized under the Rule. Consequently, the documents referenced in Plaintiff's motion are not properly in the record. They may not be used in support of her motion at this juncture because Defendant has not been permitted to subject them to scrutiny inherent in the discovery process. A motion for summary judgment at this time will be prejudicial to Defendant.

Moreover, Plaintiff's motion fails to follow the Local Rules governing briefs in support of motions. First, motions must be supported with briefs; Plaintiff's was not. Second, the document

that Plaintiff did file with the motion lacks the requisites of a brief. Finally, the parties never agreed to proceed in any way other than briefs; nor has this Court issued an Order granting such leave to Plaintiff. Defendant brought these deficiencies to Plaintiff's attention with no result.

For the reasons aforementioned, Defendant Lois J. Dawson respectfully requests the Court to grant its Motion to Strike, or alternatively, to grant her Motion to Allow Additional Time to Respond to Plaintiff's Motion for Partial Summary Judgment.

**Marks, O'Neill, O'Brien & Courtney, P.C.**

*/s/ Norman H. Brooks, Jr.*
Norman H. Brooks, Jr., Esquire, (I.D.. No. 2568)
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant Lois J. Dawson*

DATED: July 19, 2006

**EXHIBIT 1**

1 of 1 DOCUMENT

**CAREFIRST OF MARYLAND, INC., d/ b/ a Care First Blue Cross Blue Shield, Plaintiff, vs. CARE FIRST TRANSPORTATION, INC., d/ b/ a Care First Transportation, a/ k/ a Care First Transportation, Defendant.**

**Civil Action No. 02-229-# # # (MPT)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 22830*

**November 1, 2002, Decided**

**DISPOSITION:** [*1] Defendant's motion to dismiss for failure to state claim denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff medical services provider filed suit against defendant transportation corporation. After the corporation did not respond, the provider moved for default judgment and requested that the magistrate find that, inter alia, the corporation committed trademark infringement in violation of *15 U.S.C.S. § 1114* and unfair competition in violation *15 U.S.C.S. § 1125*(a) and (b). The corporation moved to dismiss for failure to state a claim.

**OVERVIEW:** The provider's facts supported its claims against the corporation. Therefore, the corporation was not entitled to dismiss the provider's motion pursuant to Fed. R. Civ. P. 12(b)(6). The provider argued that the corporation's motion to dismiss should have been denied because (1) a corporation could not defend itself pro se, (2) the corporation's motion was untimely, and (3) the motion was not made with an accompanying brief as required by district court rules. All of the provider's arguments were correct. Because the corporation was a corporation appearing without proper representation, its motion to dismiss was denied on this ground. The provider filed its complaint on March 27, 2002. The corporation's motion was not filed until July 23, 2002, nearly four months later. Therefore, due to the corporation's untimeliness, the motion should also have been denied on that basis. The corporation failed to accompany its motion to dismiss with proper briefing as required by U.S. Dist. Ct., D. Del., Civ. R. 7.1.2. In light of the absence of any factual or legal support for the motion, the corporation's motion to dismiss was denied on that basis, as well.

**OUTCOME:** The corporation's motion to dismiss for failure to state a claim was denied by the magistrate.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] To grant a Fed. R. Civ. P. 12(b)(6) motion, a court must determine that the moving party is entitled to relief under the reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN2] It is well established that a complaint should be dismissed on the basis of failing to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. However, a court does not have to accept every allegation as true. Nor should conclusory allegations of law, unsupported conclusions and unwarranted inferences be accepted as true. Thus, although the plain statement required by Fed. R. Civ. P 8(a)(2) should be read in a light most favorable to a plaintiff, the conclusory allegations unsupported by any factual assertions, made in a plaintiff's complaint cannot withstand a motion to dismiss.

*Civil Procedure > Parties > Capacity of Parties > General Overview*

2002 U.S. Dist. LEXIS 22830, *

*Civil Procedure > Parties > Required Representation*
[HN3] A corporation may appear in federal court only by representation of a licensed attorney.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN4] A motion to dismiss must also be filed within 20 days after service and summons. Fed. R. Civ. P. 12(a).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN5] According to the U.S. Dist. Ct., D. Del., Civ. R. 7.1.2., a motion to dismiss must be accompanied by supportive briefing unless a party advises the court that because of the nature of the motion, the involved parties believe no briefing is required.

**COUNSEL:** Sheldon K. Rennie, Esq., Fox, Rothschild, O'Brien & Frankel, LLP, Wilmington, DE, for Plaintiff.

**JUDGES:** Mary Pat Thynge, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Mary Pat Thynge

**OPINION:**

### MEMORANDUM OPINION

Dated: November 1, 2002

Wilmington, Delaware

Mary Pat Thynge,

**U.S. Magistrate Judge**

### I. Introduction.

Presently before the Court is Defendant's motion to dismiss for Plaintiff's failure to state a claim upon which relief can be granted pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. For the foregoing reasons stated below, Defendant's motion to dismiss is DENIED.

### II. Background.

#### A. Factual.

Plaintiff is a Maryland corporation, with its principle place of business in Maryland, *D.I. 2 at 2*, and a licensee of Blue Cross Blue Shield Association, located in Chicago, Illinois. *D.I. 2 at 5*. Plaintiff serves as the parent corporation to a number of health maintenance and pre-

ferred provider organizations. *D.I. 2 at 3*. It services more than 5.2 million members (including family members), who reside in various states. Plaintiff has been the registered [*2] title owner of a collective membership mark registration for the mark "CAREFIRST" since June 6, 1989, and title owner of trademark and service mark registrations for the "CAREFIRST" mark as of July 4, 1989. The mark has been used by plaintiff since 1977 through their predecessor companies, prepaid health care plans, also using the variations of "MEDICAREFIRST" and "LIBERTY CAREFIRST". *Id.*

Through contracted plans, plaintiff provides comprehensive medical services, products and care to its enrolled members. *D.I. 2 at 3*. The "CAREFIRST" mark and name is used to indicate comprehensive medical services rendered to or on behalf of their members and preferred provider organizations. *D.I. 2 at 4*. The mark is used to distinguish plaintiff from other health care service providers. It is used on membership cards, enrollment kits, membership packets and member newsletters. *Id.*

Plaintiff's membership predominantly resides in Maryland, Virginia, West Virginia, Pennsylvania, Delaware, New Jersey and the District of Columbia. *D.I. 2 at 4*. Other members live in states including Michigan, Florida, Kentucky and Kansas. These members travel throughout the United States and foreign [*3] countries. Each member receives a membership card entitling them to payment for emergency healthcare anywhere in the world and to non-emergency health care with prior notification and approval by the respective health care maintenance or preferred provider owned by plaintiff. Plaintiff's membership is honored by most health care facilities in the United States. *Id.*

Currently, plaintiff's organizations have agreements with more than 1,000 different companies under which they will provide to all enrolled employees medical services at a specified rate of coverage. *D.I. 2 at 4-5*. Several of these companies are located throughout the country. *D.I. 2 at 5*.

Defendant is a Delaware corporation organized on January 11, 2001, *D.I. 2 at 5*, with its principle place of business in Delaware *D.I. 2 at 2*. Defendant provides point to point transportation services in Delaware and Pennsylvania. *D.I. 2 at 2*. These services are promoted through defendant's "http//www.carefirstransport.com" website/ domain name and direct mailing. *Id.* The promotions are also provided in connection with medical appointments, dialysis, counseling and clinics to those who qualify for "Senior Citizens [*4] Affordable Taxi" (SCAT). n1 *D.I. 2 at 6*

n1 In order to be eligible for SCAT an individual must be "ambulatory handicapped" or over the age of 60. *D.I. 2 at 6.*

Defendant does not sell and/ or offer health care plans, enrollment kits, memberships, or preferred networks. *D.I. 11 at 2.* Defendant has applied for the trademark "CARE FIRST TRANSPORTATION ITS ALL ABOUT YOU" at the United States Patent and Trademark Office. *Id.*

**B. Procedural.**

On January 11, 2002, plaintiff sent defendant a letter requesting cease and desist of any and all use by defendant of the "CARE FIRST" mark. *D.I. 2 at 6.* Defendant did not respond and on March 27, 2002, plaintiff filed its complaint in this Court. *D.I. 9 at 1.* Defendant was served on April 2, 2002 but did not answer or otherwise respond to plaintiff's complaint. Plaintiff moved for entry of default on April 26, 2002, which was entered by the District Court Clerk on May 13, 2002. *Id.* Subsequently, plaintiff moved for default judgment pursuant to [*5] Fed. R. Civ. P. 55(b). *D.I. 9 at 1.*

In that motion, plaintiff requested the Court find in accordance with their complaint, that defendant committed: (1) trademark infringement of plaintiff's "CAREFIRST" trademark and service mark, and the "CAREFIRST" collective membership mark in violation of *15 U.S.C. § 1114;* (2) common law trademark, service mark, collective membership mark and trade name infringement of the "CAREFIRST" mark and name; (3) unfair competition of the "CAREFIRST" mark and name in violation of *15 U.S.C. § 1125*(a) and (b); (4) common law unfair competition; and (5) dilution of the "CAREFIRST" mark and name in violation of *15 U.S.C. § 1125*(c). *D.I. 9 at 2.*

Upon a finding of these above claims, plaintiff then requests the Court to grant the following relief: (1) order that defendant and all persons in active concert or participation be permanently enjoined and restrained from further acts of trademark, service mark, collective membership mark and trade name infringement, dilution, and unfair competition of the "CAREFIRST" mark and name specifically from further use of said mark, trade name, [*6] or colorable variants thereof; (2) order that defendant's website/ domain name be transferred to plaintiff; (3) order that defendant pay over all profits which were obtained as a result of defendant's willful appropriation, infringement, dilution and intentional acts of infringement and unfair competition; (5) award plaintiff reasonable attorney's fees and expenses incurred as a consequence of defendant's willful appropriation, infringement, dilution and intentional acts of unfair competition. *D.I. 9 at 2-3.*

On August 7, 2002, defendant filed a motion to dismiss by failure to state a claim upon which relief can be granted, pursuant to *Fed. R. Civ. P 12(b)(6). D.I. 11 at 1.* Plaintiff responded to defendant's motion on August 19, 2002, reiterating their previous arguments and requesting defendant's motion to dismiss be stricken because: (1) a corporation cannot defend itself *pro se;* (2) the motion is untimely; and (3) that the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1-2.*

**III. Discussion.**

**A. Standard for 12(b)(6) motion to dismiss.**

[HN1] To grant a 12(b)(6) motion, a court must determine that the moving party [*7] is entitled to relief under the "reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint." *Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir. 1997).* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.*

[HN2] It is well established that a complaint should be dismissed on the basis of failing to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* However, this court does not have to accept every allegation as true. *Flanagan v. Shively, 783 F. Supp. 922, 927 (M.D. Pa. 1992).* Nor should "conclusory allegations of law, unsupported conclusions and unwarranted inferences ... be accepted as true." *Id.* (citing *Conley, 355 U.S. at 45-46).* Thus, although the plain statement required by *Fed. R. Civ. P 8(a)(2)* should be read in a light most favorable to the plaintiffs, the conclusory allegations [*8] unsupported by any factual assertions, made in plaintiffs' complaint cannot withstand a motion to dismiss.

Here, plaintiff does provide this Court with facts to support their claims against defendant. A "reasonable reading of the pleadings" in this matter shows that relief can be granted under the presented facts. Therefore, defendant is not entitled to dismiss plaintiff's motion pursuant to grant a *Fed. R. Civ. P. 12(b)(6).* The reasoning for this decision are set forth as follows.

**B. Plaintiff's arguments against dismissal of their claim.**

As mentioned above, plaintiff provides three reasons why defendant's motion to dismiss should be denied: (1) that a corporation cannot defend itself *pro se;* (2) defendant's motion is untimely; and (3) the motion was not made with an accompanying brief as required by District

Court Rules. *D.I. 12 at 1-2.* All of plaintiff's arguments are correct.

Defendant must be represented by counsel. [HN3] A corporation may appear in federal court only by representation of a licensed attorney. *Rowland v. California Men's Colony, 506 U.S. 194, 201-02, 121 L. Ed. 2d 656, 113 S. Ct. 716 (1993); U.S. v. Cocivera 104 F.3d 566 (3rd Cir. 1996).* [*9] Here, defendant's motion to dismiss was filed by its president, Denette Dawson, who is not a Delaware licensed attorney. Thus, because defendant is a corporation appearing before this Court without proper representation, defendant's motion to dismiss is denied on this ground.

Defendant also failed to timely respond to plaintiff's allegations. [HN4] A motion to dismiss must also be filed within twenty (20) days after service and summons. *Fed. R. Civ. P. 12(a).* Here, plaintiff filed its complaint on March 27, 2002. Defendant's motion was not filed until July 23, 2002, nearly four months later. Therefore, due to defendant's untimeliness, the motion should also be denied on that basis.

Lastly, defendant failed to accompany its motion to dismiss with proper briefing. [HN5] According to the Local District Court Civil Rule 7.1.2., a motion to dismiss must be accompanied by supportive briefing unless a party advised the Court that because of the nature of the motion, the involved parties believe no briefing is required. Beyond the motion itself, there are no further pleadings or other evidence on the record in support of defendant's motion to dismiss. Due to defendant's failure to observe the [*10] rules of this Court, defendant's motion should be denied. More importantly, defendant in its motion has failed to provide any bases for its position. In light of the absence of any factual or legal support for the motion, defendant's motion to dismiss is denied on that basis, as well.

## IV. Conclusion

For the foregoing reasons discussed above, this Court finds that "reasonable reading of the pleadings" show no doubt that plaintiff can be relieved under the facts presented. Consequently, defendant's motion to dismiss for failure to state a claim is DENIED. An Order consistent with this opinion will follow.

### ORDER

At Wilmington, this **1st** day of **November, 2002.**

For the reasons set forth in the Memorandum Opinion dated November 1, 2002,

IT IS ORDERED that defendant's motion to dismiss for failure to state a claim is DENIED. *28 U.S.C. § 636* and *Fed. R. Civ. P. 72* apply to any objections to the Memorandum Opinion and this Order.

Mary Pat Thynge

UNITED STATES MAGISTRATE JUDGE

.

**EXHIBIT 2**

LEXSEE 1999 U.S. DIST. LEXIS 3580

**Jerry KAPPES, Plaintiff, v. E.I. DUPONT DE NEMOURS & CO., INC., Individu-
ally, and in its capacity as Administrator of the DuPont Pension and Retirement
Plan, and the DUPONT PENSION AND RETIREMENT PLAN, Defendants.**

**Civil Action No. 97-443-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1999 U.S. Dist. LEXIS 3580*

**March 18, 1999, Decided**

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION
ONLY

**DISPOSITION:** Defendant's motion for summary
judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee filed
suit against defendant employer, claiming that his em-
ployment was improperly terminated because of his age
in violation of the Age Discrimination in Employment
Act, *42 U.S.C.S. § 623*(a)(1). Plaintiff also asserted
claims of reverse race and gender discrimination, viola-
tions of Title VII of the Civil Rights Act of 1964, *42
U.S.C.S. § 2000*(e) et seq. Defendant filed for summary
judgment in response to plaintiff's claims.

**OVERVIEW:** Plaintiff, a white male employee, filed
suit against defendant employer, claiming that he was
discriminated against on the basis of his age, race, and
gender. Plaintiff filed claims under the Age Discrimina-
tion in Employment Act (ADEA), *42 U.S.C.S. §
623*(a)(1), and under Title VII of the Civil Rights Act of
1964 (Title VII), *42 U.S.C.S. § 2000*(e) et seq. The court
granted summary judgment in favor of defendant on all
of plaintiff's claims. The court found that with respect to
the Title VII reverse race claim, plaintiff failed to show
that defendant had an inclination or tendency to dis-
criminate against Caucasians. Because plaintiff failed to
show that defendant was the "unusual employer" that
discriminated against men and that female employees
were given preferential treatment, plaintiff's reverse gen-
der claim failed as well. Finally, the court dismissed
plaintiff's ADEA claim because plaintiff failed to show
that he was qualified to work in the positions he sought
or that the younger individuals hired for those positions
lacked the proper qualifications.

**OUTCOME:** The court granted defendant employer's
motion for summary judgment in plaintiff employee's
claims of reverse race and gender discrimination and age
discrimination. The court found that plaintiff failed to
show that defendant tended to discriminate against Cau-
casians, that defendant gave preferential treatment to
women, or that defendant hired younger individuals who
lacked proper qualifications.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards >
Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards >
Materiality*
*Civil Procedure > Summary Judgment > Supporting
Materials > Affidavits*
[HN1] A court shall grant summary judgment only if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a
matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Burdens of
Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards >
General Overview*
*Evidence > Procedural Considerations > Burdens of
Proof > Allocation*
[HN2] The party moving for summary judgment bears
the burden of proving that no genuine issue of material
fact exists. Facts that could alter the outcome are 'mate-
rial,' and disputes are 'genuine' if evidence exists from
which a rational person could conclude that the position

of the person with the burden of proof on the disputed issue is correct. If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN3] The court will view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing a motion for summary judgment. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN4] If a party opposing a motion for summary judgment fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
[HN5] In the Title VII of the Civil Rights Act of 1964, context, the defendant is entitled to summary judgment if it can demonstrate that: (1) the plaintiff is unable to establish a prima facie case of discrimination; or (2) if the plaintiff can establish a prima facie case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's legitimate, nondiscriminatory reason for discharging the plaintiff. *42 U.S.C.S. § 2000*(e) et seq. The court evaluates defendant's summary judgment motion as follows: the district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible. The plaintiff can demonstrate that there is "sufficient doubt" by showing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
[HN6] A plaintiff in a Title VII action under the Civil Rights Act of 1964, *42 U.S.C.S. § 2000*(e) et seq., can defeat a motion for summary judgment by showing that the reason for the employer's act was discrimination.

*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
[HN7] See *42 U.S.C.S. § 2000*(e)-(2)(a).

*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
*Evidence > Procedural Considerations > Burdens of Proof > Initial Burden of Persuasion*
[HN8] A plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination under Title VII of the 1964 Civil Rights Act, *42 U.S.C.S. § 2000*(e) et seq.

*Labor & Employment Law > Affirmative Action > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN9] To establish a prima facie case of unlawful race discrimination based on disparate treatment, the plaintiff must show that: (1) he is a member of a protected group, (2) that he applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite his qualifications, he was rejected, and (4) members outside the protected group received more favorable treatment.

*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens*
*Labor & Employment Law > Discrimination > Reverse Discrimination*
[HN10] Although Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000*(e) et seq., prohibits racial and

1999 U.S. Dist. LEXIS 3580, *

gender discrimination against all people, plaintiffs alleging reverse discrimination also must show background circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority. Background circumstances that support an inference of reverse discrimination fall into two categories: (1) evidence that the employer has "some reason or inclination" to discriminate against the majority and (2) any other evidence that raises an inference of reverse discrimination.

*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Circumstantial & Direct Evidence*
*Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Burden Shifting*
*Labor & Employment Law > Discrimination > Reverse Discrimination*
[HN11] Where the plaintiff asserts a disparate treatment theory of employment discrimination, the plaintiff may present either direct evidence of discriminatory intent, or indirect, pretextual evidence of discrimination. If the plaintiff presents competent indirect evidence of discrimination, the burden of going forward shifts to the defendant who must then articulate a legitimate, nondiscriminatory reason for the challenged employment action.

*Evidence > Inferences & Presumptions > Creation of Presumptions*
*Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
[HN12] If an employer is successful in meeting its burden of production in a disparate treatment employment discrimination case by showing a legitimate reason for the challenged employment action, the presumption of discrimination created by the prima facie showing drops from the case, and the plaintiff must show by a preponderance of the evidence that the employer's proffered reason for the employment decision was merely a pretext for discriminatory animus. The plaintiff can satisfy his burden of proof either directly by persuading the fact finder that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. At all times, the ultimate burden of persuading the trier of fact of the employer's discriminatory intentions remains with the plaintiff.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Civil Procedure > Summary Judgment > Supporting Materials > Memoranda of Law*
[HN13] In a motion for summary judgment, the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN14] Unsupported assertions of fact cannot overcome a motion for summary judgment.

*Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof*
[HN15] In order to state a prima facie case of age discrimination, the plaintiff must show that he (1) was a member of a protected class, i.e., that he was over 40, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was ultimately replaced, or the position was filled by, a younger person. The evidence must be sufficient to convince a reasonable factfinder to find all of the elements of the prima facie case.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > Discharges & Failures to Hire*
[HN16] The Age Discrimination in Employment Act makes it unlawful for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C.S. § 623(a).

**COUNSEL:** For Plaintiff: Robert Jacobs, Esquire, Jacobs & Crumplar, Wilmington, Delaware.

For Plaintiff: James H. Rion, Esquire, Paul J. Doolittle, Esquire, Of Counsel, Ness, Motley, Loadholt, Richardson & Poole, Charleston, North Carolina.

1999 U.S. Dist. LEXIS 3580, *

For Plaintiff: Gary W. Kendall, Esquire, J. Greg Webb, Esquire, Miche, Hamlett, Lowry, Rawsmussen & Tweel, P.C., Charlottesville, Virginia.

For Plaintiff: Kenneth Henley, Esquire, Bala Cynwyd, Pennsylvania.

For Plaintiff: Dennis Ventriglia, Esquire, Wilmington, North Carolina.

For defendants: Eileen M. Filliben, Esquire, Kathleen Furey McDonough, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM OPINION

Dated: March 18, 1999
Wilmington, Delaware

**Robinson, District Judge**

## I. INTRODUCTION

Jerry Kappes ("plaintiff") filed this action against E.I. du Pont de Nemours & Co., individually and in its capacity as administrator of the DuPont Pension and Retirement Plan, and against the DuPont Pension and Retirement Plan (collectively "defendant"). [*2] This action arises from plaintiff's discharge during a Reduction in Force ("RIF") at defendant's Seaford, Delaware Nylon manufacturing plant. Plaintiff, a Caucasian male, asserts claims of reverse race and gender discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* et seq. ("Title VII"), and age discrimination under the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 623*(a)(1). Plaintiff also asserts claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1140* et seq. n1 Currently before the court is defendant's motion for summary judgment. The court has jurisdiction over plaintiff's federal claims pursuant to *28 U.S.C. § 1331*. For the reasons that follow, the court shall grant defendant's motion for summary judgment.

n1 In his initial complaint, plaintiff raised several claims founded on state common law theories. (D.I. 1, PP 52-79) The court ruled, however, that ERISA preempted these state claims. (D.I. 17) Nonetheless, in counts five through nine

of his second amended complaint, plaintiff again raised state common law fraud claims as well as state breach of fiduciary duty and breach of covenant of good faith and fair dealing claims. (D.I. 38, PP 52-79) In his answer to defendant's motion for summary judgment plaintiff voluntarily dismissed these state claims. (D.I. 69 at 16-17) Accordingly, the court shall grant defendant's motion for summary judgment with respect to counts five through nine of the second amended complaint. Defendant also has moved for sanctions under *Fed.R.Civ.P. 11* for costs associated with briefing a response to plaintiff's state claims. (D.I. 72 at 3-4) Defendant's motion for sanctions is denied.

[*3]

## II. BACKGROUND

At the time of his termination, plaintiff was fifty-three years old and had worked in defendant's Seaford, Delaware plant for twenty-seven years. The Seaford plant manufactures synthetic Nylon fibers. n2 From 1969 to 1983, plaintiff held various posts on the plant's Bulk Continuous Filament ("BCF") manufacturing line. In November 1983, plaintiff left the manufacturing floor for a labor planning and development position. From 1983 to 1991, he served as a labor planning supervisor -- a position that entailed cost accounting and cost reduction planning. From 1991 until the termination of plaintiff's employment, plaintiff served as a Benefits Specialist in the plant's human resources department. Plaintiff's duties entailed employee recruiting as well as compensation and medical benefits counseling. (D.I. 65 at A143-44, A375, A378-80)

n2 According to defendant, there are three types of Nylon fiber products manufactured at its Seaford plant: Bulk Continuous Filament, Staple, and Textile/Apparel. (D.I. 64 at 7)

[*4]

Defendant eliminated plaintiff's human resources position during a 1996 RIF. During a subsequent workforce restructuring at the Seaford plant, defendant rehired certain employees for new, consolidated positions. Plaintiff's federal claims arise out of defendant's refusal to rehire him.

### A. The RIF Process

Increased competition in the global Nylon industry forced defendant's Seaford plant managers to initiate two RIFs during the 1990s in order to increase competitive-

1999 U.S. Dist. LEXIS 3580, *

ness. n3 During the first round of cost-cutting measures, managers eliminated approximately fifty nonmanufacturing positions at the Seaford plant. (D.I. 65 at A461) The plant's human resources department, where plaintiff worked, bore the brunt of these reductions. Defendant consolidated several human resources positions, and it "outsourced" the administration of the plant's health benefits to its Wilmington corporate headquarters. In 1995, defendant also shifted employee compensation responsibilities from the Seaford plant's human resources department to Wilmington. (D.I. 65 at A239, A249, A291-92, A406-07, A452)

> n3 Defendant cites low growth in the Nylon market and customer demand for less labor intensive Nylon products as additional reasons for reducing its labor force. (D.I. 64 at 6)

[*5]

In 1996, defendant's Vice President in charge of Nylon production ordered defendant's entire Nylon division to cut an additional $ 150 million in costs. (D.I. 65 at A147, A149-55) Management at the Seaford plant contributed to this sum by committing to a plant-wide eighteen million dollar cost reduction, which necessitated another round of work force reductions and consolidations. n4 (D.I. 65 at A247-48; D.I. 70 at B50) During this RIF, plant managers eliminated plaintiff's human resources position and reduced the human resources department to a staff of two. (D.I. 65 at A259)

> n4 Specifically, the cost-cutting measures included the discontinuation of an entire line of Staple production, consolidations of manufacturing positions, and the elimination or consolidation of "support" positions in the plant's finance and human resources departments. (D.I. 65 at A248-49)

Employees whose positions were eliminated during the 1996 RIF could retire voluntarily n5 or nominate themselves for new, consolidated positions at [*6] the plant. (D.I. 65 at A161) Plant management developed a complex performance evaluation process to evaluate employees for placement in these new positions. A "Selection Team" composed of plant managers conducted the evaluation process. (D.I. 65 at A181-85) Management guidelines required that Selection Team members know both the duties of the vacant positions and the candidates under consideration for those positions. n6 (D.I. 65 at A170) The Selection Team also included "outside"

members who monitored the fairness of the evaluations. (D.I. 65 at A253-54)

> n5 According to defendant, thirteen employees -- all males over the age of forty -- opted for early retirement. (D.I. 72 at 10 n.2)

> n6 Apparently, self-nominations were not a prerequisite for consideration by defendant for new positions. It appears that the Selection Team also nominated candidates on its own in addition to considering self-nominations. (See D.I. 64 at 10 ("For each position the Team went through the list of all available employees and suggested candidates for the position at issue."))

[*7]

For each position, the Selection Team conducted an evaluation of whether, and to what extent, candidates exhibited DuPont's "Five Leadership Criteria" n7 and whether or not candidates possessed the particular skills required for each position. The ranking form used by the Selection Team provided three ratings ("exceeds," "meets," and "does not meet") for the required leadership and job qualification skills. (D.I. 65 at A165) According to the plant manager, a "meets" ranking denotes that a person possesses the skill in question, while "does not meet" means that a person "does not possess the qualifications . . . needed for the task involved." (D.I. 65 at A264) These rankings facilitated discussions of a candidate's suitability for a position. The Selection Team filled positions after reaching a consensus about the most qualified candidate for each position. Where discussion augmented a candidate's raw ranking, the Team noted the substance of the discussion on the selection process documents. (See, e.g., D.I. 65 at A192, A194, A196, A198) The Team removed those selected for a given position from further consideration for other positions.

> n7 Defendant's "Five Leadership Criteria" are "Business Direction," "Implementation," "Networking/Teambuilding," "People Development," and "Personal Leadership Characteristics." (D.I. 65 at A180)

[*8]

After the Selection Team filled vacant positions at the plant, defendant discharged all remaining employees who had not volunteered for early retirement or who had not received new assignments. n8 Plaintiff was among those employees terminated. Terminated employees could participate in a severance package known as the Career Transition Plan ("CTP"). Under the CTP, man-

agement permitted terminated employees to remain on the payroll for sixty days following notice of their termination. (D.I. 65 at A201) During this period, employees had no job duties except to find new employment. (D.I. 65 at A201) The CTP also included a severance package that offered one month's salary for every two years of service (not to exceed one year's salary), as well as medical, dental, and life insurance coverage, and up to $ 5,000 in educational assistance. (D.I. 65 at A206-12)

n8 Defendant conducted an adverse impact study to determine the RIF's effect on the plant's minority population. (D.I. 65 at A187) Of the 123 males affected by the RIF, eighty-three were hired for other positions while defendant eventually terminated forty. Of the fifteen women affected by the RIF, defendant rehired eleven while terminating five. Roughly thirty-four percent of Caucasians and fifteen percent of African-Americans affected by the RIF were terminated. (D.I. 65 at A187) According to the Seaford plant manager, Caucasian males constituted the majority of the plant's population prior to the 1996 RIF. (D.I. 70 at B49) Although defendant's study did not measure the 1996 RIF's impact on its older workers, defendant admits that employees over the age of forty constituted the majority of those terminated during the RIF. (D.I. 38, P 16) Defendant explains this disparity by noting that the average age of the plant prior to the 1996 RIF was "forty-seven or forty-eight." (D.I. 70 at B49)

[*9]

Following his termination, plaintiff enrolled in the CTP and appealed the Selection Team's decision. (D.I. 65 at A217-18; D.I. 70 at B33-36) The plant manager denied plaintiff's appeal, and plaintiff's employment at the plant officially ended on May 1, 1996. n9 (D.I. 38, P 24) Plaintiff then filed a complaint with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). (D.I. 65 at A219) Neither party has informed the court of the DDOL's disposition of plaintiff's complaint. The EEOC issued plaintiff a "Right to Sue" letter n10 on April 28, 1997, and plaintiff filed the case at bar ninety days thereafter.

n9 Plaintiff contends that this appeal process was a "farce" because the plant manager did not discuss plaintiff's case with other members of the appeal board. (D.I. 70 at 34-38) Accepting this as true, the court still is unable to find evidence that

discriminatory animus motivated the denial of plaintiff's appeal.

n10 In order to bring suit under Title VII, a party must receive a right to sue letter from the EEOC. See *42 U.S.C. § § 2000e-5(e)-5(f)*.

[*10]

## III. STANDARD OF REVIEW

[HN1] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. [HN2] The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)* (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting *Fed.R.Civ.P. 56(e)*). [HN3] The court will "view the underlying facts [*11] and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995)*. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. [HN4] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*.

[HN5] In the Title VII n11 context, the defendant is entitled to summary judgment if it can demonstrate that: (1) the plaintiff is unable to establish a prima facie case of discrimination; or (2) if the plaintiff can establish a prima facie case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's legitimate, nondiscriminatory reason [*12]  for discharging the plaintiff. See *Stinson v. Delaware River Port Auth., 935*

*F. Supp. 531, 539 (D.N.J. 1996).* The court evaluates defendant's summary judgment motion as follows:

> The district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible . . . .

*Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)* (en banc). The plaintiff can demonstrate that there is "sufficient doubt" by showing "'weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. (quoting *Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)* (citations omitted)). [HN6] Alternatively, a Title VII plaintiff can defeat a motion for summary judgment by showing "that the reason for the employer's act was discrimination." *Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).*

n11 [HN7] Title VII of the 1964 Civil Rights Act provides in pertinent part:

> (a) Employer practices. It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*42 U.S.C. § 2000e-2(a).*

[*13]

## IV. PLAINTIFF'S DISCRIMINATION CLAIMS

Plaintiff's reverse race and gender discrimination claims, as well as his age discrimination claims, rest on his contention that plant management specifically targeted Caucasian males over the age of forty for termination during the 1996 RIF. In asserting these claims, plaintiff proceeds under a disparate treatment theory. The court will address each of plaintiff's discrimination claims in order.

### A. Reverse Race Discrimination

In *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, the United States Supreme Court articulated the analytical framework applicable to disparate treatment suits brought under Title VII. n12 [HN8] According to that framework, a plaintiff must have the initial burden of establishing a prima facie case. [HN9] To establish a prima facie case of unlawful race discrimination based on disparate treatment, the plaintiff must show that: (1) he is a member of a protected group, (2) that he applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite his qualifications, he was rejected, and (4) members outside the protected group received more [*14] favorable treatment. See *McDonnell Douglas, 411 U.S. at 802; Weldon v. Kraft, Inc., 896 F.2d 793, 796-97 (3d Cir. 1990).*

n12 Plaintiff's brief does not present his purported evidence of discrimination in terms of the McDonnell Douglas burden-shifting framework. Oddly, plaintiff does not cite (let alone discuss) any of the Supreme Court's leading Title VII cases.

In reverse discrimination cases, courts must modify the first prong of the McDonnell Douglas test. n13 See *Murphy v. Housing Auth. & Urban Redevelopment Agency, 32 F. Supp. 2d 753, 1999 WL 31207, at *10 (D.N.J. 1999).* [HN10] Although "Title VII . . . prohibits racial and gender discrimination against all people, including members of the majority," *McDonald v. Santa Fe Transp. Co., 427 U.S. 273, 280, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976),* courts in this Circuit have held that plaintiffs alleging reverse discrimination also must show "background circumstances supporting the suspicion that the defendant is that unusual employer [*15] who discriminates against the majority." *Davis v. Sheraton Soc'y Hill Hotel, 907 F. Supp. 896, 899 (E.D. Pa. 1995).* Background circumstances that support an inference of reverse discrimination fall into two categories: (1) evidence that the employer has "some reason or inclination"

to discriminate against the majority and (2) any other evidence that raises an inference of reverse discrimination. See *Harel v. Rutgers, the State Univ., 5 F. Supp. 2d 246, 265 (D.N.J. 1998); Murphy, 1999 WL 31207, at *12.*

n13 Although the Third Circuit has not adopted a definitive analytical framework for reverse discrimination claims brought under Title VII, the court will adopt the framework used by other district courts in this Circuit. See *Murphy v. Housing Auth. & Urban Redevelopment Agency, 32 F. Supp. 2d 753, 1999 WL 31207, at *10 (D.N.J. 1999); Harel v. Rutgers, the State Univ., 5 F. Supp. 2d 246, 265 (D.N.J. 1998); Davis v. Sheraton Soc'y Hill Hotel, 907 F. Supp. 896, 899 (E.D. Pa. 1995); see also Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993).*

[*16] [HN11]

Where, as here, the plaintiff asserts a disparate treatment theory of discrimination, the plaintiff may present either direct evidence of discriminatory intent, see *Price Waterhouse v. Hopkins, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989),* or indirect, pretextual evidence of discrimination, see *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); McDonnell Douglas, 411 U.S. at 802.* In the case at bar, plaintiff has presented only indirect evidence of reverse discrimination; none of plaintiff's evidence "proves [reverse race discrimination] without inference or presumption." *Nixon v. Runyon, 856 F. Supp. 977, 983 (E.D. Pa. 1994).* If the plaintiff presents competent indirect evidence of discrimination, the burden of going forward shifts to the defendant who must then articulate a legitimate, nondiscriminatory reason for the challenged employment action. See *Burdine, 450 U.S. at 252-55; McDonnell Douglas, 411 U.S. at 802.*

[HN12] If the defendant is successful in meeting its burden of production, the presumption of discrimination created by the prima facie showing drops from the case, and the [*17] plaintiff must show by a preponderance of the evidence that the defendant's proffered reason for the employment decision was merely a pretext for discriminatory animus. See *Burdine, 450 U.S. at 256.* The plaintiff can satisfy his burden of proof "either directly by persuading the [fact finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id.; see also *Armbruster v. Unisys Corp., 32 F.3d 768, 783 (3d Cir. 1994).* At all times, the ultimate burden of persuading the trier of fact of the

defendant's discriminatory intentions remains with the plaintiff. See *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).*

### 1. BCF Shift Team Leader and Quality Planning Resource Positions

Plaintiff premises his claim of reverse race discrimination upon the appointment of Brenda Johnson and Randy Jones (both African-Americans) as BCF Shift Team Leader and Quality Planning Resource, respectively. (D.I. 69 at 15) The Selection Team did not appoint plaintiff to either of these positions. Plaintiff, however, cannot state a prima facie [*18] case of reverse race discrimination because he has not shown that defendant has an inclination or tendency to discriminate against Caucasians. See *Davis, 907 F. Supp. 896 at 899.*

Indeed, defendant's adverse impact report indicates that defendant rehired more Caucasians at its plant than African-Americans following the 1996 RIF. (See D.I. 65 at A187) A review of in camera materials reveals that, of the seven employees hired as BCF Shift Team Leaders, five were Caucasians and only two were African-Americans. Defendant's current human relations officer also testified that defendant had no specific goals for increasing the population of racial minorities at the Seaford plant. (D.I. 65 at A454-55) Plaintiff has proffered no testimony suggesting that race motivated the Selection Team's employment decisions. (D.I. 65 at A418-19) In short, plaintiff has offered absolutely no evidence that raises an inference that defendant is "that unusual employer who discriminates against the majority." Id. Thus, plaintiff cannot state a prima facie case of reverse race discrimination.

Even assuming, arguendo, that plaintiff has stated a prima facie case, defendant has established [*19] "legitimate, nondiscriminatory reasons" for not hiring plaintiff. See *McDonnell Douglas, 411 U.S. at 802.* Defendant claims that plaintiff lacked the requisite skills for either BCF Shift Team Leader or Quality Planning Resource. The Selection Team's documentation reveals that Brenda Johnson outranked plaintiff in the areas of team building and knowledge of the technological processes of BCF production. (D.I. 65 at A199-200) Moreover, Johnson had served as a BCF Shift Leader n14 since 1993, while plaintiff had not worked on the plant's manufacturing floor since 1983. (D.I. 65 at A142-43, A464) Similarly, defendant asserts that plaintiff was not "well-suited" in a manufacturing position like the Quality Planning Resource. (D.I. 65 at A222, A233) Defendant contends that the Selection Team ultimately appointed Jones as Quality Planning Resource because he had extensive and recent experience in Staple quality control -- a position analogous to Quality Planning Resource. (D.I. 65 at A286, A328-29, A465) In its performance evaluation of Jones,

the Selection Team awarded him five "exceeds" and "eight" meets in the various leadership and job skills categories. n15 (D.I. 86 at A190) Thus, [*20] defendant has produced legitimate, nondiscriminatory reasons for hiring Randy Jones and Brenda Johnson rather than plaintiff.

> n14 This position was renamed BCF Shift Team Leader following the 1996 RIF. (D.I. 65 at A464)

> n15 The Selection Team did not consider plaintiff for this position because it determined that plaintiff was not qualified. Hence, there are no rankings available for plaintiff. (D.I. 86 at 1)

Plaintiff offers no relevant evidence from which a factfinder could infer that defendant's proffered reasons for not hiring him were pretextual. See *Burdine, 450 U.S. at 256*. With respect to the Quality Planning Resource position, plaintiff merely offers his unsupported assertion that he was "clearly qualified." (D.I. 69 at 14) [HN13] In a motion for summary judgment, however, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v. Bell Tel. Co., 24 F.3d 508, 511 (3d Cir. 1994)*.

Plaintiff also [*21] offers the testimony of Ben Culver, the Seaford plant's former human resources director, who testified that plaintiff was "better qualified" than Brenda Johnson for the BCF Shift Team Leader position. (D.I. 70 at B78) Culver, however, did not participate in the selection of BCF Shift Team Leaders. (See D.I. 65 at A128) Moreover, Culver provides no foundation for his opinion that plaintiff was more qualified than Brenda Johnson. He does not state the basis for his conclusion or the facts upon which he relied in reaching this conclusion. Culver also does not state how he would have rated plaintiff in terms of the specific job criteria used by the Selection Team. Given these deficiencies, Culver's testimony does not demonstrate that defendant's proffered reasons for not hiring plaintiff were mere pretexts for unlawful reverse race discrimination. n16 See *Burdine, 450 U.S. at 256*.

> n16 Plaintiff also asserts a reverse gender discrimination claim arising from Brenda Johnson's appointment to BCF Shift Team Leader. In support of this claim, plaintiff merely repeats Ben Culver's testimony. (D.I. 69 at 16-17) Therefore, summary judgment shall be granted with respect to plaintiff's reverse gender discrimination claim, as it relates to Brenda Johnson.

[*22]

None of the witnesses deposed in this case testified that race entered into the Selection Team's hiring decisions. (See, e.g., D.I. 70 at B51, B94, B118-19) Indeed, the record is wholly devoid of any evidence suggesting invidious race discrimination by the defendant. Accordingly, plaintiff has failed to carry the ultimate burden of proving intentional reverse race discrimination. See *Hicks, 509 U.S. at 507*. The court shall grant summary judgment on plaintiff's reverse race discrimination claims. n17

> n17 Plaintiff has argued reverse race discrimination only with respect to the hiring of Randy Jones and Brenda Johnson. The court has reviewed the record independently and has found no other possible claims of reverse race discrimination.

**B. Reverse Gender Discrimination**

Plaintiff asserts reverse gender discrimination claims in connection with the Selection Team's appointment of allegedly less qualified females, instead of him, to three positions at the plant. Those positions are Business Planning [*23] Resource (for which the Team selected Diane Spicer), a P&PS Shift Team Leader post (to which the Team appointed Eugenia Horseman), and a BCF Shift Team Leader position (to which the Team hired Brenda Johnson). n18 Plaintiff has offered no evidence to support a prima facie case of reverse gender discrimination. Plaintiff has not shown that defendant gave female employees preferential hiring treatment or that defendant hired and promoted a disproportionate number of females. Indeed, defendant's adverse impact study reveals that the vast majority of new hires following the 1996 RIF were males. (D.I. 65 at A187) The human resources director also testified that defendant did not have any programs designed to increase the number of females at its plant. (D.I. 65 at A455) Thus, plaintiff has not shown that defendant is "that unusual employer" who discriminates against men. See *Davis, 907 F. Supp. at 899*. Even assuming that plaintiff could state a prima facie claim of reverse gender discrimination, plaintiff cannot rebut the legitimate business reasons proffered by defendant for not hiring plaintiff to the following positions.

> n18 For the reasons stated above, the court has denied plaintiff's reverse gender discrimination claim as it relates to Brenda Johnson. See supra note 16.

1999 U.S. Dist. LEXIS 3580, *

[*24]

### 1. Business Planning Resource

Defendant contends that it hired Diane Spicer as the Business Planning Resource because she had significant experience in the synthetic fiber industry. (D.I. 64 at 29) Prior to her employment with defendant, she served as a quality control specialist with another synthetic fiber manufacturer. (D.I. 66 at C475) She also earned several promotions at defendant's Seaford plant prior to the 1996 RIF. (D.I. 65 at A466-67) The Selection Team also rated her significantly higher than any other candidate considered for the Business Planning Resource position. n19 (D.I. 86 at A188) She received nine "exceeds" and two "meets" in the leadership and job skills categories.

> n19 The Selection Team did not consider plaintiff for this position because it felt that he did not possess the requisite qualifications. (See D.I. 86 at 1, A188)

Plaintiff has offered no competent evidence of pretext n20 to rebut these legitimate reasons for hiring Spicer. Plaintiff merely asserts that he was "better [*25] qualified" for this position. [HN14] Unsupported assertions of fact, however, cannot overcome a motion for summary judgment. See *Anderson, 477 U.S. at 249; Pastore, 24 F.3d at 511.*

> n20 As evidence of pretext, plaintiff offers a performance evaluation, generated by defendant's attorneys during the Seaford plant's 1993 RIF, in which plaintiff "ranks" higher than Spicer. (D.I. 70 at B221-30) Defendant claims that this document enjoys work product privilege and that it was stolen by plaintiff before his termination. After an in camera review of the original document, the court is satisfied that it enjoys work product protection. Moreover, the document is not relevant to the case at bar because it relates to the 1993 RIF and not to the 1996 RIF.

### 2. P&PS Shift Team Leader

Plaintiff contends that defendant should have hired him, instead of Eugenia Horseman, for the P&PS Shift Team Leader post. (D.I. 65 at 16) Defendant, however, has offered legitimate reasons for choosing Horseman instead of plaintiff. The [*26] Selection Team awarded her a total of eight "exceeds" in various skills categories. (D.I. 65 at A195-96) Plaintiff received only three "exceeds" in the same evaluation. (D.I. 65 at A196) Horseman outranked plaintiff both in the Superior Leadership

Criteria and in the job-specific skills categories. (See D.I. 65 at A196) This ranking reflected her extensive manufacturing experience at the Seaford plant, which included a recent manufacturing position in the plant's P&PS division and service as "Section Resource" in the plant's BCF division. (D.I. 65 at A462) Plaintiff, on the other hand, had not worked on the plant's manufacturing floor since 1983.

Plaintiff presents no evidence of pretext to rebut these legitimate reasons for hiring Horseman instead of him. Plaintiff only offers Ben Culver's unsupported assertions of plaintiff's superiority. (D.I. 70 at B78) Culver, however, admits in his deposition that he was only "somewhat familiar" with the job requirements of the P&PS position. (D.I. 70 at B78) Moreover, he did not participate in the Selection Team's evaluation of plaintiff for the P&PS Shift Team leader position. (See D.I. 65 at A184) Therefore, Culver's conclusory assertions [*27] are neither relevant nor probative of pretext.

As the foregoing analysis reveals, plaintiff has failed to carry his burden of showing intentional discrimination by defendant in its hiring of Diane Spicer, Eugenia Horseman, and Brenda Johnson. Plaintiff has presented neither evidence sufficient to support a prima facie case of reverse gender discrimination nor evidence of pretext. Accordingly, the court shall grant defendant's motion for summary judgment on plaintiff's reverse gender discrimination claims.

### C. Age Discrimination

Where, as here, plaintiff's ADEA claims n21 rest on indirect evidence of age discrimination, courts in the Third Circuit must apply a "slightly modified version" of the McDonnell Douglas three-step shifting burden analysis used in Title VII cases. See *Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973 (3d Cir. 1998); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)* (en banc). [HN15] In order to state a prima facie case of age discrimination under this modified test, the plaintiff must show that he

> (1) was a member of a protected class, i.e., that he was over 40, (2) was qualified for the position at issue, [*28] (3) suffered an adverse employment action[,] and (4) was ultimately replaced, or the position was filled by, a younger person. The evidence must be "sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case."

*Connors, 160 F.3d at 973-74* (citation omitted). If plaintiff satisfies his prima facie case, the court proceeds with the final two steps of the McDonnell Douglas analysis. See *Keller, 130 F.3d at 1108.* Plaintiff alleges age discrimination with respect to the Selection Team's hiring of James Woodland for P&PS Shift Team Leader, James Simmons and George Chamberlain as BCF Shift Team Leaders, and Keith Mitchell for Polymer Core Process Leader. (D.I. 69 at 9-12) The court shall review these age discrimination allegations in order.

n21 [HN16] The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." *29 U.S.C. § 623*(a).

[*29]

**1. P&PS Shift Team Leader and BCF Shift Team Leader**

Plaintiff has shown that Woodland, Simmons, and Chamberlain were sufficiently younger than plaintiff to support an inference of age discrimination. n22 See *Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995).* Plaintiff also has demonstrated that he belonged to the protected class (those over the age of forty) at the time defendant hired these younger men instead of him. See *Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 65-66 (3d Cir. 1996).* Accordingly, plaintiff has satisfied the first, third, and fourth prongs of the McDonnell Douglas test. Plaintiff, however, has not made a prima facie showing that he was qualified to serve as a P&PS Shift Team Leader or as a BCF Shift Team Leader. Plaintiff offers only his own conclusory assertions and those of Ben Culver as evidence of his qualifications for these positions. As the court has noted above, conclusory assertions of fact cannot overcome a motion for summary judgment. *Pastore, 24 F.3d at 511.* Thus, plaintiff has failed to state a prima facie case of age discrimination.

n22 At the time of their selection, James Woodland and Goerge Chamberlain were forty years old, while James Simmons was thirty-eight years old. (D.I. 70 at B243)

[*30]

Even assuming that plaintiff has stated a prima facie case, defendant has presented legitimate, nondiscriminatory reasons for hiring Woodland, Simmons, and Chamberlain instead of plaintiff. The Selection Team ranked

all three employees higher than plaintiff. (See D.I. 65 at A196, A200) Each of these employees had recent and extensive experience on the plant's manufacturing floor. Before the 1996 RIF, Woodland held BCF and P&PS supervisory posts. (D.I. 65 at A462) Prior to their selection, Simmons and Chamberlain served as BCF supervisors. (D.I. 65 at A464) Plaintiff, on the other hand, had not served on the manufacturing floor since the mid-1980s. Plaintiff was a BCF first line supervisor in 1972, but he supervised only twenty people. (D.I. 65 at A339) In 1996, the BCF Shift Team Leader position entailed supervision of approximately sixty people in a "dramatically" changed industry. (D.I. 65 at A268-71, A464) Thus, defendant had legitimate, nondiscriminatory reasons for not hiring plaintiff to these positions.

Under the McDonnell Douglas framework, plaintiff must rebut these legitimate reasons with evidence that defendant's proffered reasons for its employment decisions [*31] were merely pretexts for discriminatory animus. See *Burdine, 450 U.S. at 256.* Plaintiff's only evidence of pretext is that the majority of those terminated during the 1996 RIF were over the operative age of forty. Plaintiff argues that defendant terminated its older employees because "a higher cost reduction [could] be obtained by eliminating those individuals with longer years of service and higher rates of pay." (D.I.69 at 12) Plaintiff claims that this "in and of itself is sufficient to present a prima facie case of age discrimination." n23 (D.I. 69 at 12) Plaintiff submits no formal statistical support for this claim. He merely offers defendant's own admission that the majority of those terminated during the 1996 RIF were Caucasian males over the age of forty. (See D.I. 70 at B219-20)

n23 In support of this claim, plaintiff cites *Healy v. New York Life Insurance Co., 860 F.2d 1209 (3d Cir. 1988)* and *Green v. USX Corp., 843 F.2d 1511 (3d Cir. 1988).* Neither case supports this claim. The United States Supreme Court vacated the Green decision and, accordingly, it has no precedential force. See *USX Corp. v. Green, 490 U.S. 1103, 104 L. Ed. 2d 1015, 109 S. Ct. 3151 (1989).* In Healy, the court merely permitted an employer to bolster its legitimate business reasons for discharging the plaintiff with the use of statistical evidence suggesting that its RIF did not have a disproportionate impact on older workers. See *Healy, 860 F.2d at 1217-18.* Here, plaintiff does not offer "statistical" evidence in its formal sense. He merely offers an admission that more older workers were terminated than younger workers.

[*32]

This admission, however, does not necessarily support the proposition for which plaintiff offers it. The mere fact that the majority of those terminated were over forty does not necessarily mean that these "older" workers were paid higher salaries than younger employees retained by defendant. Although statistical evidence could establish such a claim, plaintiff offers no such evidence. His conclusory assertion that defendant saved money specifically by terminating older workers is not admissible evidence and does not establish a genuine issue of material fact.

Accordingly, plaintiff's bare assertion of defendant's sinister motives will not suffice to rebut defendant's legitimate reasons for not hiring him. Because plaintiff has failed to present any evidence of unlawful age discrimination in connection with the hiring of Woodland, Simmons, or Chamberlain, the court shall grant summary judgment with respect to these claims.

### 2. Polymer Core Process Leader

Plaintiff has demonstrated that the Polymer Core Process Leader position was ultimately filled by Keith Mitchell, a significantly younger person. n24 The Polymer Core Process Leader post was a manufacturing-intensive position, [*33] and defendant asserts that it chose Mitchell instead of plaintiff because plaintiff did not possess the requisite knowledge of manufacturing technology. The evidence reveals that the Selection Team had no such concerns about Mitchell's familiarity with new manufacturing technology. He served as supervisor of the plant's textile manufacturing section since 1992. (D.I. 65 at 464-65) In light of plaintiff's extended absence from the manufacturing floor and Mitchell's recent manufacturing experience, defendant has established a legitimate, nondiscriminatory reason for hiring Mitchell instead of plaintiff.

> n24 At the time of his selection, Mitchell was thirty-four years old. (D.I. 70 at B244)

As evidence of pretext, plaintiff points to the fact that his raw rankings were higher than those of Mitchell's. n25 The Selection Team concluded nonetheless that plaintiff had an "obsolete knowledge base." (D.I. 65 at A198) Plaintiff argues that the two "does not meets" on Mitchell's evaluation form indicate that defendant appointed [*34] Mitchell even though he did not possess the requisite technical know-how for the position.

> n25 The Selection Team awarded plaintiff three "exceeds," eleven "meets," and no "does not

meets" while giving Mitchell two "exceeds," ten "meets," and two "does not meets." (D.I. 65 at A198)

Defendant has established, however, that Mitchell possessed the requisite qualifications for the post. Defendant's plant manager testified that the most important criterion for the Polymer Core Process position was ranking category number six (D.I. 73 at 488-89), which required an "understand[ing of] the technology of the process and key factors required to produce a quality product meeting customer requirements." (D.I. 65 at A197) The Selection Team ranked Mitchell higher in this category than plaintiff. (D.I. 65 at A198) (See D.I. 65 at A198; D.I. 72 at 17) Defendant also argues throughout its briefs that plaintiff's technological expertise in Nylon manufacturing faded during his nearly sixteen years away from the manufacturing [*35] floor. (See, e.g., D.I. 64 at 25-28, 30-31) This conclusion is supported by testimony that the manufacturing area had changed dramatically in the years since plaintiff left the manufacturing floor to assume more administrative functions in the plant's human resources department. (D.I. 65 at A268-71)

Plaintiff has presented no evidence that Mitchell was unqualified to serve as Polymer Core Process Leader. He merely argues, without supporting evidence, that Mitchell had "no knowledge" of the Core Process Leader position and that "it only makes sense that an individual with obsolete knowledge would be better qualified for a position than one with no knowledge of the position whatsoever." (D.I. 69 at 10) In support of his contention that obsolete knowledge is better than "no knowledge," plaintiff offers the testimony of Will Rogers, an employee in the Seaford plant's personnel department. During a deposition, plaintiff's attorney asked Rogers the following question:

> All else being equal, if one has obsolete knowledge and the other has no knowledge, do you consider the obsolete a better candidate to start working with and training than a person with no knowledge?

(D.I. [*36] 70 at B137) Rogers responded, "I would think so."

The court finds that Rogers' conclusory response is not competent evidence. Rogers did not serve on the Selection Team, and he has never worked in the Polymer Core Process field. (See D.I. 65 at A446; D.I. 70 at B130-33) Like plaintiff, Rogers has worked in the plant's

personnel department since 1985. (D.I. 70 at B131) Moreover, every witness asked this question, including Rogers, n26 responded that the answer would depend upon the position at issue. (See D.I. 70 at B137, D.I. 73 at A490-91)

> n26 When asked this question initially, Rogers responded, "Depends. I believe." (D.I. 70 at B137)

Thus, the Selection Team's choice of Mitchell over plaintiff was reasonable. Mitchell had broader manufacturing experiences than plaintiff, and Mitchell possessed apparently exceptional knowledge of the technological subject matter of the position. (See D.I. 65 at A198) Although plaintiff received more favorable raw "rankings" than Mitchell, it is evident that the [*37] Selection Team chose Mitchell because of his recent manufacturing experience. Plaintiff's higher raw rank, even taken in the light most favorable to plaintiff, does not constitute evidence sufficient to enable a jury to find that age discrimination infected the Selection Team's hiring of Keith Mitchell. See *Anderson, 477 U.S. at 249.*

Throughout the selection process, plaintiff's lack of recent manufacturing experience weighed against him. Since the mid-1980s, plaintiff voluntarily limited his horizons to the plant's human resources department and did not keep apace of technological advances. Plaintiff has failed to present any competent evidence of age discrimination in defendant's selection of Keith Mitchell.

Therefore, the court shall grant summary judgment on this claim. n27

> n27 Although younger employees were appointed to other positions to which plaintiff applied, plaintiff has not alleged age discrimination with respect to these positions. The court, on its own, has reviewed the record for evidence of age discrimination with respect to these positions and has found none.

[*38]

## V. PLAINTIFF'S ERISA CLAIMS

Although plaintiff's second amended complaint alleges an ERISA violation (D.I. 38, PP 43-51), plaintiff's answering brief is devoid of any argument in support of his ERISA claim. The court shall deem plaintiff's ERISA claims waived. See Local Rule 7.1.3(c)(1)(F)-(G). Summary dismissal is, in any event, appropriate because the evidence proffered by plaintiff fails to show that defendant engaged in prohibited conduct taken for the purpose of interfering with plaintiff's employee benefit plan. See *29 U.S.C. § 1140.* Accordingly, defendant's motion for summary judgment on plaintiff's ERISA claims is granted.

## VI. CONCLUSION

For the aforementioned reasons, the court shall grant defendant's motion for summary judgment. An order shall issue consistent with this memorandum opinion.

**EXHIBIT 3**

LEXSEE 1998 DEL. LEXIS 188

**RICHARD B. YANCEY, individually and as Executor, Trustee, Administrator, c.t.a. of the Estate of Philo B. Yancey, deceased, Plaintiff Below, Appellant, v. NATIONAL TRUST COMPANY, LTD., a Canadian corporation, RAYMOND C. DOUGHERTY, JEAN YANCEY PATTERSON, individually and as Executors and Trustees of the Last Will and Testament of Philo B. Yancey, and E.I. DU PONT DE NEMOURS & COMPANY, a Delaware corporation, Defendants Below, Appellees.**

No. 5, 1998

SUPREME COURT OF DELAWARE

*1998 Del. LEXIS 188*

**April 9, 1998, Submitted**
**May 19, 1998, Decided**

**SUBSEQUENT HISTORY:** [*1]

Released For Publication June 4, 1998.

**PRIOR HISTORY:**

Court Below: Court of Chancery of the State of Delaware in and for New Castle County. C.A. No. 2142.

**DISPOSITION:**

Appellee's motion to affirm GRANTED. Judgment of the Court of Chancery AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant trust company brought a motion to affirmed the judgment of the Court of Chancery of the State of Delaware, which dismissed plaintiff estate administrator's action claiming that certain of the estate's tax liabilities were not being paid by the trust company, thereby exposing the administrator to potential tax liability.

**OVERVIEW:** The estate administrator brought an action against the trust company, alleging that certain of the estate's tax liabilities were not being paid by the trust company, thereby exposing the administrator to potential tax liability. The case languished in court for more than 30 years when, finally, the trial court dismissed the action for lack of jurisdiction and failure to prosecute. The estate administrator appealed. The trust company brought a motion to affirm the judgment of the trial court. The court granted the motion, holding that the appeal was without merit. The court found that the administrator's

opening brief was deficient in that it did not include a table of contents, table of citations, or state the nature of the proceedings. The brief did not include a summary of the argument, a statement of the facts, or an argument section. In his opening brief, the administrator made no attempt to coherently inform of the grounds upon which relief was sought. Therefore, the opening brief was inconsistent with the letter and spirit of the Supreme Court Rules and qualified as a nonconforming paper subject to being stricken pursuant to Del. Sup. Ct. R. 102(b) and Del. Sup. Ct. R. 34.

**OUTCOME:** The court granted the trust company's motion to affirm the lower court judgment as against the estate administrator.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > General Overview*
*Governments > Courts > Rule Application & Interpretation*
[HN1] Del. Sup. Ct. R. 14 describes the requirements for briefs filed with the state supreme court.

**JUDGES:** Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

**OPINIONBY:** E. Norman Veasey

**OPINION:**

ORDER

1998 Del. LEXIS 188, *

This 19th day of May 1998, it appears to the Court that:

(1) The appellee n1, National Trust Company, Ltd., ("National Trust"), has moved to affirm the judgment of the Court of Chancery on the ground that it is manifest on the face of the appellant's opening brief that the appeal is without merit. Supr. Ct. R. 25(a). It is clear that the appeal is without merit and, therefore, the motion to affirm must be granted.

n1 Appellee E.I. Du Pont De Nemours & Company has filed a notice of joinder in the motion to affirm filed by appellee National Trust Company, Ltd. The remaining appellees, Jean Yancey Patterson and Raymond C. Dougherty, were named in the original suit, filed in 1965, and were included in the December 12, 1997, trial court order from which this appeal is taken. Patterson and Dougherty are deceased.

[*2]

(2) The appellant, Richard B. Yancey, ("Yancey"), pro se, is a beneficiary, coexecutor and cotrustee of the estate of his father, Philo B. Yancey, who died testate on April 12, 1942, as a resident of Montreal, Quebec, Canada. National Trust Company was also named as cotrustee of several trusts established by Yancey's will. In 1965, Yancey filed suit against National Trust in the Court of Chancery claiming that certain of the estate's tax liabilities were not being paid by National Trust, thereby exposing Yancey to potential tax liability. n2 The case languished in the Delaware court system for nearly thirty years until it was finally resolved in 1993 when the Court of Chancery dismissed the action for lack of jurisdiction and failure to prosecute. *Yancey v. National Trust Company, LTD., Del. Ch., C.A. No. 2142, 1993 WL 155492,* Jacobs, V.C. (May 7, 1993), *aff'd, Del. Supr., No. 204, 1993, 1993 WL 370844,* Moore, J. (Aug. 30, 1993).

n2 For a complete review of the lengthy factual and procedural background surrounding this case, see *Yancey v. National Trust Company, LTD., Del. Ch., C.A. No. 2142, 1993 WL 155492,* Jacobs, V.C. (May 7, 1993), aff'd, *Del. Supr., No. 204, 1993, 1993 WL 370844,* Moore, J. (Aug. 30, 1993).

[*3]

(3) On June 10, 1997, Yancey filed a motion in the Court of Chancery seeking to reactivate his claim against National Trust. On September 17, 1997, the Court of Chancery, treating the filing as a motion for relief from a

final order under Court of Chancery Rule 60(b), summarily denied the motion. Following the court's ruling, National Trust, pursuant to Court of Chancery Rule 11, petitioned the court to impose sanctions against Yancey. By Order dated December 12, 1997, the Court of Chancery granted National Trust's motion. The court directed Yancey not to file, and the Register in Chancery not to accept, any causes of action against National Trust, E.I. Du Pont De Nemours & Company, Jean Yancey Patterson, or Raymond C. Dougherty, that raised claims previously addressed by the court. This appeal followed.

(4) In attempting to decipher the precise issues of this appeal, the Court notes the appellant's complete disregard for the provisions of Supreme Court Rule 14. While the Court recognizes that some degree of leniency should be granted for *pro se* appeals, at a minimum, briefs must be adequate so that this Court may conduct a meaningful review of the merits of the appellant's [*4] claims. [HN1] Supreme Court Rule 14 describes the requirements for briefs filed with the Supreme Court. Appellant's opening brief was deficient in the following respects: (i) the brief did not include a table of contents, table of citations, or state the nature of the proceedings; (ii) the brief did not include a summary of the argument, a statement of the facts, or an argument section; and (iii) the brief was not bound, stapled or paper clipped and the unnumbered pages appeared to be in random order. In his opening brief, appellant makes no attempt to coherently inform the Court of the grounds upon which relief is sought. Appellant's opening brief is entirely inconsistent with the letter and spirit of the Supreme Court Rules. It qualifies as a nonconforming paper that is subject to being stricken. *See* Supr. Ct. R. 102(b); Supr. Ct. R. 34. Rather than exercising the discretion to strike the brief, however, the Court will grant the appellee's motion to affirm.

(5) A motion to reopen a judgment under Court of Chancery Rule 60(b) is addressed to the sound discretion of the trial court and the grant or denial of such a motion will be reviewed by this Court on appeal under an abuse of discretion [*5] standard. *Battaglia v. Wilmington Savings Fund Society, Del. Supr., 379 A.2d 1132, 1135 (1977).* In his motion to the Court of Chancery, Yancey failed to offer any justification for relief from the final judgment entered in 1993. Furthermore, Yancey's opening brief on appeal, echoing the arguments raised in his motion to the trial court, continues to raise the arguments previously addressed and dismissed by the Court of Chancery as part of the 1993 judgment. Upon review of the record, this Court is satisfied that the Court of Chancery did not abuse its discretion in denying Yancey's unsupported request for relief from the trial court's final judgment.

1998 Del. LEXIS 188, *

(6) The imposition of sanctions under Court of Chancery Rule 11, virtually identical to its counterpart in the Federal Rules of Civil Procedure, will be reviewed on appeal for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990).* This case was on the docket of the Court of Chancery for nearly thirty years before its dismissal in 1993. Nearly four years after this Court affirmed the dismissal of the action, Yancey filed his motion to reactivate the suit. In his [*6] motion, Yancey offered no justification for relief from the 1993 final judgment. Instead, the arguments advanced in his motion were a mere rehashing of his previously rejected claims. Given the lengthy procedural history of this case and Yancey's unwillingness to abide by the dismissal, the Court of Chancery was well within the bounds of its discretion when it ordered Yancey not to file, and the Regis-

ter in Chancery not to accept, any causes of action based upon previously addressed claims.

(7) Consequently, it is manifest on the face of the appellant's opening brief that the appeal is without merit because the issues presented on appeal are clearly controlled by settled Delaware law, and to the extent that judicial discretion was involved, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the appellee's motion to affirm is GRANTED. The judgment of the Court of Chancery is hereby AFFIRMED.

BY THE COURT:

E. Norman Veasey

Chief Justice

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELIZABETH WATTS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 1:06-CV-00165-GMS |
| | : | |
| LOIS J. DAWSON, ESQUIRE | : | |
| | : | |
| Defendant. | : | |

_____

**CERTIFICATE OF SERVICE**
_____

I, **Norman H. Brooks, Jr., Esquire**, of Marks, O'Neill, O'Brien & Courtney, P.C., hereby

certify that on this  **19th**  day of  **July**, 2006, that I caused two true and correct copies of the

**Defendant Lois J. Dawson's Motion to Strike, or Alternatively, Motion to Allow Additional**

**Time to Respond to Plaintiff's Motion for Partial Summary Judgment; Proposed Order; and,**

**Defendant's Opening Brief in Support of Motion to Strike with exhibits and Appendix** were

served by electronic filing upon the following counsel of record:


Kevin William Gibson, Esquire
1326 King Street
Wilmington, DE 19899



/s/ Norman H. Brooks, Jr.
Norman H. Brooks, Jr., Esquire / I.D. No. 2568
*Attorney for Defendant*