IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ELIZABETH WATTS,                          :
                                          :
            Plaintiff,                    :
                                          :
      v.                                  :      C. A. No. 1:06-CV-00165-GMS
                                          :
LOIS J. DAWSON, ESQUIRE                   :
                                          :
            Defendant.                    :

**DEFENDANT'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

**MARKS, O'NEILL,**
**O'BRIEN & COURTNEY, P.C.**

_____/s/ **Theodore J. Segletes, III**_____
Norman H. Brooks, Jr., Esquire (ID No. 2568)
Theodore J. Segletes, III, Esquire (ID No. 4456)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538

*Attorneys for Defendant*
*Lois J. Dawson, Esq.*

DATED: December 28, 2006

DE072844.2

## TABLE OF CONTENTS

TABLE OF CITATIONS...................................................................................................... ii

STATEMENT OF THE CASE............................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS.................................................................. 2

FACTS SURROUNDING DISCOVERY DISPUTE......................................................... 3

    A. Rule 35 Examinations........................................................................................... 3

    B. Court Ordered Expert Discovery.......................................................................... 4

SUMMARY OF THE ARGUMENT................................................................................. 5

ARGUMENT...................................................................................................................... 6

    A. Standard of Review................................................................................................ 6

    B. Plaintiff must be compelled to submit to the Rule 35 Examinations.................... 7

    C. Plaintiff must be compelled to identify her expert................................................ 8

CONCLUSION................................................................................................................... 9

i

## TABLE OF CITATIONS

*Westchester Fire Insurance Co. v. Household International, Inc.*,
2005 U.S. Dist. LEXIS 116 (D. Del.)................................................................................ 6

*Parker v. University of Pennsylvania*, 128 Fed. Appx. 944 (3rd Circ. 2005)................................. 6

*Womack v Stevens Transp., Inc.*, 205 F.R.D. 445 (E.D. Pa. 2001)............................................. 6

*Upchurch v. Hester*, 2006 U.S. Dist. LEXIS 76776 (D. Del.)................................................... 6

*Continental Laboratory Products, Inc. v. Medax International, Inc.*,
195 F.R.D. 675 (S.D. Ca. 2000)................................................................................... 6

*Escobar v. Blessey Marine Services, Inc.*, 2004 U.S. Dist. LEXIS 19010 (E.D. La.)....................... 7

*Jefferys v. Lrp Publications, Inc., et al.*, 184 F.R.D. 262 (E.D Pa., 1999)................................. 7

*Konstantopoulos v. Westvaco Corporation*, 112 F.3d 710, 719 (3rd Circ. 1997)........................... 6

FRCP 26(a)........................................................................................................... 6

FRCP 35(a)........................................................................................................... 7

FRCP 11(b)(2) & (3).................................................................................................. 7

DE072844.2

## STATEMENT OF THE CASE

Plaintiff brought suit against her former attorney alleging professional negligence, breach of contract, and breach of fiduciary duty. Plaintiff approached the Defendant when her disability benefits were terminated by Aetna Insurance Company. (Pl. Dep. 01/19/06, pp. 179-181) Plaintiff presented herself as being totally and permanently disabled due to fiber myalgia and related disorders. (Pl. M.S.J., 06/22/06, para. 1). Plaintiff alleges that the Defendant agreed to represent her, as her attorney, in a lawsuit against Aetna for a calculable sum certain of the amount she believed Aetna should have paid her in disability benefits from June 2001 through such time as she turned "65 or 70". (Pl. Dep. 01/19/06, pg. 181). Plaintiff also claims that the Defendant advised that she would file a lawsuit claiming that Aetna terminated the benefits in bad faith and seek significant penalties and damages including an order that benefits continue to be paid until Plaintiff was no longer disabled. (Pl. M.S.J., 06/22/06, para. 6-7). Finally, Plaintiff avers that the Defendant admitted both wrongdoing and professional negligence, recommending that the Plaintiff sue her for malpractice in the process. (Id. at para. 8 and 17). This malpractice action ensued.

Plaintiff's allegations of negligence and malpractice are grounded on a theory that the Defendant had an obligation to file a lawsuit on an underlying claim of Plaintiff's total and permanent disability. In the absence of plaintiff's total and permanent disability, the Defendant could have no duty to pursue such litigation. Moreover, under Civil Rule 11(b)(2) and (b)(3), if the Defendant could have reasonably concluded that the claim was frivolous, or lacked evidentiary support, she was prohibited from pursuing it. Finally, proof that the Plaintiff was able to perform day to day functions associated with pursuing a Master's in Social Work and with seeking licensure pursuant to state law, is sufficient to diminish Plaintiff's expectations of a favorable judgment or settlement offer, thus limiting her ability to demonstrate that she incurred damages by the Defendant's inaction.

## NATURE AND STAGE OF PROCEEDINGS

This litigation arises out of Defendant's legal representation of Plaintiff in a dispute over Plaintiff's employer defined disability benefit plan with Aetna Insurance Company, a claim under the purview of the Employment Retirement Income Security Act ("ERISA"). Plaintiff's original complaint was filed in the Superior Court of the State of Delaware in and for New Castle County on February 10, 2006 alleging that Defendant was negligent in her representation of Plaintiff in her contractual dispute with Aetna; that she breached a contractual duty she owed Plaintiff to timely file a lawsuit against Aetna within the applicable limitations period; and that she breached a fiduciary duty she owed Plaintiff by asserting the defense that Plaintiff is no longer disabled.

Defendant Lois J. Dawson filed her Answer and Jury Demand on March 8, 2006. On March 10, 2006, Ms. Dawson removed the action to this Court pursuant to 28 U.S.C. § 1441. This case was assigned to The Honorable Gregory M. Sleet on March 22, 2006.

Plaintiff filed a Motion for Partial Summary Judgment on June 22, 2006 but submitted it without an accompanying brief required by local rules of this Court. The Court held a Scheduling Tele-conference on September 14, 2006 after which the motion was administratively removed from its docket and the parties were ordered to refrain from filing future motions for summary judgment without permission from the Court. The Court also set a Settlement Conference for January 25, 2007 at 10:00 a.m. and directed counsel to submit written positions ten (10) days in advance thereof with simultaneous submissions due by January 16, 2007 in the form of mediation memoranda. Finally, the Court directed counsel to work together to designate experts, submit reports, and identify necessary rebuttal experts prior to the January 16th deadline. Since that time, Defendant has pursued examinations of the Plaintiff and expert discovery necessary for presenting her position to the Court.

## FACTS SURROUNDING DISCOVERY DISPUTE

### A. Rule 35 Examinations

Immediately following the Tele-conference with the Court in this matter, Defendant began to pursue examinations of Plaintiff's disability as it relates to the matters that gave rise to her malpractice action.[1] To that end, on November 8, 2006, RP Vocational Rehabilitation was asked to schedule Plaintiff for a Vocational Rehabilitation Evaluation (VRE) and contacted Plaintiff's counsel that same day to schedule one at a time designated by the Plaintiff. Since first receiving word from RP Vocational Rehabilitation of Defendant's intention to schedule a VRE, Plaintiff's counsel has simply failed to engage in a discussion on the issue. In spite of the fact that the process used to schedule it is exactly what he said he wanted, he has chosen not to respond to Defendant's attempts to schedule a VRE.

Also on November 8, 2006 Defendant notified Plaintiff of its intention to submit the Plaintiff to a Functional Capacity Examination (FCE) on November 20, 2006 and followed such notification with a formal demand for an FCE, filed in this Court on November 9, 2006. On November 13, 2006 Plaintiff's counsel responded to the FCE demand, stating *inter alia* that the Plaintiff would not attend the FCE as scheduled because Defendant's counsel failed to contact him in advance to request Plaintiff's availability and that his client could only sit for a two-day evaluation due to her disability. Plaintiff's counsel cited no legal or medical basis for such refusal.

By letter dated November 15, 2006 counsel sought to aver Plaintiff's concerns by explaining the various exams that had been scheduled and the accommodations that would be made for his client. Plaintiff's counsel gave no response. By letter dated and faxed on November 17, 2006 (referencing the 11/15 letter) Plaintiff's counsel was advised that in the absence of a note from Plaintiff's physician stating that she was

---

[1] The Defendant also notified Plaintiff's counsel of her intention to submit the Plaintiff to an Independent Medical Examination (IME) on December 11, 2006 and followed such notification with a formal demand for an IME, filed in this Court on October 30, 2006. Notwithstanding her counsel's diatribe on scheduling, and notwithstanding the fact that it had been scheduled without first contacting her regarding availability, Plaintiff attended the IME without incident or objection, and without her attorney.

-3-

physically unable to undergo an FCE, or a Protective Order from the Court, Plaintiff was expected to undergo the FCE. By fax on the morning of the FCE, Plaintiff's counsel announce that the Plaintiff would not attend the FCE, again citing Defendant's failure to contact him prior to scheduling the FCE to check Plaintiff's availability, and stated that the Plaintiff would not attend *any type of testing* unless the dates were first cleared with his office. The Plaintiff did not attend the FCE on November 20, 2006.

Having unsuccessfully attempted to resolve the FCE and VRE issues with Plaintiff's counsel without judicial intervention, Defendant's counsel brings the instant motion to compel.

### B. Court Ordered Expert Discovery

In preparation for the Scheduling Tele-conference, Plaintiff's counsel asserted that he had already selected an expert to testify on the applicable standard of care in the legal community. He reiterated that claim during the September 14 tele-conference and Defendant's counsel made it clear that he wanted to depose the expert. The Court thereafter directed the parties to designate their experts, submit their reports, and identify rebuttal experts prior to a January 16th mediation memoranda deadline.

By e-mail of November 15, 2006, Plaintiff's counsel contended he hadn't yet decided to offer expert testimony, that the court hadn't yet held a scheduling conference, and that he therefore had no obligation to identify an expert at this time. A responsive e-mail later that day included a more specific request to examine Plaintiff's counsel's files and for Plaintiff's counsel to promptly identify his expert so Defendant could depose him. To date, counsel has failed to identify the expert. Consequently, Defendant's counsel has been forced to bring the instant motion to compel.

## SUMMARY OF ARGUMENT

A.   Plaintiff's failure to submit to the requested Rule 35 Examinations must be reviewed to determine whether the mental or physical condition of the Plaintiff is in controversy and whether there is good cause for the examination.

B.   Plaintiff's failure to identify her expert must be reviewed to determine whether Plaintiff can demonstrate a substantial justification for the refusal and that the refusal is harmless.

C.   Plaintiff must be required to submit to the Rule 35 Examinations because her physical condition is the basis for the underlying claim that brought about her malpractice action and these examinations will adduce relevant information which are necessary for Defendant's defenses in this matter.

D.   Plaintiff must be required to produce her expert on the applicable standard of care in the Delaware legal community because such identification is required by FRCP 26(a), was directed by this Court, and represents Plaintiff's key evidence on the Defendant's alleged duty to the Plaintiff.

**ARGUMENT**

**A.  Standard of Review.**

A party may seek discovery of relevant, non-privileged information that is necessary to properly litigate a matter. *Westchester Fire Insurance Co. v. Household International, Inc.*, 2005 U.S. Dist. LEXIS 116, *4 (D. Del.).[2]   A Rule 35 examination will be ordered when the moving party shows that the mental or physical condition of a party is in controversy and there is good cause for the examination *Parker v. University of Pennsylvania*, 128 Fed. Appx. 944, 947 (3rd Circ. 2005).  Good cause exists if the Defendant demonstrates that the examination could adduce specific facts relevant to cause of action and is necessary to the Defendant's case. *Womack v Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001).

FRCP 26(a) requires Plaintiff to disclose the identity of any person who *may* be used at trial to present expert testimony.  FRCP 26(a); *Upchurch v. Hester*, 2006 U.S. Dist. LEXIS 76776, *6 (D. Del.).[3] Further, "[t]hese disclosures shall be made at the times and in the sequence directed by the court." *Continental Laboratory Products, Inc. v. Medax International, Inc.*, 195 F.R.D. 675, 676 (S.D. Ca. 2000). This Court directed the parties to designate their experts, submit their expert reports, and identify rebuttal experts prior to the January 16th mediation memorandum deadline (Conf. Tr., 9/14/06, p. 18-19).  A Court may severely sanction litigants who cannot provide substantial justification for such failure or demonstrate that the failure was harmless.[4] *Konstantopoulos v. Westvaco Corporation*, 112 F.3d 710, 719 (3rd. Cir. 1997).

---

[2] Attached as EXHIBIT 1

[3] Attached as EXHIBIT 2

[4] While an appropriate sanction for Plaintiff's counsel's failure in this matter would be the exclusion of the expert's testimony and any evidence relating to the legal standard to which Delaware attorneys are held, at this time, the Defendant seeks only an order compelling disclosure of the expert's identity so the Defendant can depose th eexpert.

**B. Plaintiff must be compelled to submit to the Rule 35 Examinations.**

"When the mental or physical condition (including the blood group) of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . ." FRCP Rule 35(a).  A request for a Functional Capacity Examination is a proper part of discovery sought pursuant to Rule 35 in matters such as this where the physical condition and abilities of the Plaintiff as they relate to the Plaintiff's ability to return to work is in controversy.  *Escobar v. Blessey Marine Services, Inc.*, 2004 U.S. Dist. LEXIS 19010, *4-*5 (E.D. La.).[5] A Vocational Rehabilitation Evaluation is justified on substantially similar grounds.  *Jefferys v. Lrp Publications, Inc., et al.*, 184 F.R.D. 262, 263 (E.D Pa., 1999).

The Plaintiff has accused the Defendant of malpractice in negligently failing to file a lawsuit based upon her claims of total and permanent disability.  The foundation of her malpractice claim today is that the Defendant should have pursued an action in which she would argue that the Plaintiff could not retain any form of gainful employment because of her disability.  To be successful on this claim, the Plaintiff must demonstrate, among other things, that an attorney/client relationship existed between her and the Defendant and that her underlying claim was not frivolous, including providing evidence that she was permanently and totally disabled and incapable of retaining any form of gainful employment at the time her insurer terminated her benefits, that the insurer had no other reasonable grounds to terminate her benefits, and that she would have continued to receive benefits had a suit been filed.  To defend against such an allegation, the Defendant must investigate whether and to what extent the Plaintiff's disability would have given her grounds for such a suit.  If no reasonable grounds existed for the suit, the Defendant can't be said to have incurred an obligation to pursue it. (See FRCP 11(b)(2) & (3))  Moreover, if the Plaintiff's disability did not prevent her from gainful employment, then reasonable grounds clearly existed for the denial of benefits and Plaintiff did not suffer damages as a result of the Defendant's actions.

---

[5] Attached as EXHIBIT 3

A Functional Capacity Examination is designed to determine the extent of Plaintiff's ability or inability to perform activities associated with gainful employment. A Vocational Rehabilitation Evaluation is designed to determine occupational alternatives available to the Plaintiff and to discern her ability and potential. Thus, both a Functional Capacity Examination and a Vocational Rehabilitation Examination will adduce specific facts with regard to the Plaintiff's employability, facts that are essential to determining liability in this matter. Having shown good cause to subject Plaintiff to the examinations, Defendant seeks an order compelling her to submit to them.

### C. Plaintiff must be compelled to identify her expert.

The Court directed Plaintiff to disclose the identity of his expert on the applicable standard of care born by Delaware's legal community so Defendant could depose the witness prior to January 16 deadline for mediation statements in this matter. Not only has Plaintiff's counsel ignored this direction, he has attempted to distance himself from his statements of September 14, 2006. Following a specific request for the identity of Plaintiff's expert, Plaintiff's counsel refused to produce the expert's identity claiming that he was under no obligation to do so. Counsel went so far as to argue that the Court hasn't held a scheduling conference and that, contrary to his earlier representations, he has not yet decided whether Plaintiff will offer expert testimony.

The foundation of a malpractice claim such as this is the standard of care to which the Defendant must be held. If the Defendant meets that standard, there is no liability; if she fails to meet the standard, liability may attach. Consequently, Defendant seeks an order compelling such identification.

## CONCLUSION

Plaintiff's malpractice claim rests upon her ability to demonstrate a duty on the part of the Defendant, that the Defendant failed to meet that duty and that she has suffered damages as a result. Contrary to this Court's direction, Plaintiff's counsel has resisted attempts by Defendant's counsel to set to record the Plaintiff's functional capacity, her vocational opportunities, or the opinion of her expert on the standard of care to which she argues applies to the Defendant.

Therefore, the Defendant, by and through her undersigned counsel, respectfully requests that the Court GRANT her Motion to Compel Discovery and enter an Order:

(1)    Compelling Plaintiff to submit to a Functional Capacity Examination by and at the office of Jill Galper, P.T., located at 3411 Silverside Road, The Weldin Building, Suite 102, Wilmington, DE 19810;

(2)    Compelling Plaintiff to submit to a Vocational Rehabilitation Evaluation by and at the office of Rosalyn Peirce, Certified Vocational Expert, located at Two Penn Center, Suite 1050, Phila., PA 19102; and

(3)    Compelling Plaintiff to furnish the Defendant with the identity of Plaintiff's legal expert.

MARKS, O'NEILL,
O'BRIEN & COURTNEY, P.C.

__/s/ Theodore J. Segletes, III_____
Norman H. Brooks, Jr., Esquire (ID No. 2568)
Theodore J. Segletes, III, Esquire (ID No. 4456)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538

*Attorneys for Defendant*
*Lois J. Dawson, Esq.*

DATED: December 28, 2006

**Exhibit 1**

2005 U.S. Dist. LEXIS 116, *

LEXSEE 2005 U.S. DIST. LEXIS 116

Analysis
As of: Dec 28, 2006

**WESTCHESTER FIRE INSURANCE CO., Plaintiff, v. HOUSEHOLD
INTERNATIONAL, INC., HOUSEHOLD RETAIL SERVICES, INC.,
HOUSEHOLD BANK (SB), N.A., BENEFICIAL NATIONAL BANK USA,
Defendants.**

**Civil Action No. 02-1328 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 116*

**January 5, 2005, Decided**

**PRIOR HISTORY:** *Household Int'l, Inc. v. Westchester
Fire Ins. Co., 286 F. Supp. 2d 369, 2003 U.S. Dist. LEXIS
18336 (D. Del., 2003)*

**DISPOSITION:** [*1] Denied the defendants' Motion To
Compel Discovery Relating To Financial Institutions
Endorsement, the Motion To Compel Deposition Of
Westchester's Corporate Representative Witness (D.I. 75)
, and Motion To Compel Discovery [*10] Relating To
Westchester's Denials And Defenses (D.I. 76) filed by
Defendants, and denied Plaintiff's Motion For Protective
Order.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant insureds claimed
plaintiff insurer committed fraud by allegedly selling
liability insurance that turned out to have a value far below
its purported value. The insurer sued for a declaratory
judgment, seeking a declaration that predatory lending
claims against the insureds were not covered by any policy
issued by the insurer. The insureds moved, inter alia, to
compel discovery relating to the Financial Institutions
Endorsement (FIE).

**OVERVIEW:** The insurer argued that interpretation of the
FIE was not a part of the case, as there was no dispute as
to its meaning. The court found the insureds had not
demonstrated the relevance of the discovery requested with
regard to the FIE. The insureds did not contend the insurer
withheld from the insureds or their brokers the existence or
the contents of the FIE during negotiation of the purchase
of the umbrella policy. Rather, the insureds focused on the
parties' contemporaneous intent, understanding, and
representations with regard to the FIE's meaning. There
was no testimony suggesting that the insureds' insurance
brokers requested or relied upon having the type of
coverage that the FIE excluded. In fact, one broker testified
that providing coverage for fraud was against public policy
and not covered by insurance. The insureds failed to show
that discovery as to the meaning, scope, interpretation,
drafting, or origin of the FIE was relevant to their fraud
claim or that such discovery was reasonably calculated to
lead to the discovery of admissible evidence.

**OUTCOME:** The motion to compel discovery relating to
the FIE was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General
Overview*
*Civil Procedure > Discovery > Privileged Matters >
General Overview*
*Civil Procedure > Discovery > Relevance*
[HN1] See Fed. R. Civ. P. 26(b)(1).

*Civil Procedure > Discovery > Relevance*
[HN2] In the United States Court of Appeals for the Third
Circuit, it is well recognized that the federal rules allow
broad and liberal discovery.

COUNSEL: J.R. Julian, Esquire of J.R. JULIAN, P.A., Wilmington, Delaware. Of Counsel: James J. Duggan, Esquire, and Michael T. Glascott, Esquire of LUSTIG & BROWN, LLP, Buffalo, New York, for Plaintiff.

John A. Parkins, Jr., Esquire of RICHARDS, LAYTON & FINGER, Wilmington, Delaware. Of Counsel: John H. Mathias, Jr., Esquire, Christopher C. Dickinson, Esquire, John P. Wolfsmith, Esquire, Joseph F. Arias, Esquire, and Daniel Shim, Esquire of JENNER & BLOCK LLP, Chicago, Illinois, for Defendants.

JUDGES: Farnan, District Judge.

OPINION BY: JOSEPH J. FARNAN, JR.

OPINION:

MEMORANDUM OPINION

January 5, 2005

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are (1) the Motion For Protective Order (D.I. 72) filed by Plaintiff on June 18, 2004; (2) the Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I. 74) filed by Defendants on June 18, 2004; (3) the Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I. 75) filed by Defendants on June 18, 2004; and (4) the Motion To Compel Discovery Relating To Westchester's Denials And Defenses (D.I. 76) filed by Defendants on June 18, 2004.

BACKGROUND [*2]

This litigation stems from Defendants' claim that Plaintiff Westchester committed fraud by allegedly selling comprehensive liability insurance to Defendants that turned out to have a value far below its purported worth. Underlying this dispute are claims of fraud alleged by consumers against Defendants, arising from the sale or financing of satellite television systems and other consumer products.

In March 1998, Defendant Beneficial National Bank USA ("Beneficial") filed suit against Westchester in this Court seeking declaratory relief concerning coverage for fraudulent lending claims involving credit card accounts. In October 2000, this Court granted Westchester's motion for summary judgment, holding that a Financial Institutions Endorsement ("FIE") excluded coverage for predatory lending claims. In May 2002, Defendant Household International, Inc., Household Retail Services, Inc., and

Household Bank (SB), N.A. (collectively, "Household") filed suit in federal court in Illinois alleging that Westchester fraudulently induced Household to purchase insurance policies that excluded coverage for errors and omissions ("E&O") claims. The case was transferred to this Court and consolidated [*3] with a case brought by Westchester seeking declaratory judgment that predatory lending claims were not covered by any Westchester policy.

There are three Westchester insurance policies at issue in this case. Two were issued to Household and one was issued to Beneficial.

Discovery in this lawsuit began in November 2003. In June 2004, Defendants filed motions to compel seeking (1) discovery related to the drafting, meaning, interpretation, or intent of Westchester's FIE (D.I. 74); (2) discovery relating to the factual underpinnings of issues Westchester raised by way of its denial and defenses to Defendants' claims (D.I. 76); and (3) Westchester's designation of one or more representative witnesses to provide deposition testimony on the topics listed in (1) and (2) above (D.I. 75).

The Court heard Oral Argument on these Motions on September 14, 2004. Because depositions of Defendants' insurance brokers, Johnson & Higgens, were scheduled to take place in November 2004, the Court directed Defendants to show from the brokers' testimony the relevance of the requested discovery to each of Defendants' motions to compel. Defendants submitted a Supplemental Brief In Support Of Motions To [*4] Compel Discovery. (D.I. 111).

DISCUSSION

I. Legal Standard

In relevant part, *Rule 26* provides that [HN1] "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b)(1)*. [HN2] In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999) (citing *Titan Sports, Inc. v. Turner Broad. Sys. (In re Madden)*, 151 F.3d 125, 128 (3d Cir. 1998)).

II. Parties' Contentions

The parties make the same general arguments to support all four pending motions.

Westchester contends that Defendants' discovery should be limited to the specific manner in which

2005 U.S. Dist. LEXIS 116, *

Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies. Specifically, Westchester contends that Westchester's understanding of the FIE, the underlying insurance claims or other similar claims is not relevant to Defendants' fraud claim because there is no dispute as to [*5] the meaning of the FIE. Westchester argues that Defendants have not yet identified the acts or misrepresentations upon which Defendants are alleged to have relied upon to their detriment.

Defendants contend that fraud claims necessarily place at issue the alleged defrauder's knowledge and intent. Thus, Defendants contend that meaningful pursuit of their fraud claims requires discovery of Westchester's understanding of the FIE.

### III. Defendants' Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I. 74)

By their motion, Defendants seek to compel production of documents relating to the drafting, meaning, interpretation, or intent of the FIE. In the alternative, Defendants seek permission to depose a *30(b)(6)* witness in order to explore Westchester's institutional knowledge with regard to the FIE.

Westchester responds that interpretation of the FIE is not a part of this case, as there is no dispute as to its meaning.

Defendants now contend that the broker testimony demonstrates that further inquiry into Westchester's intent with regard to the FIE is warranted. Specifically, Defendants contend that "the lack of evidence that Defendants or the brokers [*6] strenuously objected to the FIE's inclusion in the policy supports Defendants' position that no one understood that the FIE would later be interpreted as restricting coverages as significantly as it has." (D.I. 111 at 12).

After reviewing the deposition testimony, Defendants' arguments, and documents provided in support of Defendants' motions to compel discovery, I conclude that Defendants have not demonstrated the relevance of the discovery requested with regard to the FIE. Defendants do not contend that Westchester withheld from Defendants or their brokers the existence or the contents of the FIE at any time during negotiation of the purchase of the umbrella policy. Rather, Defendants focus on the parties' contemporaneous intent, understanding, and representations with regard to the FIE's meaning. I find that there is no testimony suggesting that Defendants' insurance brokers requested or relied upon having the type of coverage that the FIE excludes. In fact, one of the insurance brokers, Mr. Pallis, testified that "providing coverage for fraud is against public policy and not covered by insurance." (D.I. 112, Ex. D at 70.) Notwithstanding the

liberal discovery standard in the Third [*7] Circuit, for these reasons I conclude that Defendants have not demonstrated that discovery as to the meaning, scope, interpretation, drafting, or origin of the FIE is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I. 74).

### IV. Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I. 75) filed by Defendants

Defendants' request, for the reasons described in sections II and III above, that Westchester present corporate representative testimony on the following topics: Westchester's understanding of the FIE, Westchester's intent in drafting the FIE, Westchester's intent in employing the FIE in its policies, and Westchester's intent in employing the FIE at the time a claim is made.

For the reasons given with regard to Defendants' Motion To Compel (D.I. 74) in Section III above, I conclude that Defendants have not demonstrated that the requested discovery is relevant to their fraud claim against Winchester, or that such discovery is reasonably calculated [*8] to lead to the discovery of admissible evidence. Thus, I will deny Defendants' Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I. 75).

### V. Motion To Compel Discovery Relating To Westchester's Denials And Defenses (D.I. 76) filed by Defendants

By their motion, Defendants seek an order compelling further responses to Interrogatory Nos. 6(a), 6(b), 6(f), 6(j), 6(k), 6(l), and 6 (m).

With regard to Interrogatories 6(a) and 6(b), Westchester has offered to provide an amended response. Defendants have not indicated that they find Westchester's proposed amended responses insufficient.

With regard to Interrogatory Nos. 6(f), 6(j), and 6(l), in its response Westchester agrees to supplement its response.

With regard to Interrogatory Nos. 6(k) and 6(m), Defendants do not set forth in their brief (D.I. 76) reasons why Westchester's responses are inadequate.

I find that the parties at this time do not require the Court's assistance to resolve their dispute with regard to Interrogatory 6. Thus, I will deny the Motion To Compel Discovery Relating To Westchester's Denials and Defenses (D.I. 76) with leave to renew should Defendants find Westchester's [*9] amended responses insufficient.

## VI. Motion For Protective Order (D.I. 72) filed by Plaintiff

By its motion, Westchester seeks a protective order vacating or limiting the scope of the depositions of Westchester's *Rule 30(b)(6)* witnesses to only such topics that are germane to this case. Westchester seeks also to vacate or limit Defendants' November 2003 demand for documents directed to Westchester. Westchester contends that Defendants' discovery should be limited to the specific manner in which Westchester allegedly misrepresented, tacitly or otherwise, coverage under the subject policies.

Because I determined that the discovery sought by Defendants is not relevant under *Rule 26*, the Court need not decide whether Westchester is entitled to a protective order. Thus, I will deny as moot the Motion For Protective Order (D.I. 75) filed by Plaintiff.

## CONCLUSION

In sum, I will (1) deny the Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I. 74) filed by Defendants; (2) deny the Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I. 75) filed by Defendants; (3) deny with leave to renew the Motion To Compel Discovery [*10] Relating To Westchester's Denials And Defenses (D.I. 76) filed by Defendants; and (4) deny as moot the Motion For Protective Order (D.I. 72) filed by Plaintiff.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 5th day of January 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

(1) the Motion To Compel Discovery Relating To Financial Institutions Endorsement (D.I. 74) filed by Defendants is **DENIED**;

(2) the Motion To Compel Deposition Of Westchester's Corporate Representative Witness (D.I. 75) filed by Defendants is **DENIED**;

(3) the Motion To Compel Discovery Relating To Westchester's Denials And Defenses (D.I. 76) filed by Defendants is **DENIED** with leave to renew; and

(4) the Motion For Protective Order (D.I. 72) filed by Plaintiff is **DENIED** as moot.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

**Exhibit 2**

2006 U.S. Dist. LEXIS 76776, *

LEXSEE 2006 U.S. DIST. LEXIS 76776

Analysis
As of: Dec 28, 2006

**ROBERT ANDREW UPCHURCH and ISA UPCHURCH, Plaintiffs, v. OFFICER EDWARD K. HESTER, OFFICER TIMOTHY D. MUTTER, CITY OF DOVER, THE MILLS CORPORATION, d/b/a DOVER MALL, SMS HOLDINGS CORPORATION d/b/a VALOR SECURITY SERVICES, and DANIEL WIDENER, Defendants.**

**Civil Action No. 05-252-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 76776*

**October 23, 2006, Decided**

**PRIOR HISTORY:** *Upchurch v. Hester, 2006 U.S. Dist. LEXIS 37472 (D. Del., June 8, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs filed this *42 U.S.C.S. § 1983* action against defendants, police officers, the City of Dover, the operator of a mall, a security company, and an employee of the mall, in connection with an incident at a mall in March 2004. Before the court was plaintiffs' request/motion seeking thirty days to produce an expert report from one plaintiff's treating physician.

**OVERVIEW:** Plaintiffs sought permission to designate plaintiff's treating physician as an expert, even though the Scheduling Order deadline had passed. Plaintiffs also sought permission to allow the treating physician to produce an expert report within 30 days if the court granted the request. Defendants objected to the request. Defendants contend that the treating physician could not opine on the cause of plaintiff's injuries or on any future medical needs of plaintiff because his testimony was expert, not factual, testimony, and because plaintiffs did not timely identify the treating physician or submit an expert report by him. The court found that because plaintiffs intended to have the treating physician opine as to the causation of plaintiff's injuries, and his future treatment needs, plaintiffs intended to have the treating physician provide expert testimony that reached beyond the ordinary treatment of plaintiff. Therefore, an expert report should have been provided to all defendants in accordance with *Fed. R. Civ. P.*

*26(a)(2)(B)*. However, the court found that plaintiff's failure to disclose was harmless.

**OUTCOME:** The request was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN1] Pursuant to *Fed. R. Civ. P. 26(a)(2)(A)*, expert witnesses must be disclosed to the opposing side(s). In determining whether a witness is an expert and therefore must be identified and disclosed, Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN2] The designation of a witness as an expert is a matter separate from whether an expert report must be submitted by that witness. Not all identified experts must submit expert reports. Rather, expert reports only need to be submitted by those witnesses who are retained or specifically employed to provide expert testimony. *Fed. R. Civ. P. 26(a)(2)(B)*. *Fed. R. Civ. P. 26(a)(2)(B)* does not

require an expert report from a treating physician who will testify concerning his or her examination, diagnosis, treatment of a patient. However, the spirit and substance of Rule 26 cannot be avoided by employing the treating physician to provide, without an accompanying expert report, "classic expert testimony" regarding prognosis. When a treating physician's proffered testimony reaches beyond the basic facts learned during the treatment of a patient, and extends to typical opinion testimony, the provisions of Rule 26(a)(2)(B) attach, and an expert report must be provided.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN3] *Fed. R. Civ. P. 26(a)(2)(C)* details three methods to set a date for submitting an expert report: (1) by direction of the court, (2) by stipulation of the parties, or (3) by statute. If the parties or the court have not set a disclosure date, disclosures must be made at least 90 days before the trial date or the date the case is to be ready for trial.

*Civil Procedure > Discovery > Misconduct*
[HN4] A party that without substantial justification fails to disclose information required by *Fed. R. Civ. P. 26(a)* is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court may impose other appropriate sanctions. *Fed. R. Civ. P. 37(c)(1)*.

**COUNSEL:** [*1] Victor F. Battaglia, Sr., Esquire, and Phillip B. Bartoshesky, Esquire, of BIGGS & BATTAGLIA, Wilmington, Delaware. Attorneys for Plaintiffs.

Daniel A. Griffith, Esquire, and John Vernon Work, Esquire, of MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Wilmington, Delaware. Attorneys for Defendants Officer Edward K. Hester, Officer Timothy D. Mutter and City of Dover.

Michael L. Sensor, Esquire, of PERRY & SENSOR, Wilmington, Delaware. Attorney for Defendants The Mills Corporation d/b/a Dover Mall, SMS Holdings Corporation d/b/a Valor Security Services, and Daniel Widener.

**JUDGES:** Joseph J. Farnan Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION:**

## MEMORANDUM OPINION

October 23, 2006

Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Plaintiffs' request/motion n1 seeking thirty days to produce an expert report from Mr. Upchurch's treating physician. (D.I. 62). For the following reasons, the request will be granted.

n1 The parties have submitted this dispute by letters, which is prohibited by the *Rule 16* Scheduling Order (D.I. 17). Although the Court will entertain the current request, the Court will not entertain further requests submitted by letters.

[*2]

## I. BACKGROUND

A. Parties

Plaintiffs, Robert Andrew Upchurch and Isa Upchurch ("Plaintiffs"), are citizens of the State of Delaware who have brought this action pursuant to *42 U.S.C. § 1983*, in connection with an incident at the Dover Mall in March 2004.

Defendants Edward K. Hester ("Hester") and Timothy D. Mutter ("Mutter") are officers of the Dover Police Department who were engaged in extra duty assignments at the Dover Mall in March 2004. Defendant City of Dover is a political subdivision of the State of Delaware. The Court will refer to these defendants, collectively, as the "Dover Defendants."

Defendant Dover Mall Limited Partnership, designated by Plaintiffs as "The Mills Corporation d/b/a Dover Mall" is a Delaware business entity which operates and does business as the Dover Mall ("Mall"). Defendant SMS Holdings Corporation d/b/a Valor Security Services is a Delaware Corporation which provides security services for the Dover Mall ("Valor"). Defendant Daniel Widener ("Widener"), a Delaware resident, was an employee of Valor in March 2004. The Court will refer to these defendants, collectively, as the "Mall Defendants."

B. Background [*3]

The following facts are alleged in Plaintiffs' Amended Complaint. (D.I. 12). On the evening of March 14, 2006, after 9:00 p.m., Plaintiffs were shopping at the Dover Mall.

Around 9:30 p.m., Mr. Upchurch went to see if the Boscov's store was still open. It was not. Mr. Upchurch was then approached by Defendant Widener, a security guard for Valor Security Services ("Valor"). Mr. Upchurch was advised that the store was not an exit from the Mall area. Mr. Upchurch then left the area after a verbal exchange between Defendant Widener and Mr. Upchurch, in which Defendant Widener identified himself as a security guard. As he was leaving, Mr. Upchurch heard Defendant Widener make a call on his two-way radio. Mr. Upchurch headed toward the Stawbridge's store, also in the Mall and still open at the time. As he approached Strawbridge's, he was stopped by Defendant Hester, an extra-duty City of Dover police officer procured by Valor for mall security duty through an arrangement with the City of Dover Police Department. Defendant Hester placed his hands on Mr. Upchurch's shoulders. Mr. Upchurch alleges he tried to run into Strawbridge's but was tackled to the floor from behind by Defendant Hester. [*4] Mr. Upchurch also alleges that Defendant Mutter, another extra-duty police officer, then sprayed Mr. Upchurch with mace or pepper spray while Mr. Upchurch was pinned to the floor. Mr. Upchurch was taken into custody and escorted out of the mall. As a result of this incident, Mr. Upchurch alleges he sustained injuries to his arm and left shoulder.

On April 28, 2005, Plaintiffs filed their Complaint. (D.I. 1). On December 22, 2005, the Court entered a Scheduling Order setting forth the parties' discovery deadlines. (D.I. 17). The Court designated April 20, 2006 as the date by which Plaintiffs were to produce expert reports, and, consequently, identify their experts. Id. To date, Plaintiffs have not designated any experts, and have not produced any expert reports. Plaintiffs now seek leave to submit an expert report from Dr. Glenn D. Rowe, Mr. Upchurch's treating physician.

## II. PARTIES' CONTENTIONS

By their letter request, Plaintiffs seek permission to designate Dr. Rowe as an expert, even though the Scheduling Order deadline has passed. Plaintiffs also seek permission to allow Dr. Rowe to produce an expert report within 30 days if the Court grants the request.

Both [*5] the Mall Defendants and the Dover Defendants object to Plaintiffs' request. The Mall Defendants contend that Dr. Rowe cannot opine on the cause of Mr. Upchurch's injuries or on any future medical needs of Mr. Upchurch because his testimony is expert, not factual, testimony, and because Plaintiffs did not timely identify Dr. Rowe or submit an expert report by him. (D.I. 61). Since all expert disclosures and reports were due by April 20, 2006, the Mall Defendants contend that Plaintiffs should not now be permitted to designate Dr. Rowe as an

expert, nearly six months after the Scheduling Order deadline. Id. The Dover Defendants have also filed a letter in opposition to Plaintiffs' Motion, reiterating the Mall Defendants position. (D.I. 63).

## III. ISSUES PRESENTED

In the Court's view, the issues raised by Plaintiffs' request are: (1) whether the proffered testimony of Dr. Rowe is "expert" or "factual" in nature; and (2) when were Plaintiffs required to disclose Dr. Rowe's identity and proffered expert testimony to Defendants.

## IV. DISCUSSION

### A. Dr. Rowe's Testimony Is Expert In Nature

[HN1] Pursuant to *Federal Rule of Civil Procedure 26(a)(2)(A)* [*6] , expert witnesses must be disclosed to the opposing side(s). In determining whether a witness is an expert and therefore must be identified and disclosed, *Rule 26* "focuses not on the status of the witness, but rather on the substance of the testimony." *Gomez v. Rivera Rodriguez, 344 F.3d 103, 113 (1st Cir. 2003)*(citing *Patel v. Gayes, 984 F.2d 214, 218 (7th Cir. 1993))*. The Court concludes that Plaintiffs should have designated and disclosed Dr. Rowe, Mr. Upchurch's treating physician, as an expert witness under *Rule 26(a)(2)(A)*.

[HN2] The designation of a witness as an expert is a matter separate from whether an expert report must be submitted by that witness. Not all identified experts must submit expert reports. Rather, expert reports only need to be submitted by those witnesses who are "retained or specifically employed to provide expert testimony." *Fed. R. Civ. P. 26(a)(2)(B)*. In advancing their contention that Dr. Rowe was not previously required to submit an expert report, Plaintiffs misconstrue the commentary to *Rule 26* identifying treating physicians as one group for which an expert report is not automatically [*7] required. (D.I. 62); see *Fed. R. Civ. P. 26*, cmt. 1993 Amendments, subdivision (a), para (2). *Rule 26(a)(2)(B)* does not require an expert report from a treating physician who will testify concerning his or her examination, diagnosis, treatment of a patient. However, the spirit and substance of *Rule 26* cannot be avoided by employing the treating physician to provide, without an accompanying expert report, "classic expert testimony" regarding prognosis. *Lauria v. AMTRAK, 1997 U.S. Dist. LEXIS 3408 at *4 (E.D. Pa 1997)*. When a treating physician's proffered testimony reaches beyond the basic facts learned during the treatment of a patient, and extends to typical opinion testimony, the provisions of *Rule 26(a)(2)(B)* attach, and an expert report must be provided. *Buss v. Quigg, 2002 U.S. Dist. LEXIS 15081 at *2 (E.D. Pa 2002)*.

Because Plaintiffs intend to have Dr. Rowe opine as to

the causation of Mr. Upchurch's injuries, and his future treatment needs, the Court concludes that Plaintiffs intend to have Dr. Rowe provide expert testimony that reaches beyond the ordinary treatment [*8] of Mr. Upchurch. The Court, therefore, concludes that an expert report should have been provided to all Defendants in accordance with *Rule 26(a)(2)(B)*.

B. Plaintiffs Were Required To Disclose All Experts In Accordance With The Court's Scheduling Order

[HN3] *Federal Rule of Civil Procedure 26(a)(2)(C)* details three methods to set a date for submitting an expert report: (1) by direction of the Court, (2) by stipulation of the parties, or (3) by statute. If the parties or the Court have not set a disclosure date, disclosures must be made "at least 90 days before the trial date or the date the case is to be ready, for trial." Id.

In this case, the *Rule 16* Scheduling Order (D.I. 17) required the Plaintiffs to disclose all experts and expert reports no later than April 20, 2006. Because Plaintiffs' current request to identify Dr. Rowe as an expert, and produce his expert report, was made on October 11, 2006, the Court concludes that the request is untimely.

C. The Impact Of Failing To Timely Disclose An Expert

Having concluded that Plaintiff's expert report is untimely, the Court must determine whether that untimeliness is sufficient to preclude [*9] Plaintiff from offering Dr. Rowe's expert report and testimony pursuant to *Federal Rule of Civil Procedure 37*. [HN4] "A party that without substantial justification fails to disclose information required by *Rule 26(a)* . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court . . . may impose other appropriate sanctions." *Fed. R. Civ. P. 37(c)(1)*.

Plaintiffs' only justification for failing to disclose Dr. Rowe as an expert witness is their misunderstanding of the requirements of *Rule 26*. In the Court's view, this misunderstanding of the statute does not clearly constitute "substantial justification;" however, the Court finds that Plaintiff's failure to disclose is harmless. The Pre-Trial Conference is scheduled for January 2007. Moreover, Defendants have been aware, throughout the discovery period, of Mr. Upchurch's alleged shoulder injury as well as the identity of Dr. Rowe as Mr. Upchurch's treating physician. Further, Plaintiffs indicate that Dr. Rowe's [*10]

"expert report" will be provided to Defendants by mid-November. In these circumstances, the Court concludes that Plaintiffs should not be precluded from designating Dr. Rowe as an expert witness.

V. CONCLUSION

In sum, the Court concludes that Plaintiffs failed to comply with *Rule 26(a)* and identify Dr. Rowe as an expert witness and provide his expert report. However, because the Court finds that Plaintiffs' failure to disclose under *Rule 26(a)* was harmless, the Court will grant Plaintiff's request. Plaintiffs will be required to produce Dr. Rowe's expert report within thirty days of the date of this Order.

Finally, to avoid any undue prejudice to Defendants, the Court will require Mr. Upchurch to submit to a medical examination pursuant to *Federal Rule of Civil Procedure 35*, as requested by the Mall Defendants. (D.I. 61). Any medical expert reports to be offered by Defendants will be due 45 days after Mr. Upchurch's medical examination.

An order consistent with this Memorandum Opinion will be entered.

**ORDER**

At Wilmington, this 23 day of October 2006, for the reasons set forth in the Memorandum Opinion issued this date; [*11]

IT IS HEREBY ORDERED that Plaintiffs' request to designate an expert and submit an expert report is **GRANTED** (D.I. 62);

IT IS FURTHER ORDERED that:

1. Plaintiff is permitted to designate Dr. Rowe as an expert witness;

2. Plaintiff is required to produce Plaintiff's medical reports and Dr. Rowe's expert report to all Defendants within 30 days of this date;

3. Mr. Upchurch must submit to a medical examination pursuant to *Federal Rule of Civil Procedure 35*; and

4. Any medical expert reports to be offered by Defendants are due 45 days after Mr. Upchurch's medical examination.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

**Exhibit 3**

2004 U.S. Dist. LEXIS 19010, *

LEXSEE 2004 U.S. DIST. LEXIS 19010

**DIMAS ESCOBAR VERSUS BLESSEY MARINE SERVICES, INC.**

**CIVIL ACTION NO: 03-2679 SECTION: "J"(1)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2004 U.S. Dist. LEXIS 19010*

**September 21, 2004, Decided**
**September 22, 2004, Filed, Entered**

**DISPOSITION:**      [*1]      Defendant's motion for examination granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer filed a motion pursuant to *Fed. R. Civ. P. 35* for an order requiring plaintiff employee to undergo a functional capacity examination by a licensed physical therapist in connection with a negligence action arising from a fall on a barge.

**OVERVIEW:** The employee was injured when he fell about 10 feet from one barge to another barge. The employer contended that good cause for a functional capacity examination was present because it was entitled to investigate the employee's ability to return to work in his previous capacity. The employee urged that he should not have been required to undergo such an evaluation when his doctor stated that it was potentially harmful. The court held that the employer demonstrated good cause for a functional capacity examination. Until the employee declined to proceed with surgery, the parties were proceeding on the assumption that the employee would have undergone a two level anterior cervical fusion before the trial. The complexion of the case changed markedly when the employee belatedly supplemented his physicians' reports with functional limitations reports. In order to respond to the new developments, the employer was entitled to have its expert opine on the employee's work capabilities, which required a functional capacity examination. Notwithstanding that the employee had not identified a functional capacity expert, the employer demonstrated good cause for an examination.

**OUTCOME:** The court granted the employer's motion for a functional capacity examination.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > Mental & Physical Examinations*
[HN1] Pursuant to *Fed. R. Civ. P. 35*, whenever the physical condition of a party is in controversy a court may require the party to submit to a physical examination.

*Civil Procedure > Discovery > Methods > Mental & Physical Examinations*
*Torts > Negligence > General Overview*
[HN2] Although the party moving for an order requiring a party to submit to a physical examination must show good cause, a plaintiff in a negligence action who asserts physical injuries places the extent of the injuries in controversy and provides the defendant with good cause for an examination.

**COUNSEL:** For DIMAS ESCOBAR, plaintiff: Robert J. Young, Jr., Timothy J. Young, The Young Firm, New Orleans, LA.

For BLESSEY MARINE SERVICES, INC., defendant: George Moore Gilly, Evans Martin McLeod, Phelps Dunbar, LLP, New Orleans, LA.

**JUDGES:** SALLY SHUSHAN, United States Magistrate Judge.

**OPINION BY:** SALLY SHUSHAN

**OPINION:**

**HEARING ON MOTION**

2004 U.S. Dist. LEXIS 19010, *

APPEARANCES: Submitted on briefs

MOTION: DEFENDANT'S MOTION FOR EXAMINATION ACCORDING TO *FEDERAL RULE OF CIVIL PROCEDURE 35* (Rec. doc. 15)

## GRANTED

Before the undersigned is the motion of the defendant, Blessey Marine Services, Inc. ("Blessey Marine"), for an order requiring the plaintiff, Dimas Escobar ("Escobar"), to undergo a functional capacity examination by Dr. Richard Bunch, a licensed physical therapist.

Escobar was injured on July 19, 2003, when he fell about ten feet from one barge to another barge. Rec. doc. 1. He was treated at a hospital in Joliet, Illinois. On August 27, 2003, Escobar was seen by Dr. Daniel Seltzer, an orthopedic surgeon, [*2] who recommended that he see other doctors. He found Escobar unfit for duty and told him not to return to work. Exhibit A to Escobar Opposition. On October 23, 2003, Dr. Bradley Bartholomew, a neurological surgeon, rendered a report. Exhibit B to Escobar Opposition. He recommended that Escobar undergo a course of physical therapy and that he return in six weeks. He reported that if Escobar's condition did not improve in six weeks, he might be a candidate for a two level anterior cervical fusion. Id. On December 28, 2003, Dr. Bartholomew recommended the fusion. Id.

On February 5, 2004, Dr. John Steck, a neurological surgeon, rendered a report at the request of Blessey Marine. Exhibit D to Escobar Opposition. He described Escobar's primary complaint as related to his neck. He concluded that Escobar would not benefit from an anterior cervical diskectomy and fusion. He recommended that Escobar be treated conservatively and opined that a neurosurgeon's care was not required. Id.

On July 6, 2004, Escobar was seen by Dr. Bartholomew in preparation for the surgery. Escobar reported that he continued to experience neck pain but that it was not constant. He was not taking any medication [*3] but he had restricted his activities. Escobar reported he did not want to proceed with surgery. Dr. Bartholomew agreed with this decision. He asked him to return in two months and told him to gradually increase his activities. Exhibit C to Blessey Marine reply. On July 21, 2004, he reported that Escobar could perform sedentary to light duty work. Exhibit C to Escobar Opposition.

On August 4, 2004, Dr. Bartholomew completed a functional limitations form, which described limitations on what Escobar could do during an eight hour work day. For example, Dr. Bartholomew reported he could stand for no more than four hours and he could occasionally lift up to twenty pounds. Exhibit B to Blessey Marine reply. There

is no indication that Escobar was seen by Dr. Bartholomew after July 6, 2004. On August 5, 2004, Dr. Seltzer completed an identical form. In addition to other limitations, he reported Escobar could stand for no more than two hours and he could occasionally lift up to twenty pounds. Id. The completed forms were transmitted to Blessey Marine on August 9, 2004. Id.

On August 26, 2004, Dr. Steck stated that he believed any recommendations on Escobar's ability to return to work [*4] should be based on a functional capacity examination. Exhibit E to Escobar Opposition. On August 31, 2004, he prescribed such an examination. Exhibit F to Escobar Opposition. On September 13, 2004, Dr. Seltzer reported that while he was not opposed to the performance of such an examination, he did not think the timing was ideal. He reported that Escobar was not at maximum medical improvement and there was some risk of additional injury from the examination. Exhibit H to Escobar Opposition. There is no indication that Dr. Seltzer saw Escobar after August 27, 2003.

Blessey Marine contends that good cause for the functional capacity examination is present because it is entitled to investigate Escobar's ability to return to work in his previous capacity. Escobar replies that he has not undergone a functional capacity examination. The only experts he has identified are Drs. Bartholomew and Seltzer and a vocational rehabilitation counselor. He urges that he should not be required to undergo such an evaluation when Dr. Seltzer states it is potentially harmful.

[HN1] Pursuant to *Fed. R. Civ. P. 35*, whenever the physical condition of a party is controversy [*5] the court may require the party to submit to a physical examination. 8A Wright, Miller and Marcus, Federal Practice and Procedure § 2231 (2d ed. 1994). [HN2] Although the party moving for such an order must show good cause, a plaintiff in a negligence action who asserts physical injuries places the extent of the injuries in controversy and provides the defendant with good cause for an examination. Id. at § 2234.1.

Escobar contends that *Fuller v. United States, 2002 U.S. Dist. LEXIS 3769, 2002 WL 2877729 (E.D.La.)* (Vance, J.), and *Magee v. Pride Offshore, Inc., 2004 U.S. Dist. LEXIS 1489, 2004 WL 224561 (E.D.La.)* (Knowles, M.J.), require that Blessey Marine's motion be denied. In Fuller, the District Judge affirmed Magistrate Judge Wilkinson's finding that the government's motion to compel was incomplete, untimely and unnecessary. The government did not identify the person who was to conduct the exam. The motion was untimely because the discovery deadline would expire before the expert report could be completed and the plaintiff would have insufficient time to hire his own functional capacity expert. The motion was unnecessary because the plaintiff had not identified a

2004 U.S. Dist. LEXIS 19010, *

functional capacity expert for [*6] the trial and the government's physician expert could rebut any evidence from the plaintiff's expert. In Magee, Magistrate Judge Knowles denied the motion and found the situation was substantially similar to that present in Fuller.

The instant action is factually dissimilar from *Fuller* and *Magee.* Until July 6, 2004, when Escobar declined to proceed with the surgery, the parties, based on Dr. Bartholomew's reports and recommendations, were proceeding on the assumption that he would undergo a two level anterior cervical fusion before the trial. After July 6, 2004, the complexion of the case changed markedly. Escobar belatedly supplemented his physicians' reports with the functional limitations reports. n1 In order to respond to these new developments Blessey Marine is entitled to have its expert, Dr. Steck, opine on Escobar's work capabilities. Dr. Steck reports that a functional capacity examination is required before he can make that determination. Part of the purpose of *Rule 35* is to place the parties on a level playing field when the physical or mental condition of a party is at issue. This can only be accomplished by allowing Blessey Marine to respond to the changed [*7] circumstances of the case. Notwithstanding the fact that Escobar has not identified a functional capacity expert, Blessey Marine has demonstrated good cause for a functional capacity examination.

n1 Escobar did not transmit the completed functional limitations forms until August 9, 2004. Exhibit B to Blessey Marine reply. The pretrial order scheduling order required that the plaintiff deliver reports of experts by July 21, 2004. Rec. doc. 7.

Blessey Marine reports that the examination will be altered as needed to avoid any risk of injury to Escobar. By proceeding with the examination it bears any risk that Escobar will allege that his injuries were aggravated by the examination.

IT IS ORDERED that: (1) Blessey Marine's motion for an order requiring Escobar to appear for a functional capacity examination before Dr. Richard Bunch (Rec. doc. 15) is GRANTED; and (2) the examination will be conducted in sufficient time to permit Dr. Steck to render his final report before the settlement conference scheduled for October 13, 2004. [*8]

SALLY SHUSHAN

Untied States Magistrate Judge

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

ELIZABETH WATTS,            :
                                :
      Plaintiff,            :
                                :    C. A. No. 06C-02-114 JOH
      v.                  :
                                :    JURY DEMAND & ANSWER
LOIS J. DAWSON,          :
                                :
      Defendant.       :

## CERTIFICATE OF SERVICE

I, **Theodore J. Segletes, III,** of Marks, O'Neill, O'Brien & Courtney, P.C. hereby certify that

on this **28th** day of **December**, 2006, the attached **Brief in Support of Defendant's Motion to**

**Compel** was served by electronic filing in the above matter upon the following counsel of record:

      Kevin William Gibson, Esquire
      Gibson & Perkins, P.C.
      200 East State Street, #105
      Media, PA 19063

                                            */s/ Theodore J. Segletes, III*
                                          Theodore J. Segletes, III

DE054624.1