IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH WATTS, | : |
| Plaintiff, | : |
| v. | : C. A. No. 1:06-CV-00165-GMS |
| LOIS J. DAWSON, ESQUIRE | : |
| Defendant. | : |

**APPENDIX TO DEFENDANT'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

/s/   Theodore J. Segletes, III
Norman H. Brooks, Jr., Esquire (ID No. 2568)
Theodore J. Segletes, III, Esquire (ID No. 4456)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538

*Attorney for Defendant
Lois J. Dawson, Esq.*

DATED: December 28, 2006

DE073220.1

Plaintiff's Deposition, taken January 19, 2006, pp. 179-181......................................................A-1

Transcript of telephone conference held on September 14, 2006, pp. 18, 19, and 31..................A-4

179

1          I was frustrated because I
2    wanted to see their doctor. They didn't
3    even have anybody consult me or consult
4    my doctors.
5          Q.    Let me take you back to the
6    first time you saw Lois Dawson.
7          A.    Um-hum.
8          Q.    Who referred you to her?
9          A.    There was -- and I don't
10   remember his name, but there was a guy at
11   voc rehab that said that she was pretty
12   much a tiger and that she would be a good
13   person to go with, and so I consulted
14   her.
15         Q.    Do you recall when it was
16   that you saw her?
17         A.    She would probably have that
18   in her notes. I know it was sometime
19   after I graduated. I don't know if it
20   was in the fall of that year, 2001. I'm
21   not positive.
22         Q.    Fall of '01?
23         A.    I'm guessing. It would be
24   in your records.

```
 1           Q.      And you were cut off as of
 2    when?
 3           A.      I was cut off when I
 4    graduated in 2001, in June.
 5           Q.      So June?
 6           A.      Um-hum, and I appealed it.
 7    Of course, it didn't get anywhere.
 8           Q.      You appealed that yourself?
 9           A.      Yes, I appealed that myself.
10           Q.      How many times did you see
11    Lois Dawson in her office about this?
12           A.      In the beginning, it was, I
13    guess, a couple times a year.  I remember
14    being concerned because I wasn't hearing
15    from her.  I'm somebody who kind of likes
16    to be in control of things and know
17    what's going on.
18                   And I remember talking with
19    my older brother, who's a lawyer, and he
20    said, yours isn't the only case on her
21    desk.  You've hired her.  You have to
22    trust the fact that she's going to get it
23    done.
24                   You know, throughout the
```

181

```
 1    time, I continued -- I know for awhile I
 2    did a little physical therapy and then,
 3    after that, I continued doing this stuff
 4    on my own, trying to pursue whatever I
 5    could to try to get myself to a better
 6    level because I felt myself going
 7    downhill.
 8         Q.    What was your understanding
 9    of what Ms. Dawson was going to do for
10    you?
11         A.    My understanding was that we
12    were going to sue Aetna and we were
13    suing, basically, for what they would owe
14    me, their portion, until I turned either
15    65 or 70.
16               And the reason she was doing
17    that, instead of suing to get me back on
18    their rolls, is she said, you don't want
19    to have to go through this headache,
20    because as soon as you get back on, they
21    can cut you off again.
22               So I was suing for that.
23               Aetna originally -- when I
24    first started, they called up and said,
```

```
 1              MR. BROOKS:  (Inaudible) changing opinions as
 2   the discovery unfolds, which to an extent an expert would be
 3   open to do, then we would look for six months of fact
 4   discovery, and then his expert and the letter opinion he
 5   seeks to offer, and 30 days for us to respond after his 30
 6   days.
 7              THE COURT:  Mr. Gibson, Mr. Brooks has made
 8   reference to a place in the joint status report where he
 9   says you indicate a need for expert testimony.  I don't see
10   it.  Where is it?  Did you make that reference, Mr. Gibson?
11              MR. GIBSON:  I don't recall doing that.  I know
12   I sent Mr. Brooks a letter saying that I am prepared to go
13   to trial.  I already have an expert and I was going to ask
14   the Court for the earliest trial date as possible.
15              THE COURT:  What kind of expert do you have?
16              MR. GIBSON:  I have a legal expert who is going
17   to testify that failure to file within the statute of
18   limitations is a deviation from the standard of care.
19   Again, it is not really a complicated legal expert issue.
20              THE COURT:  Why do we need to go beyond that
21   type of expert, Mr. Brooks?
22              MR. BROOKS:  You need an expert on causation,
23   Your Honor, because it's conceded that there was no
24   litigation filed.
25              THE COURT:  Right.
```

1              MR. BROOKS:  They had to prove causation, and on
2    the issue of causation is where the whole case is, not the
3    fact that no litigation was filed.  That is one request to
4    admit.  As a matter of fact, we probably admitted it in our
5    answer.  But he has identified, I am looking for it now, a
6    letter, an expert, it seems to me an attorney from Dover --
7              THE COURT:  He has indicated an expert on the
8    standard of care in the legal community.
9              MR. BROOKS:  Okay.  But we expect to have an
10   expert on the issue of causation to explain -- if it is not
11   resolved, this is something that is one of the bases that we
12   think we should be in Federal Court.  This is really
13   something that can be determined on the law, because the
14   underlying case would be determined on the law as a
15   practical matter.  We think it's so clear that the Court
16   just doesn't go outside the administrative record unless
17   certain things are found.
18             THE COURT:  Mr. Gibson, do me a favor.  Outline
19   the nature of this action, would you, please.  What is
20   specifically your client's complaint?
21             MR. GIBSON:  Well, Your Honor, there is
22   actually -- I have a pending motion for summary judgment,
23   Your Honor.
24             THE COURT:  I have read about that.
25             MR. GIBSON:  The case is very simple, Your

```
 1              So I am going to leave then to counsel's own
 2   good offices and professionalism the scheduling of
 3   depositions, the scheduling of the IME, the designation of
 4   experts, the submission of expert reports and rebuttal
 5   experts, if necessary. Okay?
 6              MR. BROOKS: Yes, Your Honor.
 7              THE COURT: You have to do, you need to get it
 8   done, whatever you want to get into your memoranda, so that
 9   I will have it by the 16th, so that we can come in and have
10   an orderly discussion. Now, consistent with Mr. Gibson's
11   earlier request, I am going to require that people with
12   levels of, officials, including the plaintiff, with
13   appropriate levels of authority attend.
14              Mr. Gibson, do you have someone specifically in
15   mind by way of name or title?
16              MR. GIBSON: I guess I am a bit confused, Your
17   Honor.
18              THE COURT: Confused about what? Who is going
19   to attend the settlement conference?
20              MR. GIBSON: You said do I have anybody in mind,
21   other than the plaintiff, I am trying to understand what you
22   are asking.
23              THE COURT: Earlier, you interposed the thought
24   that, asked the question, was I going to have -- and I cut
25   you off -- certain people.
```

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| ELIZABETH WATTS, | : |
| Plaintiff, | : |
| | : C. A. No. 06C-02-114 JOH |
| v. | : |
| | : JURY DEMAND & ANSWER |
| LOIS J. DAWSON, | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, **Theodore J. Segletes, III,** of Marks, O'Neill, O'Brien & Courtney, P.C. hereby certify that on this **29th** day of **December**, 2006, the attached **Appendix to Defendant's Opening Brief in Support of Its Motion to Compel** was served by electronic filing in the above matter upon the following counsel of record:

    Kevin William Gibson, Esquire
    Gibson & Perkins, P.C.
    200 East State Street, #105
    Media, PA 19063

                                                                                                */s/ Theodore J. Segletes, III*
                                                                                            Theodore J. Segletes, III