IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

ELIZABETH WATTS                      :

                   Plaintiff   :

                          :    No. 1:06 – CV – 165 [GMS]

                          :

                          :

LOIS J. DAWSON, ESQUIRE        :

                 Defendant  :

### PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO COMPEL

Defendant moves the Court to compel Plaintiff to undergo vocational testing and

a functional capacity examination. Defendant further moves to compel the Plaintiff to

name an expert witness. The Plaintiff generally denies the particulars of the Motion to

Compel and defends on the basis that Defendant has never filed a Motion as required

under FRCP 35 to be allowed to conduct vocational testing and/or functional capacity

testing and there is no requirement for Plaintiff at this stage of the proceedings to disclose

her experts. By way of further answer and defense to the Motion to Compel, Plaintiff

relies upon her Memorandum of Law in Opposition to the Motion to Compel, a true and

correct copy of said Memorandum being attached hereto as Exhibit "A" and incorporated

herein by reference. Plaintiff seeks Rule 11 sanctions for having to respond to this

meritless Motion.

GIBSON & PERKINS P.C.

BY: KEVIN WILLIAM GIBSON
DE. Supreme Court ID 2025
1326 King Street
Wilmington DE 19899
302.668.3992
610.565.1708

IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

ELIZABETH WATTS                                    :
3102 Ruby Drive                                    :
Wilmington, DE  19810                              :
    Plaintiff                  :
                               :        No. 1:06 – CV – 165 [GMS]
                               :
LOIS J. DAWSON, ESQUIRE                             :
1525 Delaware Avenue                                :
Wilmington DE 19806                                :
    Defendant                  :

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL

Vocational/Function Capacity Testing

    The Defendant has filed a meritless Motion to Compel the Plaintiff to undergo

vocational and functional capacity testing without first filing the required Motion under

FRCP 35 to get this Court's permission to conduct such an examination. For whatever it

is worth, on November 9, 2006 Defense Counsel filed a pleading entitled "Notice of

Demand for a Functional Capacity Exam". Nowhere in the Federal Rules of Civil

Procedure is there rule or procedure that allows such testing by filing a "Notice of

Demand".[1] However, there is a rule of procedure that mandates what steps must be taken

_____

[1] It should be noted for the record that over the objections of counsel for Plaintiff, Defense counsel unilaterally scheduled depositions and dates for examinations without once contacting counsel to ascertain if counsel and his client were available. Civility and the custom of practice of this Court have always been such that dates to schedule discovery events are chosen by mutual participation of all counsel so that calendars can be properly coordinated. In the instant case, and despite being advised that unilateral scheduling would not be tolerated, Defense counsel continued to schedule discovery without once attempting to ascertain the availability of instant counsel. It is respectfully submitted that the Court take judicial notice of defense counsels continuing disregard of the rules and customs of practice associated with this Honorable Court. Plaintiff attaches as Exhibit "A" hereto the opinion of Chief Judge Robinson in Miller v Town of Milton, wherein Judge Robinson chastises defense counsel for continually disregarding procedural rules. This Court may wish to revisit its own ruling in Brooks v Fiore, [Exh. B Hereto] to be reminded of the fact that defense counsel has a history of filing pleadings that have no merit.

in order for a party to conduct a physical or mental examination of a party and that rule is

Rule 35 of the Federal Rules of Civil Procedure which provides:

> <u>Rule 35(a)</u> provides, in relevant part:
> When the mental or physical condition (including the blood group) of a party or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown....
> <u>Fed.R.Civ.P. 35(a)</u>.

In the instant case the Defendant has made no Motion under Rule 35 thus there is

no order "for good cause shown" issued by this Court that would permit the examination

of Plaintiff for any purpose.[2]

Even if this Court were to consider the defense Motion to Compel to be a valid

Motion to have Plaintiff undergo an examination of the type contemplated by Rule 35,

under the factual matrix of this case the defense can not show the "good cause" required

by Rule 35 for such an examination. The defense cites the Pennsylvania case of <u>Jefferys v</u>

<u>LRP Publications, Inc.</u>, 184 FRD 2d 262 (ED Pa. 1999) [Exhibit C hereto] for the

proposition that in addition to medical examinations of a party pursuant to Rule 35, the

Rule also permits a party to seek an Order requiring a party to submit to vocational

testing. In <u>Jefferys</u> which was an employment discrimination case the Court ordered the

Plaintiff to submit to vocational testing in that it was part of Plaintiff's claim that a fear of

flying severely limited the Plaintiffs employment opportunities. That is not the case here.

In this case Plaintiff contends that due to her many medical disabilities she is totally

disabled from performing <u>any</u> kind of work and Plaintiff has a report from Social

---

[2] Plaintiff voluntarily submitted to an IME on December 11, 2006 in that even before this case was filed Plaintiff advised the defense that she would agree to an IME. It should be noted that as is his custom, defense counsel scheduled the IME without consulting counsel for Plaintiff.

2

Security that documents Plaintiffs inability to work.[3] If the defense wants to contest this contention it must do so by adducing medical evidence to the contrary. In <u>Millius v Tillman</u>, 2006 WL 1579081 ( D. Super. 1999)[4] a Delaware case involving Rule 35 not cited by the defense, the Superior Court concluded that Rule 35 permitted the defense to compel the Plaintiff to submit to vocational testing because the Plaintiff intended to offer at trial the opinion of a vocational expert. The Superior Court concluded that "essential fairness" was good cause to permit the defense to conduct vocational testing. Here Plaintiff is not offering an opinion of a vocational expert but is instead relying on the Report of Social Security that states that Plaintiff is totally disabled from performing any work. Simply stated under the holding of the Court in Millius, there is no "good cause" demonstrated by the defense.

<u>Expert Witness</u>

The defense also seeks at this stage to compel Plaintiff to disclose her legal liability expert so that the defense can depose this expert. Counsel for Plaintiff has consistently advised the defense that at this stage of the proceedings the Plaintiff does not feel a need to go to this expense. As counsel understood the directives of the Court when the Court conducted the initial scheduling conference in this matter the Court generally continued the scheduling conference with the hope that this matter could be resolved at a Settlement conference set by the Court for January 22, 2007. In its "minute order" [Exhibit E hereto] the Court stated that a new scheduling conference would be set if no settlement is reached on January 22, 2006. The presiding Judge in this matter has the

---

[3] Nothing in the defense Motion sets forth the qualifications of the individuals that are to take the subject matter examinations. Admittedly the proposed vocational expert appears to be credentialed but there are no credentials set forth for Jill Galper, who is to do the functional capacity exam.

[4] See Exhibit "D" hereto.

requisite knowledge and experience to adduce on his own that a failure to timely file a lawsuit is an act of legal malpractice.[5] Moreover Delaware recognizes the tenet that if the act of legal malpractice sub judice is so obvious that a layman would appreciate it as such, no expert testimony is needed. In Degmars v Kimmel, 1999 WL 463711 (De. Super.), the Delaware Superior Court held that no expert testimony is required to show that a lawyer was negligent in not timely filing a lawsuit.[6] Since the factual matrix of this case is Defendant failed to timely file suit, as noted by the Court in Degmars, there is no requirement for Plaintiff to have an expert. Thus at this stage of the proceedings, Plaintiff sees no need to go to the great expense of retaining a lawyer to give an opinion that is not mandated by state law and is an opinion that this Court can reach on its own. If no settlement is reached the Plaintiff will revisit whether an expert will be required.

**CONCLUSION:**

The Motion to Compel should be denied. Plaintiff should receive an award of attorneys fees pursuant to Rule 11 for the expense of answering such a meritless Motion.

GIBSON & PERKINS P.C.

BY: KEVIN WILLIAM GIBSON
DE. Supreme Court ID 2025
1326 King Street
Wilmington DE 19899
302.668.3992
610.565.1708
kevingibson@gibperk.com

---

[5] In Dubreuil v Witt, 835 A2d 477 (Conn. App 2003), a Connecticut Appellate court concluded that a Judge has the inherent expertise to adduce whether an attorney has deviated from an applicable standard of care.
[6] Exhibit F hereto.

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"

EXHIBIT "A"



Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 839407 (D.Del.)
(Cite as: 2006 WL 839407 (D.Del.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
John MILLER, Plaintiff,
v.
TOWN OF MILTON, Defendant.
**No. Civ.03 --- 876 SLR.**

March 31, 2006.

Jeffrey K. Martin, Margolis Edelstein, Wilmington, DE, for Plaintiff.

Norman H. Brooks, Jr., Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, DE, for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

**\*1** At Wilmington this 31st day of March, 2006, having considered defendant's motion for judgment as a matter of law, plaintiff's motion for new trial and to supplement briefing, and defendant's motion for sanctions, as well as the papers submitted in connection therewith;

IT IS ORDERED that defendant's motions for judgment as a matter of law (D.I.95) and for sanctions (D.I.119) and plaintiff's motion to supplement (D.I.118) are denied.

IT IS FURTHER ORDERED that plaintiff's motion for a new trial (D.I.101) is granted for the reasons that follow:

1. Standard of Review. Fed.R.Civ.P. 59(a) provides in part:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

One of the reasons to grant a new trial is where "improper conduct by an attorney or the court

unfairly influenced the verdict." *Lucent Technologies v. Extreme Networks, Inc.,* 229 F.R.D. 459, 461 (D.Del.2005); *see, e.g., Forrest v. Beloit Corp.,* 424 F.3d 344, 351 (3d Cir.2005) (new trial appropriate "where the allegedly improper statements or conduct make it 'reasonably probable' that the verdict was influenced by the resulting prejudice." quoting *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 363 (3d Cir.1999)). The decision to grant a new trial lies within the sound discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980).

2. Plaintiff moves for new trial on several grounds, including: (1) plaintiff was substantially prejudiced by defendant's improper presentation in closing argument of an unredacted exhibit that the court previously ordered redacted; and (2) the conduct of defense counsel throughout the case had a profoundly prejudicial and negative effect upon plaintiff's rights and adversely affected plaintiff's presentation of this case. (D.I.102)

3. Defendant contends that plaintiff's grounds for new trial are without merit and that the weight of the evidence supported the jury's verdict and was not improperly affected by counsel's conduct. (D.I.107)

4. Considering these arguments in light of the authority outlined and in the context of the trial, the court finds that plaintiff is entitled to a new trial based on statements [FN1] made by defense counsel and the unredacted display of exhibit DX25. [FN2] Although there was substantial evidence presented to support the jury's verdict, the court cannot conclude with any confidence that the overlay of defense counsel's conduct during trial did not unfairly influence and prejudice the jury against plaintiff. [FN3]

> FN1. As an example, defense counsel's discussion of the word "nigger" during his opening and closing arguments was substantially vouching and not related to the record. The "N" word was made part of the case by plaintiff, a black man, in that he asserted and offered the testimony of a witness to support his claim that Mayor Bushey, a white man, stated that he would never allow a "N" to be Chief of Police. However, defense counsel's statements went

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 839407 (D.Del.)
**(Cite as: 2006 WL 839407 (D.Del.))**

too far and included vouching and prejudicial remarks. Specifically, in his opening statement, defense counsel stated "[i]t's an interesting history of the strange career of a troublesome word, nigger. You may hear that repeatedly tomorrow, but I sense--my sense is that you've probably all heard it before. Certainly, anyone who grew up in New Castle County in the fifties and was on a playground heard kids deciding who was going to be it or who was going to have to hide and who was going to have to seek because when you start the game, if you would listen to the children, back in the day it was ennie meenie minie moe, catch a, and if you are putting the "N" word in there, then you've heard it and you're aware of it and you really shouldn't be shocked about it. One thing we're not going to have in this case is a Mark Furman. We're going to have a white male come in here and tell you that he's--he's in his fifties. He has used the word.... Mr. Kennedy [author of a book on the history of the word] says in his book here that by the way the word was used in his home, he learned it to be used many things: Big Momma would pepper her speech with reference to niggers by which she meant discreditable Negros. Other relatives growing up used it as a signal that they--[Objection made by plaintiff and sustained by the court] but defense counsel continued: "You can draw upon your own experience about how you've heard people use the word to signal that the blacks remained mere niggers in the eyes of many whites. You may draw upon your experience that others have used this term with a twist of irony, so that someone may refer to James Brown as a sho-nuff nigger." (D.I. 108 at 82-83) In his closing statement, defense counsel stated: "Plaintiff's attorney told you that this was an ugly case. Well, it is an ugly case. It's insulting because it has the "N" word in it. For some reason, plaintiff seems to be unable to say the word nigger. I told you at the outset that that's a bad word. That's a problem word. Can be, in the context. But even so, why is it that we say can't say the word? He refuses to say the word. If this were a racial discrimination case against an Italian person that was referred to as a dago or wop, would we say, Oh, can't say the "W" word or the "D" word, or if it was someone where a Puerto Rican

who was described as being a spic, would we be up here saying, Oh, you can't say the "S" word? The fact that plaintiff is entitled-- the fact that the plaintiff is a representative of one particular minority does not give him any protection or benefits of any other minority. I told you in my opening that the word is a problem word, but it has--has its use in context. And we told you a little bit about context where the word is more accepted. Rap music, for example, I think, the Mayor said he heard the word and kids on the street and the word is used at times sort of as--well, not particularly as an insult directed at race. It can be an insult directed at someone just having poor upbringing, or someone that may be trying to display a little too much soul, if you will. But it's not always a word that is a strong word, as the plaintiff's attorney has--I'm not even sure what a strong word, what does that mean? ... Now I told you at the beginning there was not going to be any Mark Furman in this case, that Mayor Bushey has said the word. He has used it at times. I'm 48 years old, born in 1956. He's older than me. I don't know too many white males growing up in the fifties in Delaware that can say, they can come into the courtroom and say they've never said that word." (D.I. 112 at 64-64).

FN2. The court ordered the word "felony" redacted from defendant's exhibit DX25 prior to its admission into evidence. During his closing argument, defense counsel showed several exhibits on a large screen to the jury. He displayed a DX25 with the word "felony" clearly in view. After plaintiff objected, the exhibit was removed from the screen to which defense counsel stated, "I wish that had come to our attention sooner." (D.I. 112 at 95)

FN3. The conduct of counsel for both plaintiff and defendant went well beyond zealous trial advocacy and transcended into behavior unbecoming a member of this Bar. With the snide remarks and the emotional commentaries offered by each, at every opportunity, the court was transformed into a "schoolyard supervisor" charged with monitoring the disrespectful behavior. *See, e.g., Forrest v. Beloit Corp.,* 424 F.3d at 352 n. 5 (role of trial judge should not be akin to a schoolyard supervisor). Counsel is

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                Page 3
Not Reported in F.Supp.2d, 2006 WL 839407 (D.Del.)
**(Cite as: 2006 WL 839407 (D.Del.))**

> admonished that such behavior will not be tolerated at the new trial and appropriate sanctions may be imposed. *See generally Murphy v. Housing Authority & Urban Redevelopment Agency of the City of Atlantic City,* 158 F.Supp.2d 438 (D.N.J.2001) (pursuant to 28 U.S.C. § 1927, sanctions imposed on attorney who unreasonably and vexatiously multiplied court proceedings).

Not Reported in F.Supp.2d, 2006 WL 839407 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2603603 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of His Motion for a New Trial (Aug. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 2603601 (Trial Motion, Memorandum and Affidavit) Defendant's Answering Brief in Opposition to Plaintiff's Motion for New Trial (Aug. 15, 2005)Original Image of this Document (PDF)

• 1:03cv00876 (Docket) (Sep. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

**EXHIBIT "B"**

*Westlaw.*

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Norman H. BROOKS, Jr., Plaintiff,
v.
Robert G. FIORE and the Nationwide Mutual
Insurance Co., Defendants.
**No. 00-803 GMS.**

Oct. 11, 2001.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

**\*1** Plaintiff, Norman H. Brooks, Jr. ("Brooks"), filed suit against his former employer, Nationwide Mutual Insurance Co. ("Nationwide") and his supervisor Robert G. Fiore ("Fiore") (collectively "the defendants") for violating various state and federal laws. In total, Brooks has alleged eleven claims relating to his employment contract, his duties as a Staff Judge Advocate in the United States Air Force, and his subsequent termination from Nationwide.

On July 20, 2000, Brooks filed his original complaint in the Superior Court of Delaware, alleging violation of his rights under OSHA and retaliation by the defendants in response to his filing a complaint with the regional OSHA administrator. The action was removed to this court on August 30, 2000 on the basis of diversity jurisdiction. Brooks amended his original Complaint on January 8, 2001 to add various state law and statutory claims. Based on the amended complaint, the defendants filed a pre-answer motion to dismiss, or in the alternative for summary judgment, on January 22, 2001. They subsequently filed this motion for summary judgment on June 13, 2001.

Presently before the court is the defendants' motion for summary judgment on all eleven claims  [FN1]. The court will grant the motion in its entirety because there are no genuine issues of material fact to be resolved by a fact finder.

FN1. On January 22, 2001, the defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the court will now rule on the defendants' subsequent motion for summary judgment on the same issues, the January 22, 2001 motion to dismiss is rendered moot and will not be ruled upon.

II. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Boyle v. County of Allegheny, Pennsylvania,* 139 F.3d 386, 392 (3d Cir.1998). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle,* 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields,* 178 F.3d 170, 173-174 (3d Cir.1999).

With these standards in mind, the court will briefly describe the facts and procedural history that led to the motion presently before the court.

III. BACKGROUND

Brooks was employed by Nationwide as an attorney in its Delaware Trial Division office from February 1993 until November 9, 2000. While employed at Nationwide, Brooks was also a reserve Staff Judge Advocate in the United States Air Force.

During Brooks' interviews with Nationwide in 1993, he learned that it was Nationwide's practice to conduct a performance evaluation after one year of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

employment and then annually thereafter. These performance evaluations were used in determining whether the employee received a pay raise. Nationwide did not, however, guarantee its employees would receive a post-evaluation raise, regardless of the outcome of an evaluation. Nationwide also assured Brooks, prior to his accepting employment with them, that his job responsibilities would not interfere with his reserve military commitments. These policies were also contained in an employee handbook, which Brooks has acknowledged he received and read. The handbook further clarifies that Nationwide's relationship with its employees is an at-will relationship.

**\*2** During the first three years of Brooks' employment with Nationwide, Ransford Palmer was his supervisor. Palmer completed annual performance reviews for Brooks. These reviews always resulted in an increase in compensation. In 1997, Fiore was appointed the managing attorney of the Delaware Trial Division office and, therefore, became Brooks' direct supervisor. In May 1997, the first time that Fiore served as Brooks' rater, Brooks again received a raise. The following April, Brooks and Fiore discussed his performance, which resulted in a raise and a promotion. On this occassion, Fiore did not do a written performance evaluation. After complaining to John Flynn, Fiore's supervisor, Fiore completed a written performance evaluation, giving Brooks marks indicating that he "consistently achieved performance standards." Brooks then sent a memorandum entitled "Employee Response to Performance Evaluation" to John Jones, the Division Vice President. In that memorandum, Brooks asserted that his performance evaluation was "nothing more than an act of reprisal" due to Brooks' original complaint to Flynn about the late written evaluation.

Beginning in September 1998, the Delaware Trial Division attorneys were required to input their time records using a new computer system. Brooks refused to comply with that requirement. Moreover, Brooks asserts that when he typed on his office computer, he experienced pain in his wrists. Brooks believed that this problem was caused by an ergonomically incorrect work station. On November 9, 1998, Brooks filed a complaint with the regional OSHA office regarding his work station configuration. In response, Nationwide flew an occupational health nurse from Ohio to Delaware. The nurse recommended, and Flynn approved, the purchase of a new chair and computer stand for Brooks. Brooks withdrew his OSHA complaint.

In 1998, Nationwide also experienced problems with Brooks' lack of documentation with regard to his time away from the office for military service, which Nationwide paid for. Under Nationwide's policies, a member of the military could receive up to two weeks salary "differential" in a given year for time spent performing required duty. To qualify for the salary differential, however, the employee had to provide notice and documentation in regard to such benefits and/or the allocation of leave. Brooks failed to provide such documentation and, indeed, threatened to sue the office manager when she asked for the records.

Brooks' performance as an attorney for Nationwide was also suffering during this time. Flynn reviewed Brooks' files and noted severe deficiencies in his cases. Therefore, Flynn assigned Tom Bouchelle to monitor Brooks' work on an ongoing basis. Flynn also advised Brooks that failure to heed future directives would result in immediate termination for insubordination.

In Spring 1999, Fiore informed Brooks that due to his performance deficiencies and interpersonal problems during the prior year, Brooks would not be receiving a salary increase. Fiore also asserted that he would not prepare a written performance evaluation for Brooks because it would be quite negative. Fiore finally put Brooks on a minimum of one year "probation" before any salary increase would even be considered. On October 21, 1999, however, Brooks again asked for a written performance review and salary increase for 1999. Fiore denied this request.

**\*3** Brooks was called to military duty in April 2000. At that time, he again expressed concern that he had not received a written performance review in two years. When Brooks brought this concern to the Human Resources representative, Julie Blankenship, she informed him that records indicated that his most recent performance review had been conducted in April 1999. Brooks informed Flynn via e-mail that he had not received a review then. He concluded the e-mail by mentioning that Fiore must have retaliated against him for filing the OSHA complaint in November 1998. Flynn then confirmed with Fiore that, in fact, Brooks' last formal evaluation had been in September 1998.

Additionally, Fiore initially imposed certain conditions in connection with Brooks' April 2000 military leave. Among them was the requirement that Brooks use his vacation time for military service,

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

before he would allow Brooks to leave. However, within one day, and prior to Brooks' leaving for duty, Fiore's instructions to Brooks were countermanded. Thereafter, all that remained for Brooks to do was to comply with Nationwide's normal documentation procedures regarding absences for which the employee is seeking paid leave.

Brooks filed another complaint with OSHA in April 2000. In this second complaint, Brooks alleged that both Fiore and Nationwide had retaliated against him for filing his November 1998 OSHA complaint by withholding subsequent performance reviews and salary adjustments. Brooks further asserted that Fiore's initial response to his impending military leave was in retaliation for the original OSHA complaint. Brooks twice offered to hold the retaliation complaint in abeyance if Flynn would intercede on his behalf with regard to his compensation and performance reviews. Flynn declined on both occasions to do so. Brooks later withdrew the April 2000 OSHA suit.

Brooks returned from his military leave in mid-May 2000. At that time, the office manager once again attempted to obtain the required documentation from him. Brooks refused and accused her of harassment. Brooks finally submitted the paperwork three months later.

On July 20, 2000, Brooks filed his initial lawsuit against Nationwide in the Superior Court of Delaware. Nationwide terminated Brooks' employment on November 9, 2000. Flynn decided to do so after Nationwide's General Counsel recommended that Brooks be terminated for filing a frivolous lawsuit against the company. The General Counsel stated that such a lawsuit constituted disruptive behavior and unprofessional conduct.

With this background in mind, the court will discuss each of Brooks' eleven claims in turn.

IV. DISCUSSION

A. Retaliation

Brooks has indicated that he is no longer pursuing Count One of his amended complaint. Accordingly, the court need not address Count One.

B. Breach of Contract

Count Two of Brooks' amended complaint alleges that the defendants breached an employment contract

between the defendants and Brooks. Brooks conceded during his deposition on May 29, 2001 that he never had a contract for employment with the defendant Fiore. Therefore, the court will grant summary judgment on Count Two as to the defendant Fiore.

**\*4** With regard to the defendant Nationwide, Brooks has also failed to prove the existence of an employment contract between himself and the defendant Nationwide. Absent a contract of employment, an employee under Delaware law is considered to be an at-will employee. *See Heideck v. Kent Gen. Hosp., Inc.,* 446 A.2d 1095, 1096 (Del.1982). As such, he or she may be terminated with or without cause at any time. *See id.* Delaware law is clear that "written or oral statements to a prospective employee concerning the conditions of [the prospective employee's] employment are not enforceable against the employer without some basic contract consideration, i.e. detrimental reliance by the employee upon the representations made by the employer." *Asher v. A.I. duPont Inst. of the Nemours Found .,* 1987 WL 14876, at \*3 (Del.Super. June 19, 1997) (citing 9 WILLISTON ON CONTRACTS § 1017 (3d ed.).

Brooks' breach of contract claim rests first upon the theory that the pre-hire oral statements made to him formed a valid oral employment contract. As previously noted, these alleged statements include statements that Brooks would receive annual performance reviews and would be permitted to continue serving in the U.S. Air Force reserve without detriment to his position with Nationwide. Such statements, which merely reiterated Nationwide policy, are not sufficient to create enforceable contractual obligations under Delaware law. *See Avallone v. Wilmington Med. Ctr., Inc.,* 553 F.Supp. 931, 936 (D.Del.1982); *Asher* 1987 WL 14876, at \*3. Brooks has presented no evidence that at the time of hire, there was any negotiation, much less consideration, for Nationwide's alleged oral promises. Indeed, Brooks testified during his deposition that he did not condition his acceptance of Nationwide's employment offer in any way. As such, the court finds no valid oral contract.

Alternatively, Brooks argues that a written contract embodying the terms of his employment was created by a series of documents, including Nationwide's Employee Handbook, a document entitled "Total Compensation Statement," several annual performance evaluations, pay stubs and a statement that Brooks signed, in which he agreed to limit his

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                          Page 4
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

private practice of law during the time of his employment with Nationwide. This argument too must fail.

Brooks acknowledged that he received an employee handbook in 1993. At his deposition, upon being shown a copy of an employee handbook dated April 1993, Brooks agreed that the book was the one given to him when he began his employment at Nationwide. That handbook clearly states as follows:

The philosophies, policies, procedures and benefits contained in this handbook are not conditions of employment, *nor do they imply, create or constitute an employment contract. Nationwide has an employment at will relationship with its employees.* This means both Nationwide and each employee have the right to terminate employment at any time, with or without reason. (emphasis added)

**\*5** This language leaves no doubt as to the nature of the employment relationship Nationwide and its employees shared. Further, Delaware law is well-settled that an employee handbook containing a unilateral expression of company policies, does not create an employment contract. *See Heideck v. Kent Gen. Hosp., Inc.,* 446 A .2d 1095, 1096 (Del.1982); *Asher,* 1987 WL 14876, at *2-3. Furthermore, none of the other documents which Brooks cites, taken alone, or in conjunction with others, in any way changed his status as an employee at will.

Prior to beginning his employment with Nationwide, Brooks filled out and signed a formal employment application, which stated as follows:

If I am granted employment, I agree to conform to the rules and regulations of Nationwide, and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either Nationwide or me. I understand no supervisor or representative of Nationwide, other than the General Chairman of Nationwide, has the authority to make any representation for employment for any specified period of time, or to make any representations contrary to the foregoing. The policies, procedures and statements contained on this application do not imply, create, or constitute, an employment contract.

It is undisputed that Brooks never had any conversations with the General Counsel of Nationwide regarding his employment, nor did they exchange any correspondence. Similarly, the Total Compensation Statement upon which Brooks relies also contains explicit language warning that the

document does not "imply, create or constitute an employment contract." As for the document Brooks signed limiting his practice of law during his employment with Nationwide, that document contains no language indicating that Brooks' employment was anything but at-will. Additionally, it does not contain any language related to performance evaluations, military service, or any of the other alleged "terms" of Brooks' employment "contract."

Therefore, and in light of the fact that Brooks failed to address this claim in his answering brief dated July 23, 2001, the court finds that there is no disputed issue as to Nationwide's assertion that there was no contract as a matter of law. Accordingly, summary judgment in favor of the defendants is granted on Count Two.

C. Promissory Estoppel

In order to succeed on a claim for promissory estoppel, a plaintiff must prove (i) the making of a promise; (ii) with the intent to induce action or forbearance based on the promise; (iii) reasonable reliance; and (iv) injury. *See Scott-Douglas Corp. v. Greyhound Corp.,* 304 A.2d 309, 319 (Del.Super.1973). Mere expressions of opinion, expectation, or assumption are insufficient. *See Borish v. Graham,* 655 A.2d 831, 835 (Del.Super.1994). Finally, a "unilateral expression" by an employer of its employment policy does not modify an employee's at-will status. Such expression is insufficient to give rise to a cause of action for at-will employees. *See Rizzo v. E.I. duPont de Nemours & Co.,* 1989 WL 135651, at *2 (Del.Super.Oct. 31, 1989).

**\*6** With regard to the defendant Fiore, Brooks points to no evidence of any promises made by Fiore. The court thus grants summary judgment on this count in favor of Fiore.

With regard to Nationwide, Brooks first alleges that Palmer made promises to him during the interview process. Contrary to Brooks' allegations, however, the record shows that the statements made by Palmer during the interview process merely reiterated standard Nationwide policies. Brooks further acknowledges that he cannot remember the exact language used by Palmer during that time. Rather, Brooks seeks to rely only on the conclusory allegations in his affidavit that Palmer used "promise-like language." As such, he cannot as a matter of law meet his burden of proving that any such statements made to him during the interview process were in

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                Page 5
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

promissory form. See *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991) (noting that summary judgment shall be granted if, in opposition, the non-moving party rests solely "upon mere allegations, general denials, or ... vague statements."); *see also Reeder v. Sanford School, Inc.,* 397 A.2d 139, 141 (Del.1979) (requiring promissory form unless there is evidence of fraud of falsity).

Moreover, Brooks has also failed to point to any evidence of reasonable and detrimental reliance on the alleged promises. As proof of reliance, Brooks argues that he detrimentally relied on Nationwide's promises by leaving his prior employment, with which he was "content." However, during Brooks' deposition, he freely admitted he was actively seeking other employment of exactly the type offered by Nationwide. The defendants also argue in response that, if accepting new employment alone could support a claim for promissory estoppel, the at-will doctrine would be effectively abolished. The court finds the defendants' argument to be persuasive.

Brooks further argues that Nationwide breached its "promise" to him that he could remain employed as a Staff Judge Advocate in the United States Air Force. [FN2] However, the alleged "promise" was nothing more than a restatement of Nationwide's duty under federal law to permit the military service of its employees. Promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do. *Danby v. Osteopathic Assn. of Delaware,* 104 A.2d 903, 907 (Del.Super.1954). Moreover, on the present facts, Brooks does not deny that Nationwide in fact permitted him to fulfill his military obligation, thus making this argument moot.

> FN2. Brooks argues for the first time in his Answer Brief that his real grievance with regard to statements made concerning his military service is, in fact, Nationwide's alleged promise of differential pay during military service. However, Brooks did not raise this issue in any way in his amended complaint. As such, the court will disregard this argument.

Next, Brooks argues that he was "hired" on January 15, 1993, and that Nationwide's disclaimers regarding, among other things, the at-will employment, were not provided until after he resigned from his previous employer. This argument is also unpersuasive because it is undisputed that Brooks was provided with Nationwide's handbook at or immediately after his interview, and that he signed

an application for employment containing explicit disclaimers prior to leaving his former employer.

*7 Finally, Brooks contends that, because he did not receive any formal performance reviews in 1999 and 2000, he suffered an actionable injustice. This argument too must fail. While Brooks was clearly unhappy with the turn of events, his grievances with Nationwide did not amount to the sort of "injustice" that permits the invocation of the doctrine of promissory estoppel. There is ample evidence to show that Brooks was aware that he was not guaranteed a salary increase each year, was well appraised of his supervisor's opinion of his performance during the relevant time period, and was aware that any formal performance evaluations prepared during the relevant time period would not have led to a salary increase.

The court finds that Brooks failed to adduce sufficient evidence of reliance and injury to sustain Count Three and will, therefore, grant summary judgment for the defendants.

D. Fraud

The elements of fraud under Delaware law are well established. A party claiming fraud must demonstrate (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's actions or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. See *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983).

In the present case, Brooks alleges that the defendants committed fraud against him by falsifying company records to show that his most recent performance evaluation had been conducted in April 1999, when, in fact, he had not received a written performance evaluation since 1998. The court rejects this contention.

The evidence of record establishes unequivocally that the defendants did not possess the intent to deceive Brooks. To the contrary, Brooks himself admitted that Fiore informed him, prior to the time that the incorrect record was created, that he would receive no written performance evaluation in 1999. Brooks also acknowledged that Fiore advised him that he would not receive a raise then, nor in the

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                    Page 6
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

foreseeable future. Further, as soon as Nationwide's human resources representative learned that the company records erroneously showed that a performance evaluation had been performed in April 1999, Fiore had the record corrected. Fiore also directly informed Flynn that no evaluation had occurred in April 1999.

Additionally, Brooks never relied on the accuracy of the company record. The record evidence amply demonstrates that as soon as Brooks became aware of the inaccurate company record, he promptly sent Flynn an e-mail stating that the record was wrong and no such evaluation existed. Brooks, therefore, cannot now claim that he was misled by the incorrect record.

Finally, no harm resulted to Brooks as a result of the alleged fraud. Brooks argues that he waited until July 2000 to file his OSHA suit because in April 2000, the company records reflected that a performance evaluation had been completed in April 1999. However, even if Brooks were made to wait as a result of the erroneous entry, he alleges no cognizable harm resulting from that three month stay.

**\*8** Brooks cannot establish the elements for a valid cause of action for fraud. As such, summary judgment is granted in favor of the defendants on Count Four.

E. Breach of Implied Covenant of Good Faith and Fair Dealing

In this portion of Brooks' claims, he argues that the defendants breached their duty to him to act in good faith and deal fairly by committing acts of fraud, deceit, or misrepresentation.

With respect to Fiore, Brooks admits he never had a contractual relationship with him. To the extent Brooks contends that Fiore acted as an agent of Nationwide, this claim must also fail. Under Delaware law, where a principle is disclosed in a breach of contract action, only the principle is liable for the breach and not the agent. *See Harris v. Dependable Used Cars, Inc.,* 1997 WL 358302, at \*1 (Del.Super. March 20, 1997). Therefore, Fiore cannot be held liable either in his personal capacity or as the agent of Nationwide.

With respect to Nationwide, the court again finds that Brooks' argument is meritless. The Delaware Supreme Court has strictly limited the application of the implied covenant in the employment context, holding that a plaintiff must establish that he or she

falls into one of four exclusive categories. *See Lord v. Souder,* 748 A.2d 393, 401 (Del.2000). The four categories are: (1) where the termination violates public policy and no other remedial scheme exists; (2) where the employer misrepresented an important fact and the employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *See E.I. duPont de Nemours & Co. v. Pressman,* 679 A.2d 426, 442-44 (Del.1996).

As the defendant stresses, however, irrespective of the category implicated, a claim for the breach of duty of good faith and fair dealing requires employer conduct amounting to fraud, deceit, or misrepresentation. *See Peterson v. Beebe Med. Ctr., Inc.,* 1992 WL 354087, at \*5 (Del. Nov. 13, 1992), *aff'd,* 623 A.2d 142 (Del.1993). Thus, the traditional elements of fraud must be present in a claim for breach of an implied covenant of good faith. *See Hudson v. Wesley College, Inc.,* 1998 WL 939712, at \*13 (Del. Ch. Dec. 23, 1998) *aff'd* 734 A.2d 641 (Del.1999).

In Count Five of his complaint, Brooks argues that the defendants breached the implied covenant of good faith and fair dealing by falsifying Nationwide computer records to show that he received an evaluation in September 1999. Brooks has, however, failed to bring forth any evidence that the incorrect record was in any way related to Nationwide's decision to terminate his employment. In fact, there is no dispute that Brooks' termination occurred as a direct result of his filing a meritless lawsuit against Nationwide. Thus, because no fraud or misrepresentation occurred here, summary judgment in favor of the defendants will be granted as to Count Five.

**\*9** In Count Seven, Brooks bases his retaliation claim on a violation of public policy. Such a public policy, however, must be recognized by some legislative, administrative, or judicial authority. *See Shearin v. E.F. Hutton Group, Inc.,* 652 A.2d 578, 587-589 (Del. Ch.1994). The employee asserting the claim must also be able to show that she was responsible in her capacity as an employee for implementing the recognized public interest. *See E.I. duPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 441-442 (Del.1996).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 7
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
(Cite as: 2001 WL 1218448 (D.Del.))

Brooks argues that the defendants breached the duty of good faith and fair dealing when Fiore allegedly retaliated against him for reporting to senior management Fiore's purported inappropriate imposition of conditions on Brooks' military service. For Brooks to be protected by this implied covenant, however, he must, in his capacity as an employee of the defendant, occupy a position with responsibility for reporting misconduct. *See Lord v. Souder,* 748 A.2d 393, 401 (Del.2000). Brooks contends he occupied such a position because he is a Staff Judge Advocate in the Air National Guard. However, as the defendants correctly point out, the relevant inquiry is the nature of Brooks' duties *with the defendant employer.* There is no evidence that Nationwide charged Brooks with the responsibility of reporting his supervisor's allegedly improper actions with regard to his military leave. Furthermore, Brooks offers no legal support for his contention that his position as a Staff Judge Advocate conferred upon him a position of responsibility for reporting any purported misconduct of Nationwide.

For the above reasons, the court will grant summary judgment in favor of the defendants as to both Counts Five and Seven.

F. Employment Rights of Members of the Uniformed Services

Brooks alleges that his rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), were violated from 1998-2000 by the defendants. [FN3] *See* 38 U.S.C. § 4301 et seq. (2001). Specifically, Brooks argues that the defendants refused to permit him to serve his military duty and required him to seek pre-approval of any military service. Further, Brooks alleges that he did not receive a performance evaluation or pay increase as retaliation for exercising his rights under USERRA. It is clear from the record before the court that he was not prevented from serving military duty and was not subjected to conditions violating USERRA.

> FN3. As a preliminary matter, it is clear from settled law that Fiore is not covered by USERRA. *See* 38 U.S.C. § 4303(4)(A) (2001). Thus, he can not be held individually liable. Courts have recognized that USERRA applies only to employers, or those individuals who have the power to hire or fire the employee. *See Satterfield v. Borough of Schuykill Haven,* 12 F.Supp.2d

423, 438 (E.D.Pa.1998). Here, it is undisputed that, while Fiore carried out orders to fire Brooks, he did not initiate that decision, nor did he have the power to do so.

Brooks first alleges that his USERRA rights were violated because the defendants prevented him from serving military duty from 1998-2000. *See* 38 U.S.C. § 4301 et seq. (2001). The record clearly indicates, however, that the defendants not only permitted Brooks to fulfill his military committments, they permitted him to receive CLE time and full pay for extended periods of military service for which Brooks was also receiving military pay. Brooks himself testified at his deposition that, in 1998, he and Fiore resolved their issues related to his military service and he did in fact serve.

*10 Brooks argues next that the violation of his USERRA rights relate to Connie Peterson's attempts to have him properly document his military service time. He does not dispute, however, that this was done in order to account for any pay differential for which he might be eligible under Nationwide's *voluntary* policy of paying its employees the difference between any military pay received and their usual pay during periods of military service. However, there is no requirement under USERRA that Nationwide provide such differential pay to its employees. Further, USERRA does not prohibit employers from requiring certain notification procedures or documentation of military leave. In fact, USERRA specifically states that an individual wishing to perform military service is protected by the statute only if "the person...has given advance written or verbal notice of such service to such person's employer." 38 U.S.C. § 4312(a) (2001). Thus, it is clear that the problems Brooks contends are related to the notification and pay procedures are not actionable under USERRA.

Brooks next alleges that he was penalized from 1998-2000 because the defendants held him to the same billable hour requirements as other attorneys and forced him to use vacation time for his military leave. There is, however, no record evidence that demonstrates any action was taken against Brooks as a result of his billable hours deficiency. To the contrary, in 2000, Brooks' billable hour goal was explicitly reduced to account for time spent on military leave. Even prior to 2000, there is no evidence in the record that action was ever taken against Brooks for having a deficiency in his hours. Further, Brooks' contention that he was required to use vacation time for military duty is unsupported in

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 8
Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

the record. In fact, while Fiore was initially confused in April 2000 about the requirements of the law when he required Brooks to use his vacation time, that misunderstanding was promptly resolved. Thereafter, Brooks completed his military leave as scheduled.

Finally, Brooks argues that Fiore retaliated against him for reporting Fiore's mistaken April 2000 directive to Nationwide management by refusing to perform an annual review or salary increase. In the defendants' briefs, they point out that Brooks has twice changed his allegation. First Brooks alleged that the lack of a performance evaluation and salary increase were caused by Fiore's retaliation since Brooks went over Fiore's head to force him into action. Secondly, he attributed the lack of a performance evaluation and salary increase to retaliation for filing his OSHA complaint. He now claims it was retaliation for exercising his rights under USERRA. The court thus agrees with defendants that this claim is clearly a post-hac claim, and there is no evidence to support it.

G. Unreimbursed Client Expenses

Brooks alleges that defendants failed to reimburse him for expenditures related to his employment at Nationwide. Specially, Brooks testified at his deposition that he is seeking reimbursement for expenditures that occurred from January 2000 through August 3, 2000.

**\*11** Brooks has identified no basis for holding Fiore personally liable for these expenses. Thus, summary judgment will be granted as to Fiore.

With regard to Nationwide, the record clearly indicates that Brooks never submitted any receipts or requests for reimbursement for these alleged expenses during his employment. Nor has Brooks identified any specific expenses during the course of this litigation and, indeed, has failed to disclose an actual amount of money due him. As such, the court will grant summary judgment on Count Eight in favor of the defendants.

H. Prima Facie Tort

Under Delaware law, claims for prima facie tort are not permitted in the employment context. *See Lord v. Souder,* 748 A.2d 393, 403 (Del.2000). In *Lord,* the Delaware Supreme Court considered a claim alleging prima facie tort (in addition to claims for breach of contract, promissory estoppel, violation of public policy, and fraud) based upon an at-will employee's

termination. The Court concluded that the tort claim must be dismissed as inconsistent with the employment-at-will doctrine. The Court there viewed the tort claim as an effort to maintain an action for wrongful discharge in contravention of the exclusive categories established by *E.I. duPont de Nemours & Co. v. Pressman* (See discussion section B, *supra* ). Contrary to Brooks' position, it is clear that *Lord* governs situations both arising during employment and at termination. 748 A.2d at 400. As such, *Lord* controls Count Nine of Brooks' amended complaint. The court will follow this precedent and grant summary judgment in favor of the defendants on Count Nine.

I. Wrongful Discharge

Brooks testified at his deposition that he believed there was no basis for his termination on November 9, 2000, other than Fiore's "knee-jerk reaction and wrongful perception" that Brooks' lawsuit was without merit. As previously noted, however, Fiore was not responsible for the decision to terminate Brooks' employment. That decision was in fact made by Flynn, upon the advice of Nationwide's General Counsel. Brooks further concedes that, even if Fiore had been the decision-maker, Brooks did not have an employment contract with Fiore. Thus, Fiore can not be held liable for wrongful termination. *See Harris v. Dependable Used Cars, Inc.,* 1997 WL 358302, at \*1 (Del.Super.1997) (citing Delaware Rule that "where the principal is disclosed, only the principle is liable...not the agent.").

With respect to Nationwide's liability on this claim, Delaware courts have noted that nothing is "to be construed as limiting an employer's freedom to terminate an at-will employment contract for its own legitimate business, or even highly subjective, reasons." *See Layfield v. Beebe Med. Ctr, Inc.,* 1997 WL 716900, at \*5 (Del.Super. July 18, 1997) (citing *E.I. duPont de Nemours & Co. v. Pressman,* 679 A.2d 436, 441 (Del.Super.1996)). Indeed, these courts have further recognized that, due to the personal nature of an employment relationship, causes of action should not be based solely on personal motivations such as dislike, hatred, or ill-will alone. *See id.* at \*11. Thus, the employer's conduct must rise to the level of fraud, deceit, or misrepresentation. *See id.* Courts in other jurisdictions have followed this rationale, and held that an action for wrongful termination does not lie where the at-will employee was terminated for suing the employer. *See e.g., Tynes v. Shoney's, Inc.,* 867 F.Supp. 330, 334 (D.Md.1994); *Deiters v. Home*

Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)
**(Cite as: 2001 WL 1218448 (D.Del.))**

_Depot U.S.A., Inc.,_ 842 F.Supp. 1023, 1028 (M.D.Tenn.1993).

 **\*12** As in Counts Five and Seven of Brooks' complaint, the court here finds no evidence of fraud, deceit, or misrepresentation on Nationwide's part sufficient to sustain a charge of wrongful discharge. Nationwide has made no attempt to hide the reason it fired Brooks, namely that its General Counsel had found the lawsuit to be frivolous and disruptive to the office, while also calling into question Brooks' professional integrity and judgment. On these facts, the court will not find Nationwide acted beyond its legal rights when dealing with such an at-will employee.

 For the above reasons, the court will grant summary judgment with regard to Count Ten.

 J. Consolidated Omnibus Budget Reconciliation Act

 The court will grant summary judgment on Count Eleven, although it was not briefed by the defendants until they filed their reply brief on July 23, 2001, because Brooks has voluntarily withdrawn this claim in his answer to interrogatory question number 14. As there is no longer a dispute as to this issue, summary judgment will be granted.

 V. CONCLUSION

 For these reasons, IT IS HEREBY ORDERED that:
  1. The Pre-Answer Motion to Dismiss (D.I.21) filed by Nationwide Mutual Insurance Company and Robert G. Fiore is declared moot;
  2. The Motion for Summary Judgment (D.I.59) filed by Nationwide Mutual Insurance Company and Robert G. Fiore is GRANTED.
  3. Judgment BE AND IS HEREBY ENTERED in favor of the defendants on all claims against them.

 Not Reported in F.Supp.2d, 2001 WL 1218448 (D.Del.)

  **Motions, Pleadings and Filings (Back to top)**

• 1:00CV00803 (Docket) (Aug. 30, 2000)

END OF DOCUMENT

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

**EXHIBIT "C"**

Westlaw.

184 F.R.D. 262                    FOR EDUCATIONAL USE ONLY                                    Page 1
184 F.R.D. 262, 43 Fed.R.Serv.3d 544
**(Cite as: 184 F.R.D. 262)**

**Motions, Pleadings and Filings**

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.
Karen McKay JEFFERYS,
v.
LRP PUBLICATIONS, INC., et al.
**No. Civ.A. 98-2538.**

Feb. 16, 1999.

Former employee brought action against employer alleging that she was dismissed from her job because of a fear of flying, and asserting claims of pregnancy discrimination, disability discrimination, and sex discrimination. On defendants' motion to compel plaintiff to submit to a vocational examination, the District Court, Bartle, J., held that rule governing physical and mental examinations permitted vocational examination of plaintiff by defendants' vocational expert to evaluate her vocational status, notwithstanding plaintiff's objection that expert was not a physician or psychologist.

Motion granted.

West Headnotes

**Federal Civil Procedure** 🔑1651
170Ak1651 Most Cited Cases
Rule governing physical and mental examinations permitted vocational examination of plaintiff by defendants' vocational expert to evaluate her vocational status, notwithstanding plaintiff's objection that expert was not a physician or psychologist. Fed.Rules Civ.Proc.Rule 35(a), 28 U.S.C.A.
**\*262** Kenneth L. Oliver, Jr., Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, Dena B. Turco, Obermayer, Rebmann, Maxwell & Hippel, LLP, Philadelphia, PA, for plaintiff.

John P. McLaughlin, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for defendants.

**MEMORANDUM**

BARTLE, District Judge.

This is an action under federal and state law in which plaintiff alleges pregnancy discrimination, disability discrimination, and/or sex discrimination. As part of her complaint, she asserts that she was dismissed from her job because of a fear of flying.

Before the court is defendants' motion to compel plaintiff to submit to a vocational examination pursuant to Rule 35(a) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion. Rule 35(a) provides, in relevant part:

> When the mental or physical condition (including the blood group) of a party or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown....
> Fed.R.Civ.P. 35(a).

The first hurdle of the rule has been met. There is no dispute that plaintiff's mental or physical condition is "in controversy" in this case.

During a phone conference with the court, defendants' counsel advised the court that if their motion is granted their expert, Dr. Mark Lukas, will ask plaintiff a series of questions to obtain information on which to base his testimony about her present employment opportunities or limitations. For his purposes, he will accept whatever representations plaintiff makes about her aversion to flying. He will not seek at trial to opine on the accuracy or validity of those representations. While plaintiff does not contest Dr. Lukas' qualifications as a vocational expert, she argues that Rule 35 does not permit him to interview her since he is not a physician or psychologist and would not be conducting a physical or mental examination.

Rule 35 allows only physical or mental examinations. In the past, Rule 35 permitted only physicians to make a physical examination **\*263** and only physicians or psychologists to make mental examinations. However, in 1991, the rule was liberalized to allow "a physical or mental examination by a suitably licensed or certified

examiner."   The Advisory Committee note states, in part:

> The rule was revised in 1988 by Congressional enactment to authorize mental examinations by licensed clinical psychologists.   This revision extends that amendment to include other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute.

We conclude that the requested examination is permitted under Rule 35.  Dr. Lukas, who has an Ed.D. degree, is a diplomate of the American Board of Vocational Experts, a certified rehabilitation counselor, and a certified vocational evaluator.   He has the required credentials of a "suitably licensed or certified professional."   What he proposes is simply to evaluate her vocational status, taking as true whatever information plaintiff provides about her physical and mental limitations because of her fear of flying.   If Dr. Lukas were a physician or psychologist, there is no doubt he could conduct an examination.   *See Carotenuto v. Emerson Elec. Co.,* Civ.A. No. 89-6298, 1991 WL 111258 (E.D.Pa. June 19, 1991); *Massey v. Manitowoc Co.,* 101 F.R.D. 304 (E.D.Pa.1983).   Indeed, plaintiff has said she would not be objecting to the pending motion if he were.   We think the 1991 amendment expanding the scope of Rule 35 was designed to overcome her objection.   The type of examination sought by defendants is within the spirit and letter of the rule as currently written.   As the Supreme Court noted in *Schlagenhauf v. Holder,* 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), " 'deposition-discovery rules are to be accorded a broad and liberal treatment' ... to effectuate their purpose that 'civil trials in the federal courts no longer need be carried on in the dark.' " (citations omitted).

Finally, the defendants have established "good cause" for Dr. Lukas' examination as required under Rule 35.   During the examination, plaintiff's counsel or other representative may be present.   *See Fischer v. Coastal Towing, Inc.,* 168 F.R.D. 199 (E.D.Tex.1996).

184 F.R.D. 262, 43 Fed.R.Serv.3d 544

**Motions, Pleadings and Filings (Back to top)**

• 2:98cv02538 (Docket) (May. 15, 1998)

END OF DOCUMENT

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**

**EXHIBIT "D"**



Not Reported in A.2d              FOR EDUCATIONAL USE ONLY                    Page 1
Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)
**(Cite as: 2006 WL 1579801 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,
New Castle County.
Adam F. MILLIUS, and Irene Millius, Plaintiffs,
v.
King S. TILLMAN, and Swift Transportation Co.,
Inc., Defendants.
**C.A. No. 05C-09-107 MJB.**

Submitted: June 1, 2006.
Decided: June 5, 2006.

**Background:** Motorist brought action to recover for injuries sustained in a motor vehicle collision. Defendants brought motion to compel plaintiff to submit to a vocational examination conducted by their own expert.

**Holdings:** The Superior Court, New Castle County, Brady, J., held that:

(1) vocational specialist was an "examiner" for purposes of civil procedure rule permitting court to order party to submit to a physical or mental examination by a suitably licensed or certified examiner, and

(2) good cause existed to order plaintiff to submit to a vocational examination conducted by defendants' expert.

Motion granted.

**[1] Pretrial Procedure** 🔑**451**

307Ak451 Most Cited Cases
Vocational specialist was an "examiner" for purposes of civil procedure rule permitting court to order party to submit to a physical or mental examination by a suitably licensed or certified examiner. Superior Court Civil Rule 35(a).

**[2] Damages** 🔑**206(2)**
115k206(2) Most Cited Cases
Good cause existed to order plaintiff to submit to a vocational examination conducted by defendants' expert, where plaintiff placed his ability to do certain tasks in issue and proposed the presentation of his own vocational expert; defendant would be unfairly

prejudiced if not allowed to conduct their own vocational examination of plaintiff. Superior Court Civil Rule 35(a).
On Motion to Compel Vocational Examination of Plaintiff Adam Millius. **GRANTED.**

Frederick S. Freibott, Esquire, The Freibott Law Firm, P.A., Wilmington, Delaware, Attorney for Plaintiffs.

David J. Soldo, Esquire, Reger, Rizzo, Kavulich & Darnall, LLP, Wilmington, Delaware, Attorney for Defendants.

*OPINION AND ORDER*

BRADY, J.

*Procedural History*

**\*1** This action was filed on September 13, 2005. This is a Motion to Compel Plaintiff Adam Millius ("Plaintiff") to submit to a Vocational Examination conducted by Jasen Walker, Ed.D filed by Defendants King S. Tillman and Swift Transportation Co., Inc. ("Defendants").

*Relevant Facts*

The instant dispute arises from injuries Plaintiff allegedly sustained in a motor vehicle collision on October 11, 2003. On or about March 13, 2006, Plaintiff's counsel forwarded a report from Plaintiff's vocational expert, Jose Castro. Mr. Castro's report states he met with Plaintiff to perform a wage earning capacity assessment. On or about May 8, 2006, Defendants noticed a vocational examination of Plaintiff on May 30, 2006 in the office of Jasen Walker to perform independent testing on Plaintiff to evaluate and assess his wage earning capacity. By letter dated May 10, 2006, Plaintiff's counsel indicated that Plaintiff would not appear for the vocational examination.

*Contentions of the Parties*

Defendants argue the vocational examination of Plaintiff was noticed solely in response to Plaintiff's vocational expert. [FN1] Defendants further argue in order to conduct a thorough investigation and assessment of Plaintiff's wage earning capacity,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                    FOR EDUCATIONAL USE ONLY                                   Page 2
Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)
**(Cite as: 2006 WL 1579801 (Del.Super.))**

Defendants are entitled to conduct their own vocational examination that may refute the opinion of Plaintiff's vocational expert.

FN1. Defendant Motion to Compel at 2.

Defendants next argues Superior Court Civil Rule 35(a) permits the examination of Plaintiff by a defense vocational expert in a case such as this. The pertinent language reads:

[w]hen the mental or physical condition (including blood group) of a party or of a person in custody or under the legal control of a party, is in controversy, the Court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified *examiner* or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made. (Emphasis added.)

The rule was amended by the General Assembly in 1993, to substitute the word "examiner," for the previous term, "physician ." Therefore, Defendants argue, the Rule was amended for expressly the situation that has arisen in the instant case. The Court may now order a party submit to an examination by an examiner, not just a physician. Defendants argue Jasen Walker is such a qualified examiner as contemplated under Rule 35(a).

Plaintiff argues the Defense expert Jasen Walker does not fit within the language of Rule 35(a) because the language only requires a party submit to a "mental" or "physical" examination by an examiner. Plaintiff argues the vocational examination to be conducted by Jasen Walker is not a "mental" or "physical" examination as those terms are intended in Rule 35(a).

**\*2** Plaintiff further argues Rule 35(a) was amended to include the term "examiner" to include chiropractors; podiatrists; psychiatrists and psychologists, not vocational experts that opine on the financial condition of a party.

*Applicable Law*

Two questions must be answered in the affirmative for the Court to grant the Motion to Compel. Is a vocational specialist an "examiner" as that term is used in Rule 35? Is there good cause to order the

Plaintiff submit to a vocational examination?

**A.** *Is a Vocational Specialist an "examiner" as That Term is Used in Rule 35?*

[1] Both parties cite *Pitts v. Delaware Cooperative, Inc.* [FN2] as support for their position. The *Pitts* decision dealt with an issue similar to the case at bar, with one important difference--it interpreted the language of Rule 35(a) when the relevant term contained in the Rule was "physician," not, as it is now, "examiner." In *Pitts,* the defendant filed a motion to compel the plaintiff to submit to an examination by a vocational expert. [FN3] Defendant alleged plaintiff put his present and future employability in issue by alleging his background and skills, injuries and his home location made him virtually unemployable in the future. [FN4] The Court ruled the plaintiff did not have to submit to an examination by the vocational expert because Rule 35(a) explicitly used the term "physician," and a vocational expert was not a physician. [FN5] However, the Court did note the language of the rule was outdated. [FN6]

FN2. 1991 WL 302638 (Del.Super.).

FN3. *Id.*

FN4. *Id.*

FN5. *Id* at \*2.

FN6. *Id.*

Subsequently, and perhaps in response to the *Pitts* decision and the amendment of the Federal Rule of Civil Procedure 35(a), [FN7] in 1993 Delaware Superior Court Civil Rule 35(a) was amended to use the term "examiner," instead of "physician." It is clear the scope of Rule 35 was intended to be broadened.

FN7. Federal Rule of Civil Procedure 35 was amended in 1991 to substitute the term "examiner," for the term "physician."

No decision in Delaware has addressed whether the amended language in the Rule allows the Court to compel a party to submit to an examination by a vocational specialist. However, it is helpful to look at federal decisions that have dealt with this issue because Federal Rule of Civil Procedure 35 and Delaware Superior Court Civil Rule 35 are identical. [FN8] While there is not uniformity regarding the

Not Reported in A.2d                    FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)
**(Cite as: 2006 WL 1579801 (Del.Super.))**

implication of the language of the Rule to a vocational examination, this Court is persuaded, as were the federal courts in this Circuit, that the better conclusion is that it does extend to include such an examination.

FN8. *Pitts* at * 1.

In *Cortenuto v. Emerson Electric Co.,* [FN9] the United States District Court for the Eastern District of Pennsylvania decided a similar issue as the case at bar. Defendants filed a motion to compel a vocational examination of plaintiff pursuant to Fed.R.Civ.P. 35. Plaintiff argued it was unnecessary since plaintiff was examined by his own expert whose report was provided to defendants. [FN10] Plaintiff also argued the request was impermissible because defendants wanted the examination done by a psychologist, rather than a physician. [FN11] The Court held the named examiner was a qualified professional under Fed.R.Civ.P. 35 and good cause was present (as required by the Rule) to order the examination because:

FN9. 1991 WL 111258 (D.Pa.1991).

FN10. *Id.*

FN11. *Id.*

**\*3** It is not sufficient that plaintiff provided defendants with a copy of his expert's report, or that he has been deposed and responded to interrogatories. Defendants stand to be prejudiced if they are refused the right to conduct their own vocational examination of plaintiff and are limited to a cross-examination of plaintiff's expert. [FN12]

FN12. *Id.*

In *Jefferys v. LRP Publications, Inc.,* [FN13] the Eastern District of Pennsylvania again dealt with the issue of whether Fed.R .Civ.P. 35 provided the Court with authority to compel a party to submit to an examination by a vocational expert. Plaintiff argued Rule 35 did not permit defendants' expert to interview her because the expert was not a physician or psychologist and would not be conducting a physical or mental examination. [FN14] The Court noted that prior to the 1991 amendment to Fed.R.Civ.P. 35 only physicians were to make examinations under the Rule. However, in 1991 the Rule was amended to replace "physician" with "examiner," and the advisory committee notes state in relevant part:

FN13. 184 F.R.D. 262 (D.Pa.1999).

FN14. *Id.*

The rule was revised in 1988 by Congressional enactment to authorize mental examinations by licensed clinical psychologists. This [1991] revision extends that amendment to include other certified or licensed professionals, such as dentists or occupational therapists, who are not physicians or clinical psychologists, but who may be well-qualified to give valuable testimony about the physical or mental condition that is the subject of dispute. [FN15]

FN15. *Id* at 263.

The Court held the vocational examination was permitted under Fed.R.Civ.P. 35. Defendants' expert was found to be a "suitably licensed or certified professional" because he had an Ed.D degree, was a diplomate of the American Board of Vocational Experts, a certified rehabilitation counselor, and a certified vocational evaluator. [FN16] The Court concluded the type of examination sought by defendants was within the spirit of the rule as then written, because the 1991 amendment expanding the scope of Rule 35 was designed to overcome plaintiff's objection to defendant's request to conduct a vocational examination. [FN17]

FN16. *Id.*

FN17. *Id; see also Smolinsky v. State Farm Ins. Co.,* 1999 WL 1285824 (D.Pa.1999) (In which the District Court for the Eastern District of Pennsylvania upheld a ruling by a Magistrate Judge to grant a motion to compel the plaintiff to submit to a vocational examination).

In *Douris v. County of Bucks,* [FN18] the Eastern District Court again addressed whether to grant a motion to compel a vocational examination under Fed.R.Civ.P. 35. The Court noted: "... before an order for a vocational examination can be entered, there must be a showing that Plaintiff's qualification for employment are in controversy and that there [sic] good cause for an examination." [FN19] The Court held the plaintiff placed his vocational status in controversy when he alleged that he was qualified for and able to perform essential functions for the position he sought. In addition, good cause was shown because it was not sufficient to provide

Not Reported in A.2d                    FOR EDUCATIONAL USE ONLY                                        Page 4
Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)
**(Cite as: 2006 WL 1579801 (Del.Super.))**

medical records to the opposing party in lieu of a personal examination: "[D]efendants' stand to be prejudiced if they are refused the right to conduct their own vocational exam of Plaintiff." [FN20]

FN18. 2000 WL 1358481 (D.Pa.2000).

FN19. Id at *3.

FN20. Id.

**\*4** Other District Courts have come to similar conclusions as the Eastern District of Pennsylvania. In *Fischer v. Coastal Towing Inc.,* [FN21] the District Court for the Eastern District of Texas, Beumont Division, held

FN21. 168 F.R.D. 199 (D.Tx.1996).

[T]o avoid prejudice, Defendant must have its expert conduct an examination of Plaintiff to rebut the reports of Plaintiff's vocational-rehabilitation expert. Otherwise, Defendant's vocational rehabilitation expert has no way to adequately scrutinize the conclusion of the Plaintiff's expert. [FN22]

FN22. Id at 201.

Similarly, in *Olcott v. LaFiandra,* [FN23] the Vermont District Court held the language of Fed.R.Civ.P. 35, after the amendment in 1991, extended the rule to vocational experts. The Court reasoned good cause for the examination was shown because the plaintiff had retained a vocational expert and defendant would be prejudiced if denied the opportunity to perform a similar vocational rehabilitation evaluation of the plaintiff. [FN24]

FN23. 793 F.Supp. 487 (D.Vt.1992).

FN24. Id at 492.

Plaintiff in the case at bar has retained the services of vocational specialist Jose R. Castro. Mr. Castro examined Plaintiff and issued a report with his findings. Defendants now seek an order from this Court to compel Plaintiff to submit to an examination of Plaintiff by a vocational specialist whom Defendants selected. The Court believes the language of Superior Court Civil Rule 35 supports granting of the Motion to Compel.

The Court finds the term "examiner," as used in Superior Court Civil Rule 35 includes a vocational

specialist such as Jasen Walker. The Court does not believe the language was meant to limit an "examiner" to a chiropractor, podiatrist, psychiatrist or psychologist as Plaintiff argues. The language in Rule 35 was amended in 1993 to mirror the federal language. The advisory committee notes for the federal rule, excerpted above, state the term "examiner" was substituted for "physician" to broaden the scope of the rule to include other certified or licensed examiners. The Court believes the broadened language includes vocational specialists.

**B.  *Is There Good Cause to Order the Plaintiff Submit to a Vocational Examination?***

[2] The Court finds good cause exists to order Plaintiff to submit to a vocational examination. Plaintiff counsel argued Defendants had no good cause to examine Plaintiff because Defendants could have a vocational expert issue a report after examining the records of Plaintiff. The Court does not adopt this line of reasoning. This Court holds that, once the Plaintiff placed the ability of the Plaintiff to do certain tasks in issue and proposed the presentation of his own vocational expert, the Defendants would be unfairly prejudiced if not allowed to conduct their own vocational examination of Plaintiff.

The Court is aware that other Federal District Courts have ruled a vocational examination is not within the scope of the language in Fed.R.Civ.P. 35. [FN25] However, the Court declines to follow the reasoning in those opinions. [FN26] The Court is also aware of other Federal District Courts that have ruled good cause to compel a vocational examination is not present when the party moving to compel the examination has access to all of the relevant medical records of the party for whom the examination is sought. [FN27] However, the Court is under the belief that "good cause" is present in a case such as this, when one party retains a vocational expert and puts their ability for future work at issue. Defendants would be prejudiced if not allowed to rebut Plaintiff's expert opinion with an independent examination and opinion of their own expert.

FN25. *Storms v. Lowe's Home Centers, Inc.,* 211 F.R.D. 296 (D.W.V . 2002) (holding a vocational examination was not included in the language of Fed.R.Civ.P. 35 because the amendment explicitly expanded the scope of examiners to be covered, not the scope of examinations available under the Rule).

Not Reported in A.2d                    FOR EDUCATIONAL USE ONLY                    Page 5
Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)
**(Cite as: 2006 WL 1579801 (Del.Super.))**

FN26. This court finds the reasoning of *Douris,* cited herein, persuasive: ("Here, the requirement that the mental or physical condition of a party is in controversy is satisfied. Where a party asserts a physical or mental injury, a party thus places his condition in controversy").

FN27. *Shumaker v. West,* 196 F.R.D. 454 (D.W.V.2000) (denying motion to compel plaintiff to submit to a vocational examination because no "good cause" was shown by defendant, as there was access to ample medical evidence relating the condition of plaintiff at issue); *In re Falcon Workover Co., Inc.,* 186 F.R.D. 352 (D.La.1999) (denying motion to compel vocational examination because "[I]n the context of a vocational expert, there is often no need for an examination as such, particularly when the moving party is allowed access to all of the claimant's medical records, has the opportunity to depose the claimant, and is provided with the results of tests performed by claimant's vocational expert").

**Conclusion**

**\*5** For the reasons set forth herein, the Motion to Compel the Vocational Examination of Plaintiff Adam Millius is **GRANTED.**

IT IS SO ORDERED.

Not Reported in A.2d, 2006 WL 1579801 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT "E"**

**EXHIBIT "E"**

**EXHIBIT "E"**

**EXHIBIT "E"**

**EXHIBIT "E"**

## Debbie Hontz

| | |
|---|---|
| **From:** | "Kevin William Gibson" <KevinGibson@gibperk.com> |
| **To:** | "Hontz, Debbie" <debbiehontz@gibperk.com> |
| **Sent:** | Thursday, September 14, 2006 4:02 PM |
| **Subject:** | Fw: Activity in Case 1:06-cv-00165-GMS Watts v. Dawson "Telephone Conference" |

----- Original Message -----
**From:** ded_nefreply@ded.uscourts.gov
**To:** ded_ecf@ded.uscourts.gov
**Sent:** Thursday, September 14, 2006 3:54 PM
**Subject:** Activity in Case 1:06-cv-00165-GMS Watts v. Dawson "Telephone Conference"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents
once without charge. To avoid later charges, download a copy of each document
during this first viewing.**

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from asw, entered on 9/14/2006 at 3:54 PM EDT
and filed on 9/14/2006
**Case Name:**      Watts v. Dawson
**Case Number:**      1:06-cv-165
**Filer:**
**Document Number:**

**Docket Text:**
Minute Entry for proceedings held before Judge Gregory M. Sleet : Telephone
Conference Re: Scheduling held on 9/14/2006. After discussion with counsel, the Court
will hold a Conference Re: Settlement on 1/25/07 at 10:00 AM. Counsel shall submit
written positions ten (10) days in advance of the settlement conference. Simultaneous
submissions due by 1/16/07. The parties shall follow Judge Thynge's mediation
memoranda practice. In the event the settlement conference is unsuccessful, the Court
will set a scheduling conference date. The Court will remove the pending motion for
summary judgment from the Court's docket (administratively) and will not allow any
future filings of motions for summary judgment without permission from the Court.
(Court Reporter Kevin Maurer.) (asw )

The following document(s) are associated with this transaction:

9/14/2006

**EXHIBIT "F"**

**EXHIBIT "F"**

**EXHIBIT "F"**

**EXHIBIT "F"**

**EXHIBIT "F"**



Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Michael DEGNARS and Dolores Degnars, Plaintiffs,
v.
KIMMEL, WEISS & CARTER, P.A. and Richard M. Kimmel, Michael Weiss, Richard Peltz, Edward B. Carter, Jr., individually, and as agent of Kimmel, Weiss & Carter, P.A., Defendants.
**No. 95C-10-245.**

March 17, 1999.

Upon Consideration of Defendant's Motion for Summary Judgment. Granted.

Mr. & Mrs. Michael J. Degnars, Wilmington, Delaware, Plaintiff, pro se.

Stephen P. Casarino, Wilmington, Delaware, for Defendants.

ORDER

VAUGHN, J.

**\*1** Upon consideration of Defendants' motion and the record in this case, it appears that:

1. Plaintiff Michael Degnars ("Degnars") sustained personal injuries in a motor vehicle accident on February 3, 1995. He retained Defendants to represent him in pursuing any personal injury claim that might have been available. Degnars and his wife Dolores allege that Defendants were negligent in the handling of Degnars' personal injury claim, resulting in an award which was significantly less than he deserved. As a result, Plaintiffs have filed the present legal malpractice action. Defendants have moved for summary judgment claiming that no facts exist to support the allegations of malpractice against them and that Plaintiffs cannot, as a matter of law, prove that they breached the applicable standard of care because they have not produced an expert.

2. During their representation of Degnars, Defendants obtained his medical records and investigated the claim. They determined that the appropriate claim was an uninsured motorist claim against Degnars' auto insurance carrier. The Defendants initially filed a lawsuit in Superior Court; however, after suit was filed a decision was made to have the matter arbitrated pursuant to the insurance policy's arbitration clause. Looking at the facts in the light most favorable to the Plaintiffs, it would appear that they were involved in the decision to arbitrate the claim and agreed or at least consented to that course of action. The arbitrators awarded Degnars $225,000.00. Following the award, Nationwide paid the $225,000.00, the money was distributed with Degnars receiving his appropriate amount, and Degnars signed a settlement sheet and a release to Nationwide. This occurred on October 26, 1992.

3. On October 25, 1995 Plaintiffs filed the present legal malpractice action, alleging that they should have received a significantly larger award in the personal injury suit/arbitration proceeding on the grounds that Degnars sustained permanent brain injuries in the car accident. Looking at the facts in the light most favorable to Plaintiffs, it would appear that plaintiffs became aware of the brain damage and resulting mental disability in 1994. Plaintiffs contend that Defendants should have discovered that Degnars had a brain disorder during the representation leading to the arbitration in 1992. Plaintiffs further contend that Degnars was legally incompetent when he signed the release and settlement sheet at the conclusion of his personal injury action, and that Defendants were negligent in failing to have a guardian appointed for Degnars to handle his affairs.

4. Defendants deny that they were negligent in handling Degnars' personal injury case in 1992. They contend that they received no indication during their representation that Degnars suffered from brain damage or that he was incompetent to handle his own affairs. As a result, they have filed the present motion for summary judgment and have attached an expert's affidavit indicating that they were not negligent in handling Degnars' claim. Further, although the present matter has been going on for quite some time, Plaintiffs have not provided any expert opinion regarding the standard of care applicable to this case or Defendants' breach thereof. Despite receiving proper notification, Plaintiffs have neither responded

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                    FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in A.2d, 1999 WL 463711 (Del.Super.)
**(Cite as: 1999 WL 463711 (Del.Super.))**

to the motion nor appeared at oral argument. Therefore, I will decide the matter based on the information submitted by Defendants.

*2 4. Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact. [FN1] If the movant supports the motion with proper affidavits, the burden shifts to the non-moving party to show, using support taken from the developed record or with opposing affidavits, that a material issue of fact exists. [FN2] If there is a reasonable indication that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judgment will not be granted. [FN3] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law. [FN4]

> FN1. *Guy v. Judicial Nominating Comm'n,* Del.Super., 659 A.2d 777, 780 (1995); *Figgs v. Bellevue Holding Co.,* Del.Super., 652 A.2d 1084, 1087 (1994).

> FN2. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 681 (1979); *Del.Super. Ct. Civ. R.* 56(e).

> FN3. *Ebersole v. Lowengrub,* Del.Super., 180 A.2d 467, 470 (1962), *rev'd in part and aff'd. in part,* 208 A.2d 495 (1965).

> FN4. *Wootten v. Kiger,* Del.Super., 226 A.2d 238, 239 (1967); *Frelick v. Homeopathic Hosp. Ass'n of Delaware,* Del.Super., 150 A.2d 17, 19 (1959).

5. In a legal malpractice claim, as in any professional malpractice claim, the Plaintiffs' allegations must be supported by expert testimony in order to establish the applicable standard of care and breach thereof. [FN5] A limited exception to this rule exists where the negligence is so obvious that it would be apparent to any layman exercising ordinary common sense. [FN6] This might occur, for example, where an attorney misses the statute of limitations on a personal injury case. [FN7] However, matters involving mere errors of judgment may not rise to the level of negligence or malpractice, [FN8] and therefore an expert would be required to explain the alleged negligent conduct in those situations.

> FN5. *Alston v. Hudson,* Del.Supr., No. 160, 1997, Veasey, C.J. (Aug. 22,

1997)(ORDER); *Weaver v. Lukoff,* Del.Supr., No. 15, 1986, McNeilly, J. (July 1, 1986)(ORDER).

> FN6. *Weaver* at 1.

> FN7. *See Brooke v. Elihu-Evans,* Del.Super., C.A. No. 95C-07-005, Terry, J. (Aug. 23, 1996)(ORDER).

> FN8. *Id.*

6. Looking at the facts in the light most favorable to the Plaintiffs, it would appear that there was nothing in the medical records in 1992 which would suggest that Degnars had any brain injuries or reduced mental capacity. Plaintiffs have not provided any expert witness or expert opinion as to the standard of care which was allegedly breached by Defendants. Further, Defendants' expert affidavit indicates that Defendants were not negligent in handling Degnars claim. The burden is on the Plaintiffs to show that Defendants were negligent, and they cannot do this without expert testimony. Therefore, Plaintiffs cannot, as a matter of law, prove the necessary elements of their case.

THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is *GRANTED.*

Not Reported in A.2d, 1999 WL 463711 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH WATTS | : | |
| 3102 Ruby Drive | : | |
| Wilmington, DE  19810 | : | |
|      Plaintiff | : | |
| | : | No. 1:06 – CV – 165 [GMS] |
| | : | |
| LOIS J. DAWSON, ESQUIRE | : | |
| 1525 Delaware Avenue | : | |
| Wilmington DE 19806 | : | |
|      Defendant | : | |

<u>ORDER</u>

      And now this       day of        2007, upon review of the Defendant's

Motion to Compel Plaintiff to submit to functional capacity and vocational testing and

the Plaintiff's response thereto, and oral argument, it is hereby ORDERED AND

DECREED that the Motion is DENIED. The Defendant has filed to file the appropriate

Motion under FRCP 35 to permit such testing. The Plaintiff shall be entitled to attorneys

fees in the amount of $        for having to go to the expense of filing the ill timed

Motion to Compel.

_____
J

UNITED STATES DISTRICT COURT FOR
DELAWARE

ELIZABETH WATTS                          :
3102 Ruby Drive                          :
Wilmington, DE  19810                     :
                                         :
        Plaintiff                        :
                                         :        No. 1: 06 – CV – 165 [GMS]
                                         :
                                         :
LOIS J. DAWSON, ESQUIRE                   :
1525 Delaware Avenue                      :        Legal Malpractice
Wilmington DE 19806                       :
                                         :
                                         :        Jury Trial of 12 Demanded
        Defendant                        :

---

### CERTIFICATE OF SERVICE

I, Kevin William Gibson, Esquire, do hereby certify that on this the 5th day of
January, 2007, I did cause to be delivered Plaintiff's Answer in Opposition to Defendant's
Motion to Compel functional capacity and vocational testing by electronic mail, and Efiling
upon the following:

Norman H. Brooks, Jr., Esq.
Marks, O'Neill, O'Brien & Courtney PC
Suite 800
913 North Market Street
Wilmington DE 19801

GIBSON & PERKINS P.C.

BY: KEVIN WILLIAM GIBSON
DE/Supreme Court ID 2025
1326 King Street
Wilmington DE 19899
302.668.3992
610.565.1708
kevingibson@gibperk.com